IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

NORMA ROGERS, ET AL.,           )
                                )
    Plaintiffs,                 )
                                )
v.                              )   Case No. 19-3346-CV-S-RK
                                )
DOUGLAS GASTON, ET AL.,         )
                                )
    Defendants.                 )

**Plaintiffs' Suggestions in Opposition to Defendant Gaston's Motion to Dismiss**

**I.   Plaintiffs are not seeking monetary damages against Gaston.** ......................... 6

**II.  Gaston is not entitled to judicial immunity.** ....................................................... 7

   **A.  Gaston's actions were not judicial acts taken in his judicial capacity.** ...................... 7

   **B.  Gaston did not act within his jurisdiction.** ................................................. 9

**III. Plaintiffs' claim for declaratory relief is not moot.** ....................................... 11

1

# Table of Authorities

                                                          Page(s)

Cases

*CMLS Management, Inc. v. Fresno County Superior Court*,
  2012 WL 2931407 (E.D. Cal. July 18, 2012) .............................................................................. 7

*Doe v. Nixon*,
  716 F.3d 1041 (8th Cir. 2013) ............................................................................................. 11, 12

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .................................................................................................................... 4

*Hamilton v. Palm*,
  621 F.3d 816 (8th Cir. 2010) .................................................................................................. 5, 6

*Justice Network Inc. v. Craighead Cty.*,
  931 F.3d 753 (8th Cir. 2019) ............................................................................................ 7, 8, 11

*Kennedy Building Assocs. v. Viacom, Inc.*,
  375 F.3d 731 (8th Cir. 2004) ............................................................................................. 12, 13

*McPherson v. Town of Southhampton*,
  664 F. Supp.2d 203 (E.D.N.Y. 2009) ....................................................................................... 7

*Mireles v. Waco*,
  502 U.S. 9 (1991) (per curiam .............................................................................................. 7, 10

*Missourians for Fiscal Accountability v. Klahr*,
  830 F.3d 789 (8th Cir. 2016) .................................................................................................. 13

*Mo. Broadcasters Assoc. v. Lacy*,
  846 F.3d 295 (8th Cir. 2017) .................................................................................................... 5

*Skinner v. Ry. Labor Executives' Ass'n*,
  489 U.S. 602 (1989) ................................................................................................................ 10

*Snow v. King*,
  2018 WL 656032 (N.D. Ala. Feb. 1, 2018) ............................................................................. 7

*Stump v. Sparkman*,
  435 U.S. 349 (1978) ............................................................................................................. 8, 9

*Thomas v. State of Texas*,

 294 F. Supp.3d 576 (N.D. Tex. 2018)......................................................................................... 9

*Titus v. Sullivan*,
 4 F.3d 590 (8th Cir. 1993)............................................................................................................ 4

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
 137 S. Ct. 2012 (2012) .............................................................................................................. 13

*Wheeler v. St. Louis Sw. Ry. Co.*,
 90 F.3d 327 (8th Cir. 1996)......................................................................................................... 4

*Zayed v. Assoc. Bank, N.A.*,
 779 F.3d 727 (8th Cir. 2015).................................................................................................. 4, 5

Statutes

42 U.S.C. 1983............................................................................................................................... 7

Rules

Fed. R. Civ. P. 5.2(a)(3).................................................................................................................. 8

Federal Rule of Civil Procedure 12(b)(1) ...................................................................................... 4

Rule 12(b)(6)................................................................................................................................... 4

## Introduction

Gaston seeks dismissal based on his claim that his arrest, detention, and forced drug-testing of Plaintiffs was nothing more than routine actions that judges take against parties appearing before them. The motion should be denied. It overlooks that Plaintiffs were not parties; Gaston could not order their arrest, detention, and forced drug-testing even if they were parties; and, assuming *arguendo* standing up during a court proceeding is sufficient to authorize Gaston's actions, one Plaintiff did not even do that. Gaston's gratuitous violations of Plaintiffs' constitutional rights are not immune from review. Moreover, Gaston suggests neither than he recognizes that his actions were wrong or that he has abandoned his ways, so this case is not moot.

## Standard of Review

Gaston's motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). The factual allegations regarding jurisdiction are presumed to be true and the motion may succeed only if the plaintiff failed to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).

