# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| NORMA ROGERS, ARTHUR ROGERS, WILLIAM HALE, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) Case No. 6:19-03346-CV-RK |
| v. | ) ) |
| DOUGLAS D GASTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; JANE DOE 1-3, JOHN DOE 1-3, | ) ) ) ) ) |
| Defendants. | ) ) |

## ORDER DENYING MOTION TO DISMISS

Before the Court is Defendant Douglas Gaston ("Judge Gaston")'s motion to dismiss. (Doc. 8.) The motion is fully briefed. (Docs. 8, 11, 13.) After careful consideration, the motion to dismiss is **DENIED**.

### Background

Plaintiffs filed their Complaint on September 30, 2019, alleging three claims pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Doc. 1.) The facts of the case surround a custody hearing (the "Hearing") for K.C., a minor child, in the Circuit Court of Texas County, Missouri (the "Circuit Court"). On April 10, 2017, K.C.'s paternal grandparents filed a custody petition in the Circuit Court, alleging K.C.'s natural parents were unfit, along with an emergency motion seeking temporary guardianship of K.C. Judge Gaston, who was assigned the case, granted the motion and set a hearing for June 20, 2017. K.C.'s natural parents received notice of the hearing and requested Plaintiffs Norma and Arthur Rogers ("Rogers"), the maternal grandparents of K.C., attend the hearing for support. Plaintiffs Norma and Arthur Rogers requested Plaintiff William Hale ("Hale") give them a ride to court.

On June 20, 2017, Plaintiffs were seated in the gallery of the Circuit Court, and Judge Gaston opened court. Several minutes into the proceeding, Judge Gaston inquired who was present in the courtroom. Plaintiff Arthur Rogers ("Mr. Rogers") stood and identified himself and his wife Norma ("Ms. Rogers"). The alleged transcript of the conversation is as follows:

*Judge Gaston to the Rogers*: "Okay, are you all represented by counsel?"

*Arthur Rogers*: "We did not think we would need, uh—"

*Norma Rogers*: "Uh, that's right."

*Judge Gaston*: "Okay, OKAY, okay. I'm just asking. Simple questions so far. No attorney is all I'm asking right now. So. No attorney right now, is that correct?"

*Arthur Rogers[1]*: "Uh, is any attorney ready to take this case? We can have them right here—"

*Judge Gaston*: "OKAY, SIR. Just listen to me."

*Rogers*: "Yes, sir."

*Judge Gaston*: "I'm just asking you a question."

*Rogers*: "No, sir."

*Judge Gaston*: "You don't have an attorney now."

*Rogers*: "No, sir."

*Judge Gaston*: "Okay, there is a temporary guardianship that's in effect. I'm going to show that will remain in effect until such time as we can have a hearing that will give you all a chance to get represented by counsel, which I would suggest that you do, everybody, and then we will be ready to do this hearing. Now typically when we schedule these things we need the attorneys to be involved in when the thing is scheduled in order that everybody's got the date available. We'll put this down for just a setting date. So get your attorney hired and we'll put it on for, let's see—we'll put it on the docket for July 6th at 9 o'clock for everybody to be here with their attorney and we'll get it set for a full hearing on that day, all right?"

*Rogers*: "Can I ask one question?"

*Judge Gaston*: "Yes."

*Rogers*: "Uh, how can they, uh, have the child, and then they go to the park to meet the mother so the mother can see the child and then the mother, the mother, his mother just, uh, has a piece of paper and then just takes the child away from them when—"

*Judge Gaston*: "WELL, HERE'S HOW. I've got sworn statements that the child is in immediate danger and so I file—"

*Rogers*: "But that's just not true."

---

[1] "Rogers" refers to Arthur Rogers for the remainder of the alleged transcript.

2

*Judge Gaston*: "Okay, DON'T INTERRUPT ME."

*Rogers*: "No, sir."

*Judge Gaston*: "You understand?"

*Rogers*: "Yes, sir."

*Judge Gaston*: "And you do it again and there's a penalty for that."

*Rogers*: "Yes, sir."

*Judge Gaston*: "It involves a cell with bars."

*Rogers*: "Yes, sir."

*Judge Gaston*: "All right?  Now.  I signed the order.  The order is in effect; it will remain in effect.  Because the child will remain safe when they're in my custody.  And I don't want to hear your 'yes, sir' anymore.  So that's the way it is.  I'm giving you time to get an attorney hired and contest whatever you think you need to, and that's your responsibility to do that.  Show up on July 6th with an attorney or without an attorney, that's your decision.  But I'm gonna set it for full hearing on that day at which time I'll receive all evidence and make a decision based on all the evidence that's presented to me.  At this time, the emergency order will remain in full force and effect.  And I'm going to require all parties to be drug tested today before you leave.  Any other questions?  All right.  Good."

