# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| NORMA ROGERS, ARTHUR ROGERS, and WILLIAM HALE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 19-3346 ) |
| DOUGLAS GASTON, BOBBY DUNCAN, JOHN DOES 1-3, and JANE DOES 1-3, | ) ) ) ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiffs Norma Rogers, Arthur Rogers, and William Hale allege as follows:

## INTRODUCTION

1. On June 20, 2017, Mr. and Mrs. Rogers went to a proceeding in open court concerning their granddaughter's custody. They were not parties to the case, but they intended to observe the hearing and—if an opportunity arose—to offer to care for their granddaughter. Mr. Hale, who lives near the granddaughter's parents, drove the parents to court since they had no transportation.

2. Although none of the Plaintiffs were parties to the custody proceeding, Defendant Douglas Gaston, associate circuit judge in Texas County, Missouri, conspired with a deputy sheriff to take Plaintiffs into custody, test their urine for drugs, and detain them in county jail. Plaintiffs Norma Rogers and William Hale spent almost eight hours in detention, restrained to a metal bench for much of that time. Because of the ankle restraint Defendants used on him, Mr. Hale, who suffers from diabetes, developed an ulcer on his foot that required amputation and still is susceptible to frequent infection. Plaintiff Arthur Rogers was not released with his wife and

son-in-law but was instead detained overnight in a jail cell after Defendant Gaston said to him: "You just bought yourself 24 hours in the Texas County Jail for that look."

3. These actions—including arresting and drug testing Plaintiffs without a warrant, detaining them without probable cause, and restraining them in an objectively unreasonable way—violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments. Further, Defendant Gaston, who is prone to losing his temper, has since ordered the arrest, drug testing, and detention without probable cause of an unrelated nonparty in an unrelated matter, which the other Defendants carried out. Plaintiffs seek damages and declaratory relief.

## Parties

4. Plaintiffs Norma and Arthur Rogers are married and are residents of Wright County, Missouri.

5. Plaintiff William Hale is a resident of Texas County, Missouri.

6. Defendant Douglas Gaston, who is sued in his individual and official capacities, is an associate circuit judge in Texas County, Missouri, within the Twenty-Fifth Judicial Circuit of the State of Missouri.

7. Defendant Bobby Duncan is a bailiff and/or deputy sheriff employed by the Texas County Sheriff's Office. He is sued in his individual capacity.

8. Defendants John and Jane Does are bailiffs, sheriff or deputy sheriffs, and/or jail employees of the Texas County Sheriff's Office. They are sued in their individual capacities.

## Jurisdiction and Venue

9. Plaintiffs bring these claims pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, incorporated as against States and their municipal divisions through the Fourteenth Amendment.

2

10. This Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims because they "arise[ ] under the Constitution of the United States."

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants' actions giving rise to the claim in this suit occurred in Texas County, Missouri.

12. Venue is proper in the Southern Division pursuant to Local Rule 3.1(a)(3)(a).

**Facts**

13. On April 10, 2017, K.C.'s paternal grandparents filed a custody petition in the Texas County Circuit Court alleging that K.C.'s parents were unfit, along with an emergency motion seeking temporary guardianship of K.C.

14. The case was assigned to Defendant Douglas Gaston, associate circuit judge, who granted the motion and set a hearing for June 20, 2017.

15. K.C.'s parents were named as respondents and sent notice of the hearing.

16. When K.C.'s parents received the notice, they called Plaintiffs Norma and Arthur Rogers, requesting that they come to the hearing for support. They also called Plaintiff William Hale, their neighbor and landlord, and requested a ride to court.

17. Mr. and Mr. Rogers agreed to go to court so they could see what happened at the hearing and, if the opportunity arose, to offer to care for their granddaughter if needed.

18. Mr. Hale agreed to drive the parents to court since they had no means of transportation.

19. On June 20, 2017, as the three Plaintiffs were seated in the gallery to observe the custody proceeding, Defendant Gaston opened court.

20. He did not ask who was present in the courtroom or inquire whether the respondents (K.C.'s parents) were in attendance.

21. The guardian ad litem for K.C. and the petitioners' attorney made their appearances, and the attorney called one of the petitioners to testify.

22. Several minutes into her testimony, the petitioner stated that the respondents had obtained employment, and the respondents verbalized their agreement.

23. This caused Defendant Gaston to take notice of the respondents for the first time. He then stated: "Who else is here?" and looked out into the gallery.

24. Plaintiff Arthur Rogers is hard of hearing.

25. But in response to Defendant Gaston's question, Plaintiff Arthur Rogers stood and identified himself and his wife, Plaintiff Norma Rogers.

