IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| NORMA ROGERS, ARTHUR ROGERS, WILLIAM HALE, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 6:19-03346-CV-RK |
| v. | ) ) |
| DOUGLASS D GASTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; JANE DOE 1-3, JOHN DOE 1-3, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER DENYING MOTION TO DISMISS

Presently before the Court is Defendant Douglas Gaston ("Judge Gaston")'s motion to dismiss Plaintiffs' claim for prospective declaratory relief, arguing Plaintiffs' claim is moot. (Doc. 34). The motion is fully briefed. (Docs. 35, 45, and 48). After careful consideration, the motion is **DENIED**.

Previously, Judge Gaston filed a motion to dismiss all counts pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) based on mootness of declaratory judgment and judicial immunity. In denying Judge Gaston's motion to dismiss, the Court ruled Plaintiffs' claim for prospective declaratory relief was not moot and was not barred by judicial immunity.[1] (Doc. 16).

## Background[2]

Plaintiffs filed their Complaint on September 30, 2019, alleging three claims pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Doc. 1). Plaintiffs' claims arise out of a custody hearing (the "hearing") for K.C., a minor child, in the Circuit Court of Texas County, Missouri (the "Circuit Court"). On April 10, 2017, K.C.'s paternal grandparents filed a custody petition in the Circuit Court, alleging K.C.'s natural parents were unfit, along with an emergency motion seeking temporary guardianship of K.C. Judge Gaston, who was assigned the case, granted the motion and set a hearing for June 20,

---

[1] The Court ruled, however, that to the extent Plaintiffs seek retrospective declaratory relief, those claims are dismissed with prejudice.

[2] The facts set out here relate to the motion at bar. Additional facts can be found in the previous Order Denying the Motion to Dismiss. (Doc. 16.; 2020 WL 1694796; Case No. 6:19-03346-CV-RK).

2017. K.C.'s natural parents received notice of the hearing and requested Plaintiffs Norma and Arthur Rogers ("Rogers"), the maternal grandparents of K.C., attend the hearing for support. Plaintiffs Norma and Arthur Rogers requested Plaintiff William Hale ("Hale"), a neighbor, give them a ride to the Circuit Court.

On June 20, 2017, Plaintiffs were seated in the gallery of the Circuit Court when Judge Gaston opened court. Several minutes into the proceeding, Judge Gaston inquired who was present in the courtroom. Plaintiff Arthur Rogers ("Mr. Rogers") stood and identified himself and his wife Norma ("Ms. Rogers"). The alleged transcript of the conversation is as follows:

*Judge Gaston to the Rogers*: "Okay, are you all represented by counsel?"

*Arthur Rogers*: "We did not think we would need, uh—"

*Norma Rogers*: "Uh, that's right."

*Judge Gaston*: "Okay, OKAY, okay. I'm just asking. Simple questions so far. No attorney is all I'm asking right now. So. No attorney right now, is that correct?"

*Arthur Rogers*:[3] "Uh, is any attorney ready to take this case? We can have them right here—"

*Judge Gaston*: "OKAY, SIR. Just listen to me."

*Rogers*: "Yes, sir."

*Judge Gaston*: "I'm just asking you a question."

*Rogers*: "No, sir."

*Judge Gaston*: "You don't have an attorney now."

*Rogers*: "No, sir."

*Judge Gaston*: "Okay, there is a temporary guardianship that's in effect. I'm going to show that will remain in effect until such time as we can have a hearing that will give you all a chance to get represented by counsel, which I would suggest that you do, everybody, and then we will be ready to do this hearing. Now typically when we schedule these things we need the attorneys to be involved in when the thing is scheduled in order that everybody's got the date available. We'll put this down for just a setting date. So get your attorney hired and we'll put it on for, let's see—we'll put it on the docket for July 6th at 9 o'clock for everybody to be here with their attorney and we'll get it set for a full hearing on that day, all right?"

---

[3] "Rogers" refers to Arthur Rogers for the remainder of the alleged transcript.

*Rogers*: "Can I ask one question?"

*Judge Gaston*: "Yes."

*Rogers*: "Uh, how can they, uh, have the child, and then they go to the park to meet the mother so the mother can see the child and then the mother, the mother, his mother just, uh, has a piece of paper and then just takes the child away from them when—"

*Judge Gaston*: "WELL, HERE'S HOW. I've got sworn statements that the child is in immediate danger and so I file—"

*Rogers*: "But that's just not true."

*Judge Gaston*: "Okay, DON'T INTERRUPT ME."

*Rogers*: "No, sir."

*Judge Gaston*: "You understand?"

*Rogers*: "Yes, sir."

*Judge Gaston*: "And you do it again and there's a penalty for that."

*Rogers*: "Yes, sir."

*Judge Gaston*: "It involves a cell with bars."

*Rogers*: "Yes, sir."