Gaston's motion for dismissal for failure to state a claim is pursuant to Rule 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), this Court must accept as true all factual allegations in the complaint and view them in a light most favorable to the plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Zayed v. Assoc. Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015), the Eighth Circuit reversed the district court's grant of a motion to dismiss. *Id.* at 737. In so doing, the court emphasized that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*. at 732 (internal quotations and citations omitted). *See also Mo. Broadcasters Assoc. v. Lacy*, 846 F.3d 295, 300 (8th Cir. 2017) (reversing district court's grant of motion to dismiss because plaintiffs sufficiently alleged a cause of action); *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (same).

## Statement of Facts

On June 20, 2017, Plaintiff Norma Rogers and her husband, Arthur Rogers, observed a proceeding in open court that related to custody of their granddaughter. They were not parties to the probate case, but rather intended to observe the hearing and—if an opportunity arose—to offer to care for their granddaughter. Plaintiff William Hale, who lives near the granddaughter's parents, drove the parents to court because they had no transportation. ECF No. 1 at ¶ 1. Contrary to Defendant Gaston's unfounded assertion in his motion to dismiss (*see* ECF No. 8 at 7), Gaston ordered Plaintiffs to be drug tested even though <u>none</u> of the Plaintiffs were "parties" to the probate proceeding. *Id*. at ¶¶ 1-2.

Although no Plaintiffs were a party to the probate proceeding, Gaston conspired with a deputy sheriff to take Plaintiffs into custody, force them to provide a urine sample, test their urine for drugs, and detain them, cuffed, in county jail. *Id*. at ¶ 2. Gaston forced Plaintiffs to be drug tested even though they were not represented and not parties to the case. He demanded "everyone that stood up here today" be drug-tested. ECF No. 1 at ¶ 28.[1]

---

[1] Gaston's action did not match his words. He did not force the attorneys to be drug-tested although they stood up at the bench. He did require Plaintiffs to be drug-tested although none stood before the bench and one did not stand at all.

Furthermore, the following exchange from the court proceeding establishes that Gaston detained Plaintiff Arthur Rogers in custody for twenty-four hours merely because Gaston claims Rogers looked at him the wrong way:

> Gaston to Arthur Rogers: "Oh, come back. YOU JUST COME RIGHT BACK. Something you want to say?"
> Rogers: "No, sir! I'm—nothing!"
> Gaston: "**Well, you just bought yourself 24 hours in the Texas County Jail for that look**. Now anything else you wanna say or any looks you want to give?"
> Rogers: "I wasn't giving—"
> Gaston: "**NO, you gave it and I saw it**. Now is there anything else you wanna say or are you smart enough to shut your mouth now? Good choice."

ECF No. 1 at ¶ 29 (emphasis added). There is no basis for Gaston's unfounded assertion that he cited Plaintiff Rogers for contempt because Mr. Rogers allegedly "lunged in an aggressive manner at Judge Gaston," *See* ECF No. 8 at 7–8, and this assertion must be disregarded for purposes of ruling on the pending motion.[2]

As a result of Gaston's actions, all three Plaintiffs spent at least eight hours in detention, restrained to a metal bench for much of that time. *Id.* at ¶ 2. In addition, Arthur Rogers was not released with the other Plaintiffs, but rather was detained overnight in a jail cell. *Id.* Because of the ankle restraint Defendants used on him, Hale, who suffers from diabetes, developed an ulcer on his foot that required amputation and still is susceptible to frequent infection. *Id.*

## Argument

**I.      Plaintiffs are not seeking monetary damages against Gaston.**

At the outset, Gaston argues that the Court should dismiss any claims for monetary damages against him in his official capacity. ECF No. 8 at 9-10. The Complaint does not seek

---

[2] Keeping this story straight has been challenging for Gaston. In his written explanation, he claimed that Rogers "repeatedly ignored" Gaston's commands "and use[d] inappropriate language after repeated warnings." ECF No. 1 at ¶ 61. That, like his new claim of a lunge, is a work of fiction.

6

monetary damages against Gaston. Plaintiffs pray that the Court "[e]nter declaratory judgment against Defendant Gaston," and "award Plaintiffs nominal, compensatory, and punitive damages against the Doe Defendants." ECF No. 1 at 15.[3]

## II.     Gaston is not entitled to judicial immunity.[4]

The Eighth Circuit recently reiterated two circumstances where a judge is not immune from liability:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam)). Both circumstances are present here.