*Judge Gaston*: "Sheriff, will you help me carry that out?  That's for everybody that stood up here today."

*Petitioners' attorney*: "Judge, the petitioners would certainly agree to do that as well if you are requiring that of them."

*Judge Gaston to attorney*: "Let's do that."

*Judge Gaston to Arthur Rogers*: "Oh, come back.  YOU JUST COME RIGHT BACK.  Something you want to say?"

*Rogers*: "No, sir! I'm—nothing!"

*Judge Gaston*: "Well, you just bought yourself 24 hours in the Texas County Jail for that look.  Now anything else you wanna say or any looks you want to give?"

*Rogers*: "I wasn't giving—"

*Judge Gaston*: "NO, you gave it and I saw it.  Now is there anything else you wanna say or are you smart enough to shut your mouth now?  Good choice."

(Doc. 1) (bolding removed, other emphasis in original).

3

Following this, Defendant John Doe 1, who was armed and in uniform, took custody of Plaintiffs, as well as the other parties in the courtroom, and escorted them to the Texas County Jail. The Doe Defendants then proceeded to have Plaintiffs urinate in a plastic cup, and drug tested the samples. The Doe Defendants then ordered Plaintiffs to sit, restrained on a metal bench while the drug screening results were pending. The drug tests came back positive, but that was apparently due to the Plaintiffs' prescription medication. After being brought back into the courtroom and then back to the Texas County Jail, the Plaintiffs were once again restrained, now by their ankles, to a metal bench. Eventually, Plaintiffs Hale and Ms. Rogers were released that day. As a result of being restrained by his ankle to a metal bench, Hale developed an ulcer on his foot, which later required partial amputation.

Regarding Mr. Rogers, Judge Gaston issued a handwritten contempt order that read: "Mr. Rogers repeatedly ignores commands of the Court and uses inappropriate language after repeated warnings. The Court finds him in Contempt and sentenced to 1 day in T.C. Jail."[2] Mr. Rogers was released the next day. Finally, while the case involving K.C.'s custody is still ongoing in the Circuit Court, Judge Gaston has now recused himself from the case.

**Legal Standard**

Federal pleading rules provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's pleading standard must be read in conjunction with Rule 12(b)(6), which tests a pleading's legal sufficiency. To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Arkansas Dept. of Human Serv.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks and citation omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Id.* at 371 (citation omitted). When

---

[2] While the documents filed in the custody proceeding are not part of the current record, a Court may take judicial notice of public records and consider them on a motion to dismiss. *Stahl v. U.S. Dep't. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

In addition to seeking dismissal under Rule 12(b)(6), Judge Gaston also seeks dismissal on judicial immunity grounds under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action." *Knox v. St. Louis City Sch. Dist.*, 2018 U.S. Dist. LEXIS 209123, at *2 (E.D. Mo. Dec. 12, 2018). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus v. Sullivan*, 4 F.3d 590, 593, n. 1 (8th Cir. 1993). Further, Plaintiff bears the burden of proving jurisdiction exists. *Id.*; *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted).

## Discussion

Judge Gaston moves to dismiss all claims against him, arguing he is protected by judicial immunity and that Plaintiffs' claims are moot. The Court will address each in turn.

### I. Judicial Immunity

To begin, Plaintiffs only seek declaratory relief against Judge Gaston (Doc. 1), and cite to several cases, which hold judicial immunity is not a bar to prospective declaratory relief. *See, e.g.*, *Snow v. King*, No. 4:17-CV-1048-VEH, 2018 WL 656032, at *4 (N.D. Ala. Feb. 1, 2018), *appeal dismissed*, No. 18-10816-J, 2018 WL 2717366 (11th Cir. May 1, 2018) (holding that "Plaintiff's requests for declarations . . . . are prospective in nature and are not barred by judicial immunity."); *CMLS Management, Inc. v. Fresno County Superior Court*, No. 1:11–CV–1756 AWI SKO, 2012 WL 2931407, at *7 (E.D. Cal. July 18, 2012) ("Since Plaintiffs are seeking prospective declaratory relief, neither judicial immunity nor Eleventh Amendment immunity apply."); *MacPherson v. Town of Southhampton*, 664 F. Supp.2d 203, 211 (E.D.N.Y. 2009) ("To the extent Plaintiffs seek prospective declaratory relief . . . Plaintiffs' claims are not barred by judicial immunity.") Claims for retrospective declaratory relief, however, can be barred by judicial immunity. *Justice Network, Inc.*, 931 F.3d 553, 764 (8th Cir. 2019); *MacPherson*, 664 F. Supp. at 211. Here, while Plaintiffs

5

state they are only seeking prospective declaratory relief (Doc. 11), the complaint itself is vague and Plaintiffs still engage a detailed discussion of judicial immunity. To any extent Plaintiffs' declaratory claims against Judge Gaston are retrospective in nature, they are barred by absolute judicial immunity for the reasons set forth below. *Id.* Plaintiffs' claims for prospective declaratory relief against Judge Gaston, however, are not barred by judicial immunity.