26. Defendant Gaston did not address Plaintiff William Hale specifically, so he continued to sit quietly in the gallery.

27. Defendant Gaston briefly questioned the respondents and then held a sidebar with petitioners' attorney and the guardian ad litem.

28. After that, Gaston then turned to address the Rogerses.

29. That exchange went as follows:

> *Gaston to the Rogerses*: "Okay, are you all represented by counsel?"
> *Arthur Rogers*: "We did not think we would need, uh—"
> *Norma Rogers*: "Uh, that's right."
> *Gaston*: "Okay, OKAY, okay. I'm just asking. Simple questions so far. No attorney is all I'm asking right now. So. No attorney right now, is that correct?"
> *Rogers*:[1] "Uh, is any attorney ready to take this case? We can have them right here—"
> *Gaston*: "OKAY, SIR. Just listen to me."
> *Rogers*: "Yes, sir."
> *Gaston*: "I'm just asking you a question."
> *Rogers*: "No, sir."
> *Gaston*: "You don't have an attorney now."
> *Rogers*: "No, sir."

---

[1] "Rogers" refers to Plaintiff Arthur Rogers for the remainder of paragraphs 28 and 29.

*Gaston*: "Okay, there is a temporary guardianship that's in effect. I'm going to show that will remain in effect until such time as we can have a hearing that will give you all a chance to get represented by counsel, which I would suggest that you do, everybody, and then we will be ready to do this hearing. Now typically when we schedule these things we need the attorneys to be involved in when the thing is scheduled in order that everybody's got the date available. We'll put this down for just a setting date. So get your attorney hired and we'll put it on for, let's see—we'll put it on the docket for July 6th at 9 o'clock for everybody to be here with their attorney and we'll get it set for a full hearing on that day, all right?"
*Rogers*: "Can I ask one question?"
*Gaston*: "Yes."
*Rogers*: "Uh, how can they, uh, have the child, and then they go to the park to meet the mother so the mother can see the child and then the mother, the mother, his mother just, uh, has a piece of paper and then just takes the child away from them when—"
*Gaston*: "WELL, HERE'S HOW. I've got sworn statements that the child is in immediate danger and so I file—"
*Rogers*: "But that's just not true."
*Gaston*: "Okay, DON'T INTERRUPT ME."
*Rogers*: "No, sir."
*Gaston*: "You understand?"
*Rogers*: "Yes, sir."
*Gaston*: "And you do it again and there's a penalty for that."
*Rogers*: "Yes, sir."
*Gaston*: "It involves a cell with bars."
*Rogers*: "Yes, sir."
*Gaston*: "All right? Now. I signed the order. The order is in effect; it will remain in effect. Because the child will remain safe when they're in my custody. And I don't want to hear your 'yes, sir' anymore. So that's the way it is. I'm giving you time to get an attorney hired and contest whatever you think you need to, and that's your responsibility to do that. Show up on July 6th with an attorney or without an attorney, that's your decision. But I'm gonna set it for full hearing on that day at which time I'll receive all evidence and make a decision based on all the evidence that's presented to me. At this time, the emergency order will remain in full force and effect. **And I'm going to require all parties to be drug tested today before you leave.** Any other questions? All right. Good."
*Gaston*: **"Sheriff, will you help me carry that out? That's for everybody that stood up here today."**
*Petitioners' attorney*: "Judge, the petitioners would certainly agree to do that as well if you are requiring that of them."
Gaston to attorney: "Let's do that."

30. After about 15 seconds, Defendant Gaston continued:

5

> Gaston to Arthur Rogers: "Oh, come back. YOU JUST COME RIGHT BACK. Something you want to say?"
> Rogers: "No, sir! I'm—nothing!"
> Gaston: "**Well, you just bought yourself 24 hours in the Texas County Jail for that look**. Now anything else you wanna say or any looks you want to give?"
> Rogers: "I wasn't giving—"
> Gaston: "NO, you gave it and I saw it. Now is there anything else you wanna say or are you smart enough to shut your mouth now? Good choice."

31. None of the Plaintiffs said or did anything unlawful the entire time they were at the Texas County courthouse.

32. When Defendant Gaston said, "Sheriff, will you help me carry that out?" he was addressing deputy sheriff and bailiff Bobby Duncan.

33. Defendant Bobby Duncan, who was armed and in uniform, took custody of one or more of the Plaintiffs and escorted them out of the courtroom and to the Texas County Jail.