*Judge Gaston*: "All right? Now. I signed the order. The order is in effect; it will remain in effect. Because the child will remain safe when they're in my custody. And I don't want to hear you 'yes, sir' anymore. So that's the way it is. I'm giving you time to get an attorney hired and contest whatever you think you need to, and that's your responsibility to do that. Show up on July 6th with an attorney or without an attorney, that's your decision. But I'm gonna set it for full hearing on that day at which time I'll receive all evidence and make a decision based on all the evidence that's presented to me. At this time, the emergency order will remain in full force and effect. And I'm going to require all parties to be drug tested today before you leave. Any questions? All right. Good."

*Judge Gaston*: "Sheriff, will you help me carry that out? That's for everybody that stood up here today."

*Petitioners' attorney*: "Judge, the petitioners would certainly agree to do that as well if you are requiring that of them."

*Judge Gaston to attorney*: "Let's do that."

*Judge Gaston to Arthur Rogers*: "Oh, come back. YOU JUST COME RIGHT BACK. Something you want to say?"

3

Case 6:19-cv-03346-RK   Document 58   Filed 11/02/20   Page 3 of 11

> *Rogers*: "No, sir! I'm—nothing!"
>
> *Judge Gaston*: "Well, you just bought yourself 24 hours in the Texas County Jail for that look. Now anything else you wanna say or any looks you want to give?"
>
> *Rogers*: "I wasn't giving—"
>
> *Judge Gaston*: "NO, you gave it and I saw it. Now is there anything else you wanna say or are you smart enough to shut your mouth now? Good choice."

(Doc. 1) (bolding removed, other emphasis in original).

Defendant Bobby Duncan,[4] who was armed and in uniform, then took custody of Plaintiffs, as well as the other parties in the courtroom, and escorted them to the Texas County Jail. The Doe Defendants[5] required Plaintiffs to urinate in plastic cups and drug tested the samples. The Doe Defendants then ordered Plaintiffs to sit, restrained on a metal bench while the drug screening results were pending. The drug tests came back positive, but the positive results were apparently due to the Plaintiffs' prescription medications.[6] After being brought back into the courtroom before Judge Gaston and then returned to the Texas County Jail, the Plaintiffs were once again restrained, now by their ankles, to a metal bench. Eventually, Plaintiffs Hale and Ms. Rogers were released that day. As a result of being restrained by his ankle to a metal bench, Hale, a diabetic, developed an ulcer necessitating the partial amputation of his foot.

Regarding Mr. Rogers, Judge Gaston issued a handwritten contempt order that read: "Mr. Rogers repeatedly ignores commands of the Court and uses inappropriate language after repeated warnings. The Court finds him in Contempt and sentenced to 1 day in T.C. Jail."[7] Mr. Rogers

---

[4] Plaintiffs' First Amended Complaint identifies Defendant Doe 1 as Bobby Duncan, "a bailiff and/or deputy sheriff employed by the Texas County Sheriff's Office." (Doc. 26).

[5] The Doe Defendants have now been identified in a proposed second amended Complaint as James Sigman, James Reeves, Sharon Vaughn, Glenda Campbell, Jennifer Tomaszewski, and Pam Tripp. (Doc. 54-1.)

[6] "[P]harmacy records . . . proved their positive drug test results had been a result of medications prescribed by their treating physician that they were taking lawfully." (Doc. 26 at 14).

[7] While the documents filed in the custody proceeding are not part of the current record, a court may take judicial notice of public records and consider them on a motion to dismiss. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

4

was released the next day. Since these events, the case involving the custody of K.C.[8] has terminated as well as the criminal case that was pending for K.C.'s mother.[9]

**Legal Standard**

"A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action." *Knox v. St. Louis City Sch. Dist.*, 2018 U.S. Dist. LEXIS 209123, at *2 (E.D. Mo. Dec. 12, 2018). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus v. Sullivan*, 4 F.3d 590, 593, n. 1 (8th Cir. 1993). Further, Plaintiff bears the burden of proving jurisdiction exists. *Id.*; *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted).

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's "claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may then move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). A complaint "does not require 'detailed factual allegations'" to survive a motion to dismiss, but it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In addressing a motion to dismiss, the "court must accept as true all of the allegations contained in the complaint." *Id.* "[W]here the well-pleaded facts do not permit the

---

[8] Judge Gaston recused himself from K.C.'s custody case. *See* Case No. 17TE-PR00037.

[9] K.C.'s mother's criminal case was bound over from Judge Gaston to a different Circuit Court judge. *See State v. Ashley R. Collins*, Case No. 18TE-CR00288-01. K.C.'s mother pleaded guilty on April 16, 2019. *Id.*

5

court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## Discussion

Judge Gaston moves to dismiss the prospective declaratory relief claim against him, arguing it is moot. In response, Plaintiffs argue they have established proper standing for their declaratory relief claim. The Court will address both standing and mootness.