### A.     Gaston's actions were not judicial acts taken in his judicial capacity.

"[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Justice Network*, 931 F.3d at 760 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Thus, "to determine whether an act is judicial, courts look to the particular act's relation to a <u>general</u>

---

[3] Despite making this argument for dismissal, even Gaston recognized "Plaintiffs seek only declaratory judgment against [him]." ECF No. 8 at 16.

[4] A claim for prospective declaratory judgment is not barred by judicial immunity. *See*, *e.g.*, *Snow v. King*, 2018 WL 656032, at *6 (N.D. Ala. Feb. 1, 2018) (holding that "Plaintiff's requests for declarations that 'the Court engages in a pattern and practice of such conduct in violation of the Due Process, Takings Clauses of the 14th and 5th Amendments, 42 U.S.C. 1983, 1st and 6th Amendments, the Alabama Constitutional corresponding provisions and state common law and statutes,' and that '[the nuisance] ordinance [is] unconstitutional to the extent it does not require a description of said alleged inoperable vehicle and nuisance' are prospective in nature and are not barred by judicial immunity."); *CMLS Management, Inc. v. Fresno County Superior Court*, 2012 WL 2931407, at *7 (E.D. Cal. July 18, 2012) ("Judge Snauffer's arguments that he is entitled to various immunities are not persuasive. Since Plaintiffs are seeking prospective declaratory relief, neither judicial immunity nor Eleventh Amendment immunity apply."); *McPherson v. Town of Southhampton*, 664 F. Supp.2d 203, 211 (E.D.N.Y. 2009) ("To the extent Plaintiffs seek prospective declaratory relief, viz. a declaration that the Justices' enforcement of the Town rental law constitutes a continuing violation of the Constitution, Plaintiffs' claims are not barred by judicial immunity.").

function normally performed by a judge." *Id.* (internal quotation marks omitted) (emphasis added).

Judges do not normally force anyone, even parties, into police custody for the involuntary production and testing of their urine. This never happens to non-parties. Indeed, Gaston cannot cite a single example of any judge anywhere doing so. Ever. This is not a "general function normally performed" by judges. Thus, it is not an action taken in Gaston's judicial capacity.

Aware of just how unprecedented it is to force non-parties into police custody for forcible drug-testing, Gaston attempts to recast his act as "requir[ing] all parties to be drug tested" because "the safety and best interests of a three-year old child, K.C. (whose parents were allegedly heavy users of methamphetamine and had recently absconded with her), were at stake." ECF No. 8 at 7. Gaston ignores that none of the Plaintiffs were parties. He overlooks Missouri Supreme Court Rule 52, which describes how persons become parties to a civil action and, on these facts, cannot sustain his claim that Plaintiffs were parties. Moreover, he disregards the allegation in the Complaint that Plaintiffs were not parties to the proceeding. ECF No. 1 at ¶ 1; *id*. at ¶ 2 ("none of the Plaintiffs were parties to the custody proceeding"). Furthermore, while it is not necessary to go outside of the pleadings, a review of the Texas County case records for *In re K.C.*, No. 17TE-PR00037, also establishes that none of the Plaintiffs are named as parties.[5]

At this stage, the narrow question is whether Gaston's act forcing Plaintiffs, as non-parties, into the custody of law enforcement and compelling them to produce a urine sample for inspection by law enforcement and punishment by a court is a function "normally" performed by a judge. While judges might sometimes require parties to a child custody dispute to undergo drug

---

[5] Gaston invites the Court to take judicial notice of the public records in the case file. ECF No. 8 at 5 n. 1. Although the state court does nothing to keep the minor's name confidential, Plaintiffs use initials to identify the case. *See* Fed. R. Civ. P. 5.2(a)(3).

testing, they do not require this of non-parties. Moreover, even parties to a child custody case are not forced into police custody for immediate extraction and testing of their urine sample or detained in custody for a positive test.[6]

Finally, Gaston's reliance on *Stump v. Sparkman*, 435 U.S. 349 (1978), is misplaced. ECF No. 8 at 12. In *Stump*, the plaintiffs attempted to overcome judicial immunity by arguing that the judge's "approval of a petition was not a judicial act because the petition was not given a docket number, was not placed on file with the clerk's office, and was approved in an *ex parte* proceeding without notice to the minor, without a hearing, and without the appointment of a guardian ad litem." *Id*. at 360. The Court emphasized that prior precedent supported the conclusion that the judge was entitled to judicial immunity. *Id*. at 360-61. There is no precedent that helps Gaston. And, while approving a pleading is something judges across the country do routinely, no judge does what Gaston did here.