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* "A judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). The two circumstances in which judicial immunity is overcome are: (1) nonjudicial acts, or (2) if the actions were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. 9, 12 (1991). However, "a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* (quotation and citation omitted).

### A. Judge Gaston's Actions Were Judicial Acts

An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity. *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982) (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019) (citing *Stump*, 435 U.S. at 362). In determining whether an act is judicial, courts "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 12.

Here, Judge Gaston's decision to order drug testing, especially in a child custody case, was a judicial act. Several Missouri cases suggest a judge has the authority to order drug testing of the parties involved in a custody proceeding. *See In re D.D.C.*, 351 S.W.3d 722, 728 (Mo. Ct. App. 2011) (discussing the results of a court-ordered drug test); *In re M.L.R.*, 249 S.W.3d 864, 867 (Mo. Ct. App. 2008) ("On the first day of the trial, Mother submitted to a court ordered drug test."); *In re S.Y.B.G.*, 443 S.W.3d 56, 62 (Mo. Ct. App. 2014) (discussing the results of court-ordered drug

6

screens); *In re C.K.*, 221 S.W.3d 467, 473 (Mo. Ct. App. 2007) ("the circuit court ordered M.T. to have a hair test for drug testing.").

Further, while not controlling, the Court finds *Marchant v. Moore* persuasive. No. 3:09-CV-1218, 2010 WL 3872867, at *4 (M.D. Tenn. Sept. 28, 2010). In *Marchant*, the plaintiff was a spectator in a court proceeding. *Id*. at *1. The plaintiff had no business in the court, but rather had provided transportation for a friend who was charged that day in court. *Id.* The judge, the defendant in the case, ordered plaintiff to be taken into custody and drug tested, which he was. *Id.* In granting the judge's motion to dismiss, the court held, "Defendant was performing a normal function of a judge when he ordered Plaintiff, an observer in his courtroom, detained and screened for drugs."

Here, as in *Marchant*, Judge Gaston ordered Plaintiffs, observers in the courtroom, detained and screened for drugs. "Even if a judge exercises his power to control the courtroom erroneously or excessively, as [p]laintiff alleges here, such behavior still falls well within the ambit of judicial immunity." *Id.* (citing *Mireles*, 512 U.S. at 12). Therefore, Judge Gaston's actions were judicial acts.

### B. Judge Gaston's Actions Were Not Taken In Complete Absence Of Jurisdiction

"In examining whether a judge acted in the complete absence of all jurisdiction, the Supreme Court has instructed us to construe broadly the scope of the judge's jurisdiction where the issue is the immunity of a judge." *Justice Network, Inc.*, 931 F.3d at 762 (cleaned up) (citation and quotations omitted). "An action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction." *Id.* (citation omitted). In *Stump*, the Supreme Court articulated an example of when a Judge would be acting in complete absence of jurisdiction:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357

Here, Judge Gaston ordered Plaintiffs, three observers in the courtroom, to be drug tested during a custody proceeding. "Associate circuit judges may hear and determine all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges and may

7

be assigned such additional cases or classes of cases as may be provided by law." Mo. Const., Art. V, § 17. "In probate matters the associate circuit judge shall have general equitable jurisdiction." *Id.*; *See also In the Matter of S.J.M.*, 453 S.W.3d 340, 343 (Mo. Ct. App. 2015) ("The probate division has exclusive jurisdiction to hear guardianship cases."). Thus, Judge Gaston, as an associate circuit judge, had jurisdiction to hear the custody proceeding before him. The question then becomes whether his order that Plaintiffs be drug tested was in complete absence of his jurisdiction. The Court finds it was not.

Pursuant to Mo. Rev. Stat. § 452.785(6), a "court may enter any orders necessary to ensure the safety of the child and of any person ordered to appear under this section." Therefore, in the hearing, Judge Gaston had the authority to enter any order necessary to ensure the safety of K.C. The Plaintiffs here were family members of the child,[3] and K.C.'s parents had been accused of using methamphetamine.[4] While Judge Gaston's evaluation of what was necessary may have been extreme, it cannot be said Judge Gaston acted in a complete absence of jurisdiction.