34. Defendant Duncan may have enlisted another deputy sheriff and bailiff, Defendant John Doe 1, in taking custody of one or more of the Plaintiffs and escorting them to the Texas County Jail.

35. Plaintiffs did not consent to be taken into custody.

36. The Doe Defendants retrieved supplies to conduct drug tests and then ordered Plaintiffs to urinate into a plastic cup.

37. Defendant John Doe 2 watched while Plaintiffs Arthur Rogers and William Hale unzipped their pants and urinated into the cups they had been given.

38. Defendant Jane Doe 1 watched while Plaintiff Norma Rogers pulled down her pantyhose and urinated into the cup she had been given.

39. Although Plaintiff Norma Rogers tried to explain that she and her husband and son-in-law were all taking medications lawfully prescribed to them by their treating physician and she did not know if that would affect the test results, the Doe Defendants ignored her.

40. The Doe Defendants then ordered Plaintiffs to sit, restrained, on a hard metal bench while the drug screen results were pending.

41. Plaintiff Norma Rogers' purse and jewelry were seized.

42. After the results came back, Defendant John Doe 1 led Plaintiffs, who were handcuffed, back up to the courtroom, which was full of people waiting to appear in their ongoing criminal cases.

43. After Plaintiffs were ordered to sit by Defendant John Doe 1, Defendant Gaston came into the courtroom and loudly and angrily berated Plaintiffs, making a statement to the effect of: "I dare you to come into my courtroom on drugs. 30 days for all of you starting now."

44. Defendant John Doe 1 then escorted the handcuffed Plaintiffs back to the Texas County Jail and ordered them to sit on a hard metal bench. The Doe Defendants then restrained each Plaintiff to the bench.

45. Shortly thereafter, Defendant Jane Doe 2 called the local pharmacy, handed the telephone to Plaintiff Norma Rogers, and ordered her to tell the pharmacist to send the three Plaintiffs' prescription records to the jail.

46. Plaintiff Norma Rogers complied, and the pharmacy faxed the prescription records to the jail fax line at approximately 12 p.m.

47. A jail employee brought the prescription records to Defendant Gaston shortly after they arrived.

48. At approximately 2 p.m., the respondents (K.C.'s parents), who had also been drug tested and had been restrained to a metal bench, were taken away from the place Plaintiffs were being held, given orange jumpsuits, and placed into a jail cell.

49. Plaintiffs' wrists were unrestrained while they ate lunch, but Mrs. Rogers and Mr. Hale were then cuffed to the bench by their ankles.

50. All three Plaintiffs were numb and in pain from the unnatural position they had been placed in by Defendants, but Mr. Hale's pain was practically unbearable.

51. Mr. Hale suffers from chronic obstructive pulmonary disease, hypertension, and diabetes, which causes neuropathy in his extremities.

52. To relieve his daily, chronic pain from these conditions, Mr. Hale has an implantable stimulator used to relieve pain by sending electric pulses through the body.

53. That afternoon, he activated the stimulator over and over because of the unrelenting shooting pains he felt in his restrained leg.

54. Doe Defendants told Mr. Hale there was nothing they could do about it.

55. Mrs. Rogers interceded and pleaded with Doe Defendants to release Mr. Hale from his ankle restraint so he could get some relief.

56. Finally, at 5:30 p.m., a jail employee took pity on Mr. Hale and allowed him to elevate his foot, saying something to the effect of: "I'm going to get in trouble for this."

57. Mrs. Rogers and Mr. Hale were released from the Texas County Jail without further explanation at approximately 5:45 p.m.

58. Mr. Hale, who had previously suffered from a diabetic ulcer in his foot and had had a portion of his foot amputated as a result, wears a prescription insert in his shoe.

59. He had not had problems with that foot in years.

60. But that night, after he had spent hours with his ankle cuffed to the bench, Mr. Hale found he was unable to remove his shoe or his insert because his foot had swollen so much. His foot was adhering to the inside of his shoe.

61. Mr. Hale eventually got his shoe off, but when he woke up the next morning, he had an ulceric hole in his foot from an ulcer that had developed overnight.

62. Although Mr. Hale's treating physician tried to prevent another amputation, it could not be done. In October 2017, as a result of the cuffing, Hale's new ulcer—which had become infected with staphylococcus aureas—was amputated along with a portion of his foot.

63. Arthur Rogers was not released with his wife and son-in-law on June 20, 2017, but was instead placed in a cell and kept overnight.

64. Defendant Gaston issued a handwritten contempt order that read: "Mr. Rogers repeatedly ignores commands of the Court and uses inappropriate language after repeated warnings. The Court finds him in Contempt and sentenced to 1 day T.C. Jail."