### I. Article III Standing

To establish Article III standing when seeking declaratory relief, a plaintiff must allege facts, from which it appears there is a substantial likelihood that he will suffer injury in the future. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983)). "The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is fairly . . . traceable to the challenged action of the defendant and (3) is likely . . . to be redressed by a favorable decision in court." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (cleaned up) (quoting *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011)). "A plaintiff has suffered an injury-in-fact if he has experienced 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

#### A. Injury

"In the First Amendment context, 'two types of injuries may confer Article III standing to seek prospective relief.'" *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (quoting *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)). First, a plaintiff may allege "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Second, a plaintiff may allege self-censorship. *Id.*; *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("The second type of injury is when a plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences.") (internal quotations omitted); *see also Phelps-Roper*, 697 F.3d 678, 687 (8th Cir. 2012) ("chill alleged . . . is objectively reasonabl[e] in

that [plaintiffs] are not without some reason in fearing prosecution under [the ordinance]") (internal quotations omitted).

Here, Plaintiffs posit that they are currently suffering injury and there is substantial likelihood that they will suffer injury in the future. Plaintiffs allege not only that they may potentially be in front of Judge Gaston again, but that Judge Gaston's actions and policies[10] are currently and hereafter "chilling" their First Amendment right to access the courts as public observers of open-court proceedings. (Doc. 26 at 11). Plaintiffs further argue they are being chilled from accessing the courts in Texas County, Missouri, specifically. Additionally, Plaintiffs' allegations meet the second elemental test in that they are the same parties who allegedly continue to experience a chilling of their First Amendment right to access the courts. Furthermore, Plaintiffs' allegations put forth an experience that certainly could be chilling to others from an objectively reasonable standpoint.

Judge Gaston argues Plaintiffs' allegations are too speculative to be recognized because there is no certainty that Plaintiffs will ever appear in Judge Gaston's courtroom before him in a case he is adjudicating. (Doc. 35 at 5). However, that is not, in fact, what Plaintiffs have alleged. They allege they are chilled from accessing the courts generally. In the context of the Complaint, Plaintiffs are alleging this chilling has occurred and is continuing to occur. For this reason, the Court finds Plaintiffs have sufficiently pleaded a First Amendment injury. As this injury is current and ongoing, it is evident that it is not "purely speculative" as Judge Gaston alleges. (Doc. 35 at 6).

### B. Traceability and Redressability

Neither party addresses the second or third elements of standing. However, Plaintiffs' alleged injury is directly traceable to Judge Gaston's alleged behavior. Judge Gaston ordered the detention and drug testing of Plaintiffs. Such treatment may have directly led to the chilling of their rights. Plaintiffs, for that reason, satisfy the second element. The third element is satisfied because the Court is capable of remedying Plaintiffs' injury. Finally, standing requirements are "somewhat relaxed in the First Amendment context. *Cooksey v. Futrell*, 721 F.3d 226, 235 (5th Cir. 2013) (cited with approval by *Klahr*, 830 F.3d at 794); *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[W]hen the threatened enforcement effort

---

[10] Plaintiffs assert Judge Gaston has a "policy (of ordering the arrest, detention, and drug-testing of members of the public), and it is . . . still in effect." (Doc. 45 at 4).

7

implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.") (quoted by *Klahr*, 830 F. 3d at 794). For these reasons, the Court finds Plaintiffs have standing to bring suit.

## II. Mootness

Satisfied that Plaintiffs have standing under Article III to bring this claim, the Court now turns to mootness, which is Judge Gaston's dominant argument.

"Noting the difficulty in fashioning a precise test of universal application for determining whether a request for declaratory relief ha[s] become moot," the Supreme Court held that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (emphasis in original). "A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected." *Id.* at 403.

After the events alleged in the Plaintiffs' initial complaint, Judge Gaston recused himself from the custody proceeding[11] and bound over the criminal proceeding of the Rogers' daughter.[12] Judge Gaston contends that by removing himself as presiding judge in the two Rogers' cases pending before him, Plaintiffs' claims are now moot because they lack all three of the elements stated by the Supreme Court in *Preiser*. Judge Gaston asserts in his response that a substantial controversy, between parties with adverse legal interests, that is of sufficient immediacy and reality to warrant a judgment no longer exists.

However, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). Judge Gaston removed himself from both the Rogers' cases pending before him. The ease with which judges can recuse themselves suggests to the Court that this type of situation is one that is covered by the narrow exception. Additionally, Judge Gaston, through counsel, "agrees not to drug test and detain Plaintiffs in future cases in which they are not parties to a case pending before Judge Gaston." (Doc. 35 at 5). Plaintiffs assert Judge Gaston could

---

[11] *Supra*, note 8.