Gaston is not entitled to judicial immunity because forcing non-parties into the custody of law enforcement to produce a urine sample for analysis and detaining them thereafter is not a judicial act.

**B.    Gaston did not act within his jurisdiction.**

As broad as the Supreme Court's test is for whether an action is within a judge's jurisdiction for immunity purposes, it is not so boundless as to encompass Gaston's act of forcing non-parties into police custody for drug-testing and detention.

---

[6] Judges might be entitled to judicial immunity when they require parties to a child custody case to undertake a drug test. *See*, *e.g.*, *Thomas v. State of Texas*, 294 F. Supp.3d 576, 601 (N.D. Tex. 2018) (holding that judge was entitled to judicial immunity when he ordered plaintiff, the mother of three children in a child custody case, to undergo drug tests); *Schwab v. Kansas*, 2017 WL 283150-8, at *10 (D. Kan. June 30, 2017) (same; ordering parents to undergo drug testing in child in need of care proceedings). No case supports taking individuals into custody or drug-testing non-parties, and these cases cannot be stretched to shield Gaston's actions from review.

9

At the outset, Gaston's argument fails because it is premised on the assertion that Plaintiffs were "parties" before him. ECF No. 8 at 14. This is contrary to the allegations in the Complaint and Missouri law. Gaston also pretends that he merely required a drug-test, ignoring that he forced Plaintiffs into the custody of law enforcement for the drug test and had them detained even after the test was complete; he does not explain how these acts were in aid of his jurisdiction over the probate case.

*Mireles* highlights the difference between situations in which there is judicial immunity and this case. There, a judge ordered police officers to "forcibly and with excessive force seize and bring" a public defender who "failed to appear for the initial call" before the judge. *Mireles v. Waco*, 502 U.S. 9 (1991). Finding judicial immunity, the Court emphasized that "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge" and "cannot be said to have been taken in the absence of jurisdiction." *Id*. at 12-13. In contrast, it is not a normal function of a judge to require observers to court proceedings to be taken into police custody for the purpose of extracting a urine sample for drug testing and to remain detained after the test is complete. Not only are Plaintiffs not officers of the court, as were the *Mireles* plaintiffs, they were not simply brought before the court but also taken into police custody, forced to submit to two suspicionless government searches,[7] and detained even after their drug tests. And despite Gaston's post hoc attempts to rationalize his action, this was not an act in aid of his jurisdiction. He imagines (contrary to the pleadings) that Mr. Rogers lunged at him, which if true might disrupt proceedings, but even then does not

---

[7] In the drug-testing, even outside of the law enforcement and punishment context that Gaston imposed here, the collection of the urine sample and the subsequent analysis of that sample constitute separate Fourth Amendment violations. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989) (stating that "it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. The ensuing chemical analysis of the sample to obtain physiological data is a further invasion of the tested employee's privacy interests.").

10

explain why Mrs. Rogers and Mr. Hale were taken into police custody, detained, and forced to submit to a drug test. And he pretends that Mr. and Mrs. Rogers were parties, even though they were not, because—*unbeknownst to Gaston*—they would have been willing to take custody of their granddaughter if necessary but does not explain why he subjected Mr. Hale to such government overreach.

### III. Plaintiffs' claim for declaratory relief is not moot.

Plaintiffs seek "declaratory judgment against Defendant Gaston." ECF No. 1 at 15. Consistent with applicable law, Plaintiffs seek prospective declaratory relief. *See Justice Network*, 931 F.3d at 763-64.

Gaston argues that Plaintiffs' request for declaratory relief is moot because he thinks "there is neither any alleged ongoing deprivation of [Plaintiffs'] constitutional rights, nor an allegation that such a deprivation is imminent." ECF No. 8 at 17. He speculates that it is unlikely that Plaintiffs will ever be subject to his overreach in the future, especially after he has recused himself from the probate case involving Mr. and Mrs. Rogers's granddaughter.