Additionally, several courts have established a judge's authority to order drug testing. *Fischer v. Jefferson Cty. Missouri Childrens Div.*, No. 4:17-CV-1476-AGF, 2017 WL 2813428, at *1 (E.D. Mo. June 29, 2017) (holding a judge absolutely immune for ordering drug test in a custody proceeding); *see also In re D.D.C.*, 351 S.W.3d at 728 (discussing the results of a court-ordered drug test); *In re M.L.R.*, 249 S.W.3d at 867 ("On the first day of the trial, Mother submitted to a court ordered drug test."); *In re S.Y.B.G.*, 443 S.W.3d at 62 (discussing the results of court-ordered drug screens); *In re C.K.*, 221 S.W.3d at 473 ("the circuit court ordered M.T. to have a hair test for drug testing.").

Several courts have also established a judge's authority to control their courtrooms, including, if necessary, detaining individuals. *See Bryant v. Pritchett*, No. 1:16-CV-181 ACL, 2017 WL 588466, at *2 (E.D. Mo. Feb. 14, 2017) ("A judge acts in his judicial capacity when he exercises control over his courtroom and the courthouse in which it is located."; *Cox v. Dewly*, No. 4:19-CV-2744-JAR, 2019 WL 6250909, at *2 (E.D. Mo. Nov. 21, 2019) (same); *Marchant*, 2010 WL 3872867, at *2 ("Even if we assume that Defendant acted in excess of his authority by

---

[3] Plaintiffs Arthur and Norma Rogers were grandparents of K.C. (Doc. 11.) Plaintiff Hale may also be an uncle to K.C., though Plaintiffs do not make mention of this in their pleadings. (*See* Doc. 8.)

[4] This was noted in correspondence filed in the custody proceeding. *Stahl v. U.S. Dep't. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

8

detaining Plaintiff without probable cause or reasonable suspicion, Defendant did not act in the clear absence of jurisdiction because the power to detain was within the scope of his authority."); *United States v. Trudell*, 563 F.2d 889, 892 (8th Cir. 1977) ("The inherent power of a judge to require order in and around the courtroom, including the immediately adjacent areas, is fundamental to the administration of justice. To that end he may authorize and direct subordinate court officials and marshals to assure that such required order is observed") (citation omitted). Therefore, Judge Gaston did not act in complete absence of his jurisdiction and is absolutely immune from suit for retroactive declaratory relief.

However, Plaintiffs seek prospective declaratory relief against Judge Gaston. (Doc. 11; *see also* Doc. 1.) Several courts have established claims for prospective declaratory relief is not barred by judicial immunity. *See e.g.*, *Snow*, 2018 WL 656032, at *4; *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019). Thus, Plaintiffs' claims for prospective declaratory relief against Judge Gaston are not barred.

## II. Mootness

"A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Justice Network Inc.* at 764 (emphasis in original). In determining whether a request for declaratory action is moot, the question is whether the facts alleged show a substantial controversy "*of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*" *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (emphasis in original). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.*

Here, there is a substantial likelihood Plaintiffs will suffer injury in the future. Plaintiffs allege Judge Gaston has a policy and practice of drug testing and detaining non-parties, and they seek a declaration that he must refrain from doing so in future cases in which they are not parties. (Doc. 1.) Plaintiffs also allege Judge Gaston's actions would reasonably chill a reasonable person from protected First Amendment activity. (*Id.*) While, Judge Gaston has

recused himself from the custody proceeding involving K.C., Mr. Rogers' daughter, one of K.C.'s natural parents, has a criminal proceeding pending before Judge Gaston. Given the alleged policy and practices of Judge Gaston, there exists a substantial likelihood Plaintiffs would be chilled of future protected activity under the First Amendment. For instance, Plaintiffs may be chilled from attending hearings, a trial, or potential sentencing in the criminal matter because of Judge Gaston's alleged policies. Therefore, Plaintiffs' claims for prospective declaratory relief are not moot, and will not be dismissed at this time.

## Conclusion

Accordingly, and after careful consideration, to the extent Plaintiffs seek retrospective declaratory relief, Plaintiffs' claims are **DISMISSED** with prejudice. However, to the extent Plaintiffs seek prospective declaratory relief, Defendant's motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**

                s/ Roseann A. Ketchmark  
                ROSEANN A. KETCHMARK, JUDGE  
                UNITED STATES DISTRICT COURT

DATED: April 7, 2020