65. Norma Rogers had been present when Defendant Gaston had said "You just bought yourself 24 hours in the Texas County Jail for that look," so she believed Arthur Rogers would be released the following day.

66. The next morning, Norma Rogers called Texas County Sheriff's Office to inquire what time Arthur Rogers would be released so that she could pick him up.

67. Defendant John Doe 3 told her Arthur Rogers would not be released that day, that Defendants were keeping him for 30 days, and that Defendant Gaston had commanded that he be detained for a full 30 days.

68. Norma Rogers was dismayed because Arthur Rogers takes daily medications that he had not had on his person when he had gone to observe the custody hearing.

69. Norma and Arthur Rogers also own a ranch, and Mrs. Rogers needed her spouse's assistance to give a shot to a sick milk cow and to bale down the waiting hay.

70. John Doe 3 told Norma Rogers that she could bring Arthur Rogers' medications to the jail and someone would examine them and let her know which he could keep, so Norma Rogers gathered her husband's pill bottles and drove to the courthouse.

71. When she arrived, Mrs. Rogers went to various courthouse offices and begged for help, imploring various employees to explain why Defendants were now requiring Mr. Rogers to be detained 30 days, and pleading that he be released instead.

72. After several people had turned Mrs. Rogers away, a sympathetic court employee finally intervened on her behalf and persuaded Defendants to release Mr. Rogers.

73. In October 2017, at the same time Mr. Hale was trying to stave off amputation, Defendants were holding Starry Bayless, another person Defendant Gaston had ordered seized, drug tested, and detained without lawful cause in the Texas County Jail.

74. Like Plaintiffs, Ms. Bayless had gone to a proceeding in open court at the request of a family member who was a litigant: in her case, her brother, who is deaf and wanted to ensure he understood what happened in court.

75. In a court document, Defendant Gaston admitted that Ms. Bayless was a nonparty "member of the public observing Court proceedings."

76. Defendant Gaston defended Defendants' practice, stating that the seizure, warrantless search, and detention of Ms. Bayless had been justified because, first, she "stands up and starts interrupting Court" and then, after Defendant Gaston ordered her drug tested without a warrant and the Texas County Sheriff's Office had effectuated that order, Ms. Bayless "continues to argue and interrupt the Honorable Judge."

77. Defendant Gaston stated that "failure to summarily act" in light of Ms. Bayless' actions "would set a dangerous precedent for future court proceedings."

78. Sometime later, Plaintiff Norma Rogers saw one of the defendants at a yard sale. Defendant Jane Doe 1 told her that she had not been surprised about what had happened to Plaintiffs because, she intimated, Defendant Gaston had issued similar orders before and the other Defendants had carried them out. Defendant Jane Doe 1 stated that she could not say more because she would lose her job.

79. The proceeding concerning K.C.'s custody is still ongoing in the Texas County Circuit Court.

80. However, because of Defendants' violations of their rights, Plaintiffs are afraid to return to court for any reason.

## Count I: Fourth Amendment

### *All Plaintiffs vs. All Defendants*

81. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

82. All Defendants acted under color of law at all relevant times.

83. Defendants Gaston, Duncan, and John Doe 1 unlawfully seized Plaintiffs without a warrant or probable cause when they took Plaintiffs into custody for the purpose of conducting a warrantless drug urine test, in violation of Plaintiffs' Fourth Amendment rights.

84. Defendants Gaston, Duncan, and all Doe Defendants conducted an unreasonable, highly intrusive warrantless search when they ordered them to urinate into a cup inside the Texas County Jail and then carried out those urine drug tests without cause, in violation of Plaintiffs' Fourth Amendment rights.

85. The Doe Defendants subjected Plaintiffs to excessive force in violation of their Fourth Amendment rights when they handcuffed them by ankle and wrist to a bench and forced them to stay seated on a hard metal bench for hours and for no legitimate law-enforcement purpose.

86. It was clearly established as of June 20, 2017, that arresting a person without a warrant or probable cause violated the Fourth Amendment.

87. It was clearly established as of June 20, 2017, that subjecting a person to a drug test without a warrant, individualized suspicion, and/or voluntary employment in a highly regulated industry violated the Fourth Amendment.

88. There is no justification even arguably applicable to Defendants' actions, which they undertook with reckless and callous indifference to Plaintiffs' Fourth Amendment rights.

89. Defendant Gaston is a final policymaker as to this issue and has instituted and carried out a policy of arbitrarily and capriciously ordering the arrest, drug testing, and detention of people in court in flagrant violation of their Fourth Amendment rights.