[12] *Supra*, note 9.
8

Case 6:19-cv-03346-RK Document 58 Filed 11/02/20 Page 8 of 11

recant, and it is unclear whether or how Judge Gaston would be bound by that promise. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2012) (holding that constitutional claim was not moot despite government official's announcement that allegedly unconstitutional policy would no longer be enforced). The standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n.,* 393 U.S. 199, 203 (1968)).

Without taking actions to solidify his statement that he will not drug test Plaintiffs, Judge Gaston asserts that "[a]s [a] government actor[], [his] statement of non-enforcement is entitled to a presumption of good faith." *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017) (citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009)). "[C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon*, 560 F.3d at 325, *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 (2011). However, a presumption of good faith is generally rebuttable. *See id.* ("*Without evidence to the contrary*, we assume that formally announced changes to official government policy are not mere litigation posturing.") (emphasis added).

Here, the Court finds Judge Gaston's argument unpersuasive at this time. In *Sossamon*, the defendant acknowledged the challenged behavior, executed a sworn affidavit asserting they would desist the challenged behavior, and had already implemented the policy change at the time of the court's review. *Sossamon*, 560 F.3d at 324. Judge Gaston has not assumed responsibility for his allegedly inappropriate conduct, nor has he provided a sworn affidavit to the Court.[13] Rather, Judge Gaston refuses to "admit[] any liability or wrongdoing." (Doc. 35 at 5). Furthermore, Judge Gaston, through his counsel, insists that "[t]his declaration [not to drug test and detain Plaintiffs] is unnecessary." (Doc. 35 at 5). Based on this information, the Court finds any presumption of good faith may be sufficiently rebutted in this case. *Sossamon*, 560 F.3d at 316. Unlike in *Moore* and *Sossamon*, the Court finds, at this time, that the record here supports

---

[13] Even though Judge Gaston's counsel has attested that Judge Gaston will not detain and drug test Plaintiffs in the future, Judge Gaston has not provided a sworn statement himself. Even if Judge Gaston did swear and provide the Court with said affidavit, the Court finds the facts alleged by the Plaintiffs suggest that the good faith presumption might be sufficiently rebutted.

9

denial of Judge Gaston's motion to dismiss.  *Id.* at 325; *Moore*, 868 F.3d at 407.  Therefore, the Court finds Judge Gaston's voluntary cessation argument insufficient to moot Plaintiffs' claims.

For these reasons, the Court finds that Plaintiffs have pleaded sufficient facts to suggest that Judge Gaston's actions toward them established a substantial injury now and in the future by chilling their First Amendment right to access the courts; therefore, their claim is not moot.

**III.     Plaintiffs State a Claim for Prospective Declaratory Relief**

Judge Gaston also argues the case should be dismissed against him because Plaintiffs have failed to sufficiently allege a policy under 42 U.S.C. § 1983.  Judge Gaston's argument is without merit at this time.  First, all of Judge Gaston's arguments seeking to characterize his views of how the custody hearing went or his own actions are irrelevant for the purposes of a 12(b)(6) motion.  The Court looks to the well-pleaded facts as alleged in the Complaint and accepts them as true.  *Ashcroft*, 556 U.S. at 678.  Second, Plaintiffs specifically plead Judge Gaston had a policy and custom of ordering the arrest, detention, and drug testing of individuals in order to chill their First Amendment rights.  (*See e.g.* Doc. 26, ¶ 96.)  While Judge Gaston argues this is a mere legal conclusion, the Court finds Plaintiffs have made sufficient allegations of a policy and custom of Judge Gaston.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (holding a plaintiff need not specifically plead the existence of an unconstitutional policy or custom because "a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right.")

It must be noted that the court in *School District of Norfolk*, affirmed the dismissal of the plaintiff's complaint.  340 F.3d at 616.  The court stated "[t]he deficiency of their complaint is the complete absence of allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the School District."  *Id.* at 614.  Here, in contrast to the plaintiffs in *School District of Norfolk*, Plaintiffs, throughout the Complaint, make specific allegations as to Judge Gaston's allegedly unconstitutional behavior related to the custody proceeding.  Additionally, Plaintiffs allege there have been additional instances of similar conduct.  (Doc. 26, ¶ 78.)  These allegations, in the context of the entire Complaint, are sufficient to create at least an inference that Judge Gaston had

10

a policy or custom of unconstitutional behavior.[14] Therefore, Plaintiffs have sufficiently pleaded the existence of a policy and Judge Gaston's motion will be denied.

## Conclusion

Accordingly, and after careful consideration, Defendant Judge Gaston's motion to dismiss (Doc. 34) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 2, 2020

---

[14] Of course, it will be the burden of the Plaintiffs to prove, through discovery, a policy or custom does exist. While Judge Gaston argues there has only been one similar circumstance since 2017, such an argument is more appropriate for summary judgment, once a factual record has been established.

11