A ruling on a motion to dismiss considers the allegations in the Complaint, not a defendant's self-serving musings. *See Doe v. Nixon*, 716 F.3d 1041, 1051 (8th Cir. 2013) ("The heavy burden of persuad[ing] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."). Plaintiffs allege that Gaston "is prone to losing his temper" and "has since [June 20, 2017], ordered the arrest, drug testing, and detention without probable cause of an unrelated nonparty in an unrelated matter." *Id*. at ¶ 3. *See also id*. at ¶¶ 70-73. Moreover, Plaintiffs specifically allege that Gaston "has instituted and carried out a policy of arbitrarily and capriciously ordering the arrest, detention, and drug testing of members of the public who observe court proceedings and/or who associate with litigants who

11

appear in his court in order to chill their First Amendment-protected expressive activity." *Id*. at ¶ 93. *See also id*. at ¶ 75.

Gaston is the resident judge at the Texas County Courthouse. Like the rest of the public who enter the Courthouse for any reason, Plaintiffs—who all live within his circuit, *id.* at ¶¶ 4-5—are at risk of being subjected to his unconstitutional whims again in the future. Gaston has not renounced the policy (of ordering the arrest, detention, and drug-testing of members of the public) and it is therefore still in effect. *See Kennedy Building Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (holding that a case becomes moot only "if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"). There is a reason one of the Doe Defendants intimated to Norma Rogers after the fact that Defendant Gaston had a track record of making similar commands. Compl. at ¶ 75. In fact, Gaston is so attached to this policy that, in the other unrelated matter described by Plaintiffs in the Complaint wherein Gaston had a non-party drug-tested and detained, Gaston defended his actions and said to act otherwise would have "set a dangerous precedent." *Id.* at ¶ 74. He has given the court no reason to believe he has changed that view. *Kennedy Building Assocs.*, 375 F.3d at 745 (reiterating that the burden of proving mootness is on the party asserting it); *accord Doe*, 716 F.3d at 1051.

Even if Gaston were to claim that this policy is no longer in effect, it would not make declaratory relief moot as "voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2012) (holding that constitutional claim was not moot despite government

12

official's announcement that allegedly unconstitutional policy would no longer be enforced). There is no reasonable expectation that, even if the policy were renounced (which it has not been), it cannot be reasonably expected to recur, given that it has already been repeated. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (holding that although unconstitutional fee had never been imposed, defendant could "at any time implement its policy and assess the fee," and therefore the parties "continue[d] to have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). In addition, Plaintiff Hale continues to experience the painful effects of Gaston's violation. *Kennedy Building Assocs.*, 375 F.3d at 745 (holding that a case is moot if "events have completely and irrevocably eradicated the effects of the alleged violation").

Plaintiffs live nearby (Compl. at ¶¶ 4-5) and could return to the Courthouse at any time—for example, to observe hearings in criminal cases involving Mr. Rogers' daughter, which have occurred repeatedly since this date, including before Gaston. *See* 18TE-CR00288.[8] They have pled sufficient facts to seek prospective declaratory relief that Gaston cannot continue to arbitrarily and capriciously order the detention and drug testing of members of the public who observe court proceedings or who associate with litigants who appear in court.[9]

## **Conclusion**

For the foregoing reasons, the Court should deny Defendant Gaston's motion to dismiss.

---

[8] It is not necessary to go beyond the pleadings to deny Defendant Gaston's motion to dismiss. However, should the Court disagree, Plaintiffs request the opportunity to amend before the Court rules on the motion.

[9] Gaston declares that he "had nothing to do with the method by which" the Doe Defendants carried out his demand that Plaintiffs be drug-tested and that he "never ordered Plaintiffs detained." (Br. at 15.) This flight of fancy is belied by the fact that he explicitly summoned law enforcement to conduct the drug-testing immediately (Compl. at ¶ 29, quoting Gaston as calling out, "Sheriff, will you help me carry that out?") and then explicitly commanded be Plaintiffs detained (*Id.* at ¶ 40). Further, he did not intervene as Defendant John Doe 1 escorted the handcuffed Plaintiffs out of his courtroom. *Id.* at ¶ 41. Gaston's effort to shirk responsibility for the harm he caused must be rejected, particularly at the motion to dismiss stage.

13

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
Omri E. Praiss, #41850
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
trothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
(816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFFS

14

**CERTIFICATE OF NOTICE**

I hereby certify that on January 10, 2020, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ Anthony E. Rothert