## Count II: First Amendment

*All Plaintiffs vs. Defendants Gaston, Duncan, and John Doe 1*

90. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

91. All Defendants acted under color of law at all relevant times.

92. Defendants Gaston, Duncan, and John Doe 1 violated Plaintiffs' First Amendment rights when they unlawfully detained them, restrained them, and drug tested them as a result of observing court as a member of the public and/or associating with litigants who appeared in court, which are First Amendment-protected expressive activities.

93. Unlawfully detaining a person, restraining him, and drug testing him are adverse actions that would chill a reasonable person from engaging in First Amendment-protected activity, including attending an open court proceeding, and have actually chilled Plaintiffs.

94. It was clearly established as of June 20, 2017, that the government cannot arrest, detain, restrain, or drug test people simply for observing proceedings in open court or for associating with litigants who appear in court.

95. Defendant Gaston maliciously and sadistically prolonged Plaintiffs' detention even after he had their pharmacy records in order to retaliate against them and for the purpose of chilling them from engaging in First Amendment-protected conduct, including associating with persons who are litigants in court and observing court as a member of the public.

96. Defendant Gaston is a final policymaker as to this issue and has instituted and carried out a policy of arbitrarily and capriciously ordering the arrest, detention, and drug testing of members of the public who observe court proceedings and/or who associate with litigants who appear in his court in order to chill their First Amendment-protected expressive activity.

## Count III: Fourteenth Amendment

### *Plaintiff William Hale vs. All Defendants*

97. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

98. All Defendants acted under color of law at all relevant times.

99. Because he was not convicted of any crime (nor in fact charged), Mr. Hale has rights at least coextensive of those of pretrial detainees.

13
Case 6:19-cv-03346-RK   Document 26   Filed 06/29/20   Page 13 of 17

100. At least as of the time they took Mr. Hale into custody, each of the Defendants knew Mr. Hale was susceptible to serious pain because they could see he had an implantable spinal cord stimulator that he kept using.

101. At least as of the time they received Mr. Hale's pharmacy records, each of the Defendants had actual knowledge that Mr. Hale suffered from diabetes, a serious medical need.

102. At least as of the time they told Mr. Hale there was nothing they could do about it and/or when Plaintiffs pleaded for Mr. Hale to be released or restrained in a different manner, Defendants exhibited deliberate indifference to his serious medical needs, including the excruciating pain and substantial risk of lasting injury caused by his ankle restraint.

103. Defendants' decision to restrain Mr. Hale by his ankle for hours caused his foot to swell, to adhere to the inside of his shoe, and to develop an ulcer that became infected and had to be amputated to prevent more widespread bodily injury.

104. Because Defendant Gaston maliciously and sadistically prolonged Plaintiffs' detention even after he had their pharmacy records that proved that their positive drug test results had been a result of medications prescribed by their treating physician that they were taking lawfully, and because the other Defendants held Plaintiffs upon Defendant Gaston's order, Defendant Gaston's deliberately indifference to Mr. Hale's serious medical needs was a moving force behind Mr. Hale's injuries, including the amputation of a part of his foot.

### Count IV: Conspiracy

*All Plaintiffs vs. Defendants Gaston, Duncan, and John Doe 1*

105. Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

106. All Defendants acted under color of law at all relevant times.

107. Defendants Gaston and John Doe 1 reached an unlawful agreement to deprive Plaintiffs of their constitutionally guaranteed rights under the First, Fourth, and Fourteenth Amendments when Gaston, Duncan, and John Doe 1 acted together to take Plaintiffs into custody and drug test them without lawful cause.

108. Defendants Gaston and John Doe 1 conspired further when they shared the drug test results, when John Doe 1 led Plaintiffs back up to the courtroom in handcuffs to be berated by Gaston in front of other people, and when they together made Plaintiffs go back to the jail.

109. The fact that Plaintiffs were—in addition to being unlawfully arrested, drug tested, and detained—cuffed to a bench was a natural and probable consequence of Defendant Gaston, Duncan, and John Doe 1's common, illegal plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court:

a. Enter declaratory judgment against Defendant Gaston;

b. Award Plaintiffs nominal, compensatory, and punitive damages against the Doe Defendants;

c. Award costs and attorneys' fees pursuant to 42 U.S.C. Sect. 1988; and

d. Allow such other and further relief as this Court finds just.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Omri E. Praiss, #41850 MO
Kayla M. DeLoach, #72424
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112

trothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on June 29, 2020.

/s/ Anthony E. Rothert