```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF MISSOURI
 2                      SOUTHERN DIVISION

 3

 4

 5
    NORMA ROGERS, et al.,              )
 6                                     )
       Plaintiffs,                     )
 7                                     ) Cause No.
    vs.                                ) 6:19-cv-03346-RK
 8                                     )
    DOUGLAS GASTON, et al.,            )
 9                                     )
       Defendants.                     )
10

11

12

13

14           REMOTE DEPOSITION OF DOUGLAS GASTON
              Taken on behalf of the Plaintiffs
15                   February 26th, 2021

16

17

18        Jamie Jo Kinder, CCR 842, CSR 084.003306

19

20

21

22

23

24

25
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 1 of 100

```
 1                    I N D E X

 2                                      Page

 3                  EXAMINATION

 4   QUESTIONS BY MR. ROTHERT                 6

 5

 6

 7

 8

 9

10              (No exhibits marked.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 2 of 100

1                    IN THE UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF MISSOURI
2                          SOUTHERN DIVISION

3

4    NORMA ROGERS, et al.,                )
                                          )
5        Plaintiffs,                       )
                                          ) Cause No.
6    vs.                                  ) 6:19-cv-03346-RK
                                          )
7    DOUGLAS GASTON, et al.,              )
                                          )
8        Defendants.                       )

9

10                   REMOTE DEPOSITION OF WITNESS, DOUGLAS GASTON,

11   produced, sworn, and examined on the 26th day of February,

12   2021, between the hours of 1:48 o'clock in the afternoon

13   and 4:24 o'clock in the afternoon of that day, with all

14   parties attending remotely before Jamie Jo Kinder, Missouri

15   CCR 842, Illinois CSR 084-003306, a Certified Court

16   Reporter within and for the State of Missouri, in a certain

17   cause now pending before the Circuit Court of the City of

18   St. Louis in the State of Missouri, wherein NORMA ROGERS,

19   et al., are the Plaintiffs, and DOUGLAS GASTON, et al., are

20   the Defendants.

21

22

23

24

25

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 3 of 100

```
 1                    A P P E A R A N C E S

 2           For the Plaintiffs:

 3           Mr. Anthony Rothert
             Mr. Carter Gill
 4           Ms. Kayla DeLoach
             Ms. Molly Carney
 5           Mr. James Isacks
             Ms. Gillian Wilcox
 6           Ms. Arianna Morris
             ACLU of Missouri Foundation
 7           906 Olive, Suite 1130
             St. Louis, MO  63108
 8           arothert@aclu-mo.org

 9           For the Defendants Duncan, Sigman, Reaves, Vaughn,
             Cambell, Tomaszewski and Tripp:
10

11           Ms. Portia Kayser
             FISHER PATTERSON SAYLER & SMITH
12           1010 Market Street, Suite 1650
             St. Louis, MO 63101
13           (314)561-3675
             pkayser@fpsslaw.com
14

15           For the Defendant Gaston:

16           Mr. John Patrick Fleming
             MISSOURI ATTORNEY GENERAL'S OFFICE
17           P.O. Box 899
             Jefferson City, MO 65102
18           (573) 751-8847
             jack.fleming@ago.mo.gov
19

20

21     The Court Reporter:

22     Ms. Jamie Jo Kinder, CCR, CSR
       ALARIS LITIGATION SERVICES
23     711 North Eleventh Street
       St. Louis, MO  63101
24     (800) 280-3376
       www.alaris.us
25     transcripts@alarislitigation.com
```

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 4 of 100

```
 1              (Deposition commenced at 1:50 p.m.)

 2              IT IS HEREBY STIPULATED AND AGREED, by and between

 3     counsel for Plaintiffs and counsel for Defendants, that the

 4     deposition of DOUGLAS GASTON may be taken in shorthand by

 5     Jamie Jo Kinder, CCR, CSR, a notary public and shorthand

 6     reporter, and afterwards transcribed into typewriting; and

 7     the signature of the witness is expressly reserved.

 8                              * * * * *

 9              THE REPORTER:  This is Jamie Kinder, and I am

10     a Certified Court Reporter.  This depo is being taken

11     remotely, and those participating in this examination today

12     are attending via Zoom, with the witness appearing remotely

13     as well.

14              Counsel acknowledges their understanding that

15     I am not physically present with the witness and that I

16     will be reporting this proceeding remotely.  Counsel

17     further acknowledges that I will not be administering the

18     oath in person, but am doing so remotely.  The party and

19     counsel consent to this arrangement and waive any

20     objections to this manner of proceeding.

21              Counsel, please indicate your agreement

22     verbally on the record by stating your name and that you

23     stipulate to these terms, after which I will swear in the

24     witness and we may begin.

25              MR. ROTHERT:  My name is Anthony Rothert, and
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 5 of 100

1    I stipulate to these terms on behalf of Plaintiffs Norma

2    Rogers, Arthur Rogers and William Hale.

3              MR. FLEMING:  I'm here for Judge Gaston.  We

4    stipulate as well.

5              MS. KAYSER:  This is Portia Kayser.  I

6    stipulate on behalf of Defendants Bobby Duncan, James

7    Sigman, James Reaves, Jennifer Tomaszewski, Glenda

8    Campbell, Sharon Vaughn, and Pamela Tripp.

9                   (Witness sworn in.)

10                      * * * * *

11                   DOUGLAS GASTON,

12   of lawful age, being produced, sworn and examined on

13   behalf of the Plaintiffs, deposes and says:

14                      EXAMINATION

15   QUESTIONS BY MR. ROTHERT:

16        **Q    Mr. Gaston, could you state your name for the**

17   **record?**

18        A    Douglas Don Gaston.

19        **Q    And where are you today?**

20        A    Houston, Missouri, at the courthouse, Texas

21   County Justice Center.

22        **Q    And is that where you work?**

23        A    Yes.

24        **Q    Are you in your office?**

25        A    No.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 6 of 100

```
1              Q     Where are you?  In the courthouse?

2              A     Courtroom C in the courthouse and I'm seated

3        at the judge's seat here in the courtroom.

4              Q     Okay.  Is that the bench there in that

5        courtroom?

6              A     The bench, and that's so I had access to a

7        good computer monitor with a video.

8              Q     All right.  Can you -- I'm assuming that you

9        have some experience with depositions and know the basic

10       ground rules about a deposition.  Is that fair?

11             A     Yes.

12             Q     And, in fact, you are a licensed attorney?

13             A     Yes.

14             Q     How long have you been licensed to practice

15       law in the State of Missouri?

16             A     Since 1995.

17             Q     Where did you go to law school?

18             A     University of Arkansas at Little Rock.

19             Q     And is Missouri the first state you became

20       licensed to practice law in?

21             A     Yes.

22             Q     Since 1995, have you had any other jobs that

23       do not involve the law or the practice of law?

24             A     Yes.

25             Q     Okay.  Can you tell me what those jobs were?
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 7 of 100

```
1              A    I was state representative for this area in
2      1997 and '98.  I was deputy state treasurer for the State
3      of Missouri from, I believe, 2004 through the end of 2008.
4              Q    All right.  Any other jobs outside of the law
5      since 1995?
6              A    I don't think so.
7              Q    Are you currently employed?
8              A    Yes.
9              Q    Who is your employer?
10             A    I'm a judge for Texas County, so State of
11     Missouri is my employer.
12             Q    And what's the job that you do for the State
13     of Missouri?
14             A    I'm the Associate Circuit Judge for Texas
15     County, Missouri, in the 25th Judicial Circuit.
16             Q    What is an Associate Circuit Judge?
17             A    I am the judge for the county, the only one
18     elected for the county.  We have two circuit judges, but
19     the associate is the judge of initial jurisdiction for all
20     sorts of matters of litigation and cases, including
21     criminal, all civil, probate, juvenile, a little bit of
22     everything.
23             Q    What's the difference between an associate
24     judge and a circuit judge?
25             A    The associate, again, is the judge that -- For
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 8 of 100

1    example, in a criminal case when a request for a warrant is

2    made, that comes to me and not the circuit judge.  I would

3    hear everything on that case, including initial bond, all

4    initial court appearances, all matters that would lead up

5    to preliminary hearing, if there were a preliminary

6    hearing.  If it's a grand jury indictment, it would go

7    straight to the circuit judge, except we have a local court

8    rule that allows me to conduct arraignments and bond

9    hearings.  That's one example.  Similar in other things.

10               Civil matters, if it's a civil suit under

11   $25,000, an associate has jurisdiction.  If it's over, it's

12   a circuit judge's jurisdiction.  Things like that.

13       **Q    And how long have you been an associate judge?**

14       A    Since January 1st of 2009.

15       **Q    How did you come to get that job?**

16       A    I was appointed by the governor.

17       **Q    And who was the governor then?**

18       A    Matt Blunt.

19       **Q    And how did you come to be appointed by the**

20   **governor?**

21       A    I was asked if I would like to be judge of my

22   home county and I said I sure would.

23       **Q    Okay.  Who asked you?**

24       A    The governor.

25       **Q    Was that a surprise for him to ask you?**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 9 of 100

```
 1              A    A bit of a surprise, yes.

 2              Q    Have you previously expressed interest in

 3     being a judge?

 4              A    No.  Not to him anyway.  I had expressed

 5     interest to other people throughout my career, but not to

 6     him.

 7              Q    Were you taking the place of someone else when

 8     you became associate judge?

 9              A    Yes.  Brad Ellsworth was facing mandatory

10     retirement because of his age.

11              Q    And what age is mandatory retirement for

12     judges in Missouri?

13              A    70.

14              Q    And what is your age?

15              A    53.

16              Q    Since the time you have been an associate

17     judge for Texas County, do you have any other jobs or work

18     that you do other than being a judge?

19              A    I coach various sports, including softball and

20     basketball primarily.  I have taught college.  I am trying

21     to remember if I have taught college since I have been

22     judge or not.  I have done that in the past.  That's about

23     it.

24              Q    Where have you taught college?

25              A    For Southwest Baptist University.  But when
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 10 of 100

1    you say where, that's locally.  They have branches locally,

2    and I taught classes in Mountain View and Houston, I

3    believe, in the past.

4         **Q    Are there any other colleges at which you have**

5    **taught classes?**

6         A    No.

7         **Q    What classes have you taught?**

8         A    Government classes.  I'm trying to remember.

9    Several times I have taught just basic government,

10   political science, 101-type courses.

11        **Q    Any other work outside of being a judge?**

12        A    No.

13        **Q    Have you authored any books?**

14        A    Yes.

15        **Q    Okay.  What books have you authored?**

16        A    The two that have been published are called --

17   Believe is one book.  The other one is called Am I a Turtle

18   or a Tortoise, so it's not an intellectual piece of work or

19   anything.  They are kids books.  So I don't consider that a

20   job.  I did those, and all of the proceeds, I have set

21   those up so all the proceeds are donated to charitable

22   causes.  I make nothing off those books.

23        **Q    What is Believe about?**

24        A    About believing in yourself and the purposes

25   for which you're created.  It uses historical figures and

ALARIS LITIGATION SERVICES
www.alaris.us              Phone: 1.800.280.3376              Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 11 of 100

1    some same-day athletes and singing stars, people like that,

2    to get the point to young people that they can achieve

3    anything that they can put their minds to and work towards

4    and believe in themselves to achieve.

5        Q    What is Am I a Turtle or a Tortoise about?

6        A    It's about a little turtle or tortoise who is

7    having an identity crisis and comes to understand that it's

8    really not important what outward appearances are but what

9    your character is and what your heart is.  I can get you a

10   copy if you would like, Tony.

11       Q    You might actually.  It sounds interesting.

12   Thank you.

13            All right.  Now that we have those background

14   questions out of the way, I just wanted to mention for the

15   record that this deposition was noticed up on January 28th.

16   Originally it was for 1:00, but we moved it to 1:30 to

17   accommodate the deponent.

18       A    I appreciate that very much.

19       Q    All right.  But just making sure this is still

20   the same notice and that's why you're here; right?

21       A    Yes.

22       Q    And I e-mailed counsel earlier today that I

23   have been directed to appear at a federal TRO hearing at

24   3:00, so we may have to take a brief recess a little before

25   3:00.  It's important for me to be prompt, so maybe about

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 12 of 100

1    five minutes before 3:00 we may take a recess.  If you need

2    any breaks, though, please let me know and we will take a

3    break.  All right?

4         A    All right.

5         Q    Did you -- Did you receive a preservation

6    letter related to the issues in this case?

7         A    Yes.

8         Q    Do you remember when you received that?

9         A    No.

10        Q    Do you remember if it was before or after this

11   lawsuit was filed?

12        A    Before.

13        Q    Do you remember what year you received it in?

14        A    I don't, but I think it was 2017.

15        Q    Okay.  What actions did you take after

16   receiving the -- or in response to receiving the

17   preservation letter?

18        A    I spoke with my circuit judge about it, my

19   presiding circuit judge, who also had received a letter.

20   Made sure that I understood from him anything that he was

21   requiring that I would do and if there were any additional

22   steps that needed to be taken as far as our IT department

23   or anything like that, and he indicated that all that was

24   required was to just make sure I saved everything.

25              I also contacted the attorney general's office

ALARIS LITIGATION SERVICES
www.alaris.us        Phone: 1.800.280.3376        Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 13 of 100

1    to ask the same question and make sure that I abided by any

2    directives that they might have, and it was the same from

3    them.  And so I have just made sure that I have not erased

4    anything really whether it had anything to do with this

5    case or not.

6           Q       And who was the presiding circuit judge then?

7           A       John Beger, B-E-G-E-R.

8           Q       What did you do in preparation for today's

9    deposition?

10          A       I have consulted with counsel, Jack Fleming,

11   and reviewed some documents.

12          Q       What documents did you review?

13          A       Reviewed my answers to interrogatories and the

14   deposition of Bobby Duncan.

15          Q       Did you review any other documents?

16          A       Certainly not in the last few days.

17          Q       Who is Bobby Duncan?

18          A       He is a -- was a deputy sheriff who served as

19   bailiff for a while here in the courtroom.

20          Q       Other than your attorney, did you talk to

21   anyone else about this deposition?

22          A       I had visited with my wife about it.  I think

23   the only conversation I have had with my clerks about this

24   case at all in quite some time is just that there was going

25   to be a deposition today and that I wouldn't be available

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 14 of 100

1    during this time.

2          Q    Who, other than your attorney, have you spoken

3    with about the events at issue in this case?

4          A    When all of the press happened about the case,

5    there was an article in the Post-Dispatch about the case

6    and I had several people asking me about that at that time

7    and what had happened.

8               Before that, there was a complaint filed

9    against me to my oversight board, which is the -- I believe

10   I'll get this right -- Committee on Removal, Retirement and

11   Discipline is the name of the body that oversees the judges

12   in the State of Missouri, and they asked me to give my

13   explanation as to the allegations that were in the

14   complaint.

15              Other than that and the people that I have

16   mentioned already, I think just friends and family

17   primarily just asking me what was going on because they had

18   heard about it or read about it.

19         Q    Do you know who you spoke to, from or with the

20   Judicial Review Board?

21         A    Well, I spoke with Jim Smith, who is legal

22   counsel for that body, and then I was asked to come and

23   meet with Jim Smith and Judge Nancy Rahmeyer, who was chair

24   of the commission at that time.

25         Q    Okay.  And what did you say to Jim Smith and

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 15 of 100

1    **Judge Rahmeyer?**

2         A    Well, initially I was asked for my side of

3    what had happened, and so I provided that in writing as to

4    what had happened.  And then at the in-person meeting, I

5    just described various things, and we had a conversation

6    about what had happened with those two individuals at that

7    time.

8         **Q    Okay.  And what two individuals are you**

9    **referring to?**

10        A    Judge Rahmeyer and Jim Smith.

11        **Q    With those two.  Okay.**

12        A    And I'm not trying to be coy.  If you want me

13   to go into detail and tell you my side --

14        **Q    I'll ask.  Do you remember -- who do you**

15   **remember speaking to after there was -- Well, first of all,**

16   **approximately when was there a news story about this case,**

17   **do you remember?  Do you remember the year?**

18        A    I don't for certain, no.  I'm going to -- I'm

19   going to guess it has been a couple of years, but I don't

20   know for certain when it was.  I haven't looked at it in a

21   long time.

22        **Q    Who do you remember speaking to about the news**

23   **story?**

24        A    My family was concerned about it.  They asked

25   about it.  I visited with my family about it.  People

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 16 of 100

1    around the courthouse asked about it.  I'm sure I had other

2    friends reach out.  I do not recall at this time who -- you

3    know, if I were to make a list of all the people, I

4    wouldn't be able to do that.  But just family and friends.

5           Q    Could you provide -- Would you tell me the

6    names of the people that you do remember speaking to,

7    family or friends or people around the courthouse?

8           A    Well, my parents' names are Don and Jean

9    Gaston.  My sisters' names are Julee Chipps and Debbie

10   Lewis.  My clerks' names at that time, I might need to

11   consult with our roster because I think a couple of those

12   people have left at this time.  But Shelly Cummins and

13   Mildred Williams were both clerks that were with me in the

14   courtroom the day that this incident happened, and so they

15   talked with me about it for certain.

16          Other members of that office include the

17   elected circuit clerk, who is Marci Mosley, Dena Neil

18   Sillaman, and I would have to consult with our clerk roster

19   to tell you for certain who the other ones were at that

20   time because a couple have left and we have had a couple

21   that have been hired, and I don't remember for sure when

22   that happened with the rest of the ones in the office.

23          I'm -- I don't recall exact conversations, but

24   I believe I spoke with members of the sheriff's department

25   about it, probably the head bailiff who was Danny Fox, and

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 17 of 100

1    beyond that, I would have to give it a lot more thought to

2    try to come up with anyone that I can remember in

3    particular.  It's been a long time.

4         **Q    Okay.  Have you spoken with anyone about this**

5    **case in the last six months, other than your lawyer?**

6         A    Again, my wife is the one who I have spoken

7    with primarily about it.  In the last six months?  I really

8    don't remember conversations with other individuals about

9    it in the last six months.  I can't recall any at this

10   time.

11        **Q    Have you discussed the incidents in this case**

12   **with a Pamela Tripp?**

13        A    I don't think so.

14        **Q    What about Jennifer Tomaszewski?**

15        A    No.  No.

16        **Q    Have you discussed the events of the case with**

17   **Linda Campbell?**

18        A    No.

19        **Q    Have you discussed the events of this case**

20   **with James Reaves?**

21        A    No.

22        **Q    Have you discussed the events in this case**

23   **with James Sigman?**

24        A    Possibly.  He was the elected sheriff when

25   this happened.  He was removed from that position at some

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 18 of 100

```
1    point along the way, and I don't recall the timing of all
2    of that, but it's possible I spoke with James.  I don't
3    remember it.  If he was still sheriff, it's likely that I
4    would have.
5         Q    Okay.  And do you know when he was removed?
6         A    No.
7         Q    Do you know -- How was he removed?
8         A    Well, that's actually an interesting question
9    because he was not officially removed for some time,
10   although there was a new sheriff in Texas County.  The
11   legalities of all that always cause me to wonder, but at
12   some point, there was a new sheriff that was appointed and
13   James no longer acted as sheriff, although he had not been
14   removed by quo warranto or any other legal means.  And I'm
15   really not even sure of the status of this case right now.
16        Q    Okay.  So who is the sheriff now?
17        A    Scott Lindsey.
18        Q    Okay.  And do you think James Sigman might
19   still be the sheriff also or --
20        A    Well, I have not checked on the status of his
21   case as to whether there has been any formal removal.  It
22   seems to me that I heard that he agreed to step down at
23   some point in the last few months, but I don't know for
24   sure about that.
25        Q    Has there been an intervening election or --
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 19 of 100

```
 1            A    There has been an election since then, I
 2    believe.  I think Scott ran unopposed for election in the
 3    last election.  I think that's right.
 4            Q    So then Mr. Sigman is definitely done being
 5    sheriff if his term expired and somebody else was elected;
 6    is that right?
 7            A    That would be true.
 8            Q    All right.  Do you know why he stepped down or
 9    whatever happened or why another sheriff?
10            A    He was accused of a lot of wrongdoing and he
11    was charged with crimes.
12            Q    Was he convicted of any of those crimes?
13            MS. KAYSER:  Object to relevance.
14            A    Not that I'm aware of.
15            Q    (By Mr. Rothert) Not that you're aware of, did
16    you say?
17            A    That is what I said.  I need to be a better
18    client and give counsel a chance to object, don't I?
19            Q    Have you discussed the facts or the incidents
20    in this case with Robert Duncan?
21            A    That's possible.  I don't recall doing that,
22    but that's very possible, yes.
23            Q    Okay.  Can you tell me what your understanding
24    of this lawsuit is, what it's about, what's being --
25            MR. FLEMING:  I'll object to the form.  Vague.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 20 of 100

```
 1              MS. KAYSER:  I'll join.
 2              MR. ROTHERT:  Okay.  I don't understand.
 3    What's your -- Form doesn't tell me anything.  I'm happy to
 4    fix the question if you would like, but --
 5         A    Before we clarify that, can I clarify my
 6    previous answer and just tell you that I do feel sure that
 7    at least in passing I have had some conversation with Bobby
 8    Duncan about the case.  He served as bailiff for me for
 9    quite awhile after this happened, and I'm sure that it has
10    come up, and I think I can recall just as I have gone in
11    and out of court that some things have been said.  I don't
12    recall any in-depth conversation, but I feel pretty sure
13    that we have had conversation about it.  So I just wanted
14    to make sure that I gave a clear answer on that.
15         Q    (By Mr. Rothert) I appreciate that.  Thank
16    you.  I will just try to ask my question again to keep the
17    transcript as orderly as possible then.  Please don't
18    answer right away in case there's objections.
19              What is your understanding of the lawsuit
20    that's been filed against you?
21              MR. FLEMING:  I'll just object to the form.
22    It's vague.  Calls for a narrative response.
23         Q    (By Mr. Rothert) I will ask a question.  Are
24    you aware that Norma Rogers, Arthur Rogers and William Hale
25    filed a lawsuit against you in the United States District
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 21 of 100

1    Court for the Western District of Missouri in the Southern

2    Division where it's been assigned Case No.

3    6:19-cv-03346-RK?

4        A    Yes.

5        Q    What is your understanding of what that

6    lawsuit claims against you?

7            MR. FLEMING:  I'll object to the form.  Vague.

8    Subject to my objection, you can answer if you know.

9            MS. KAYSER:  I'll join the objection.

10       Q    (By Mr. Rothert) Let me ask another question.

11   Do you understand what I'm asking when I ask you what your

12   understanding of the lawsuit against you is?

13       A    Well, I understand in a general sense that

14   you're asking me about the general nature of the case,

15   which is that they claim that they were detained unlawfully

16   and unreasonably and that Mr. Hale suffered injuries

17   because of that.

18       Q    Do you have any knowledge of the veracity of

19   their claims that they were detained?

20       A    I am aware of what the allegations are and

21   what some of the responses are, including what I read in

22   Bobby Duncan's testimony from his deposition.  I have no

23   personal knowledge.  I was in the courtroom conducting

24   court the whole day that this happened, so I don't know

25   what happened in the jail.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 22 of 100

1        Q    Do you know whether they were -- Norma Rogers,

2    Arthur Rogers or William Hale were detained at all that

3    day?  And let's -- let me focus your attention on

4    June 20th, 2017.  Do you have any personal knowledge

5    whether Norma Rogers, Arthur Rogers or William Hale were

6    detained at any time on that date?

7        A    Not from my personal observation, no.

8        Q    So it's your understanding that they were free

9    to go home any time that day that they wished?

10       A    I don't know the answer to that.  I was not in

11   the jail.

12       Q    Did you encounter Norma Rogers, Arthur Rogers

13   or William Hale on June 20th, 2017?

14       A    They were in my courtroom, yes.

15       Q    Do you know why they were in your courtroom?

16       A    They were interested in a guardianship

17   proceeding involving Chloe Collins, and my understanding is

18   that's their granddaughter, the Rogers' granddaughter.

19   William Hale, my understanding, is an uncle.

20       Q    All right.  And were they parties to a case or

21   were they served or were they doing something else?

22       A    The case was presented to me as an uncontested

23   hearing on the date of the hearing you're inquiring about.

24       Q    June 20th, 2017?

25       A    Yes.  And they were not parties listed in

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 23 of 100

```
 1      that, no.
 2              Q     So they were observing in the courtroom?
 3              A     Apparently, yes.
 4              Q     And is that --
 5              A     They made it clear they wanted to be involved
 6      in the case.
 7              Q     Okay.  Is it unusual for people to observe
 8      court proceedings in Texas County?
 9              A     Well, I'm not sure how to answer that.  Some
10      people do.  I would say, as a matter of the general
11      population, it's unusual.  If you have an interest in a
12      case, you might show up to observe.  That still might be
13      somewhat unusual, but certainly people do it sometimes.
14              Q     Are the court proceedings in Texas County
15      generally open to the public?
16              A     Yes.
17              Q     And the type of case that you were hearing, I
18      believe you said a guardianship?
19              A     Yes.
20              Q     Are those open to the public?
21              A     Almost always.  There are times that parties
22      or counsel might ask that it be a closed courtroom because
23      of a delicate nature of things that might come in by
24      testimony or evidence.  Sometimes we have some pretty ugly
25      cases that there's a legal basis for closing a courtroom,
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 24 of 100

1    but I don't do that unless it's necessary.

2         **Q    On June 20th, 2017, for the case you have**

3    **described earlier, was the courtroom closed?**

4         A    No.

5         **Q    Did there come a time on June 20th, 2017, that**

6    **you directed Norma Rogers, Arthur Rogers and William Hale**

7    **to take a drug test?**

8         A    There came a time that day that they had

9    agreed to take a drug test, and I showed that as an

10   official order of the court that all interested persons in

11   that case be drug tested that day.

12        **Q    And when you say agree, in what way did they**

13   **agree?**

14        A    My recollection of that day was that they were

15   asked if they would agree to be drug tested and they agreed

16   they would.

17        **Q    Asked by whom?**

18        A    My recollection is the guardian ad litem in

19   that case asked that question at side bar, turned around

20   and asked that question, and they agreed.

21        **Q    Do you know if that's -- that was on the**

22   **record?**

23        A    I believe it was not on the record.

24        **Q    Did you order them to be detained for the**

25   **purpose of a drug test?**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 25 of 100

```
1              A    No.

2              Q    Did you intend for them to be detained that

3    day?

4              A    No.

5              Q    Do you recall who the deputy was in your room,

6    courtroom, at the time of that hearing on June 20th, 2017?

7              A    I had at least one bailiff, Bobby Duncan.

8    There may have been more.  I think Eric Brown was in and

9    out of the courtroom that day.

10             Q    Do you recall asking Mr. Duncan to help you

11   carry out -- or help carry out the drug testing?

12             A    Yes.

13             Q    Okay.  And what did you mean when you were

14   asking him to help you carry that out?

15             A    At that time, the sheriff's department in the

16   jail did drug testing.  They did it for our drug court.

17   They did it for family law cases.  Virtually anything that

18   needed a drug test, the sheriff's department conducted the

19   drug test.  And so I was asking him to escort the

20   individuals in the case to the jail so that they could be

21   drug tested.

22             Q    When the sheriff was doing drug testing, do

23   you know what protocols or procedures they used to do drug

24   testing?

25             A    Not in any detail.  I know that it was a
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 26 of 100

1    standard drug test, multi-panel drug test that we had

2    gotten approval from our supervisors at the state drug

3    court because we use them for the drug court screens also.

4    I know that they were administered by jail personnel in

5    person.  Beyond that, I'm not sure.

6              **Q    Do you know if anyone checked to see if people**

7    **were taking prescription drugs before drug testing?**

8              A    I'm not sure what their procedure was.  I know

9    that that question came up quite a lot, and I know that

10   when that was ever raised as a reason why someone had

11   tested positive, I made sure that they were given a chance

12   to provide a prescription.  That even included drug court,

13   even though they weren't supposed to be on a prescription

14   like that.  I would always make sure of that.  I think -- I

15   think they did that in the jail as well.

16             **Q    Do you know if there was any backup testing in**

17   **case there's a false positive?**

18             A    Often there was, yes.

19             **Q    So do you know what the protocol was for the**

20   **backup test?**

21             A    Typically, if someone requested it, we would

22   do the backup test.  The backup test is going to be more

23   expensive and take more time, which, of course, is fine,

24   but sometimes people would want that and sometimes they

25   would just admit that they had used, and it just varied on

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 27 of 100

1    a case-by-case basis.

2             There were a couple of different places that

3    we would use if we wanted to do a backup test and sometimes

4    I would want a backup test.  Sometimes the results just

5    showed diluted, things like that, and I would want to do

6    the backup to know what I was looking at.

7        Q    Okay.  And who read the tests or told you what

8    the results were?  I mean, was it, you know --

9        A    Different individuals depending on who was

10   working.  You know, for a long time there was one head

11   deputy that would be the primary one that would do that,

12   and I don't think she was still working at that time.

13       Q    What was her name?

14       A    Her name was Melissa Dunn, and I'm certain

15   that she was not working at that time now that I think

16   about that.  She ran against James for sheriff and lost, so

17   I know that she was not.  So there were different people

18   that did.  I'm not sure who on that day.

19       Q    And what were their qualifications, do you

20   know?

21       A    Not sure.

22       Q    Do you know if they had any?

23       A    Not sure.

24       Q    Now, when you were making an order for Norma

25   Rogers, Arthur Rogers and William Hale --

ALARIS LITIGATION SERVICES
www.alaris.us        Phone: 1.800.280.3376        Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 28 of 100

```
1              A     Let me clarify that one, too.  Sorry.  As I
2       have alluded to, I was judge over our drug court for a
3       number of years.  We made sure that everything we did was
4       in compliance with what was required by all those who
5       oversaw the drug court, including on a federal level.
6                    So I'm not sure where all the training took
7       place.  I'm not certain what their qualifications were.  I
8       was just thinking about my answer thinking that sounded
9       like maybe I didn't know that they were qualified.  I knew
10      that they were qualified.  But as far as exactly what those
11      qualifications were, I am not sure of that.
12             Q     Do you know if the qualifications for drug
13      testing, drug testing protocol and personnel for persons
14      who are in drug court is the same as for other people being
15      drug tested?
16             A     I'm not positive about everything they did in
17      the sheriff's department.  That's not -- That's not mine to
18      run.  But my understanding was this was the same people
19      that did the test.
20             Q     But what I was asking is:  Do you believe that
21      drug testing that's good enough for drug court is good
22      enough for anyone?
23                   MR. FLEMING:  I'll object to the form.  Vague.
24      Subject to that, you can answer, if you know.
25             A     Well, again, we used a multi-panel test that
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 29 of 100

```
1    was proven effective and one that drug courts all around

2    the state relied upon, and if there was any question about

3    that, we did the backup test.

4          Q     (By Mr. Rothert) Okay.  And so you used them

5    for purposes other than drug court?

6          A     Yes.

7          Q     Norma Rogers was not in drug court, was she?

8          A     No.

9          Q     Arthur Rogers was not in drug court?

10         A     No.

11         Q     And William Hale was not in drug court?

12         A     No.

13         Q     So why were they drug tested?

14         A     This case that is at the center of this

15   controversy, the young lady named Chloe Collins, I had

16   received a request for emergency guardianship because of

17   drug use in the home.  The day of the hearing that you have

18   asked about, when I was made aware that the parents and

19   grandparents were in the courtroom, I called side bar

20   because no one had made me aware that they were in the

21   courtroom, and I wanted them to be involved, at least to

22   have the chance to be heard, if they wanted to be.  That is

23   my policy on every case I hear.

24               And so I asked the attorneys why I was not

25   made aware that these people were in the courtroom, and at
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 30 of 100

1    the time that we had that discussion, again, my

2    recollection is the guardian ad litem, Ms. Upton said to me

3    that anyone who wanted placement of this child in their

4    home, she wanted them to be drug tested because there are

5    allegations of drug use in the extended family as well.

6            And that was -- I'm jumping a few steps, but

7    that was essentially what Arthur Rogers was asking for when

8    he stood up in court was to let me know that he didn't

9    agree with what was happening and he wanted to be

10   considered for placement as well, and William Hale made the

11   same request later.

12       **Q    William Hale, you're saying, requested**

13   **placement of the child with him?**

14       A    William Hale stood up and said that he would

15   like to be drug tested also because the kids sometimes stay

16   with him and he would like them to be able to stay with

17   him, and so he would like to be drug tested so that there

18   was no issue with them staying with him.  I don't recall

19   exact words, but it was along those lines.

20       **Q    Do you know why none of that showed up on the**

21   **record or in the recording of the hearing?**

22       A    I know that when we went on side bar, that

23   must have all been off record.  I'm not sure when the

24   device was on and when it was off.  I have listened to it.

25   It has been a long time since I have listened to it, but I

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 31 of 100

1    recall there were significant portions of it that were not

2    on there, and especially including the portion when the GAL

3    was asking those things.

4        **Q    And when you say drug use in the home, are you**

5    **referring to illegal drugs or legal drugs or both that you**

6    **were concerned about?**

7        A    Well, that was not specified.  Certainly the

8    indication to me was drug abuse, whether prescription or

9    illegal.

10       **Q    If Norma Rogers, Arthur Rogers and William**

11   **Hale had voluntary -- voluntarily agreed to undergo a drug**

12   **test, why did you make it an order?**

13       A    I think that's just standard language from a

14   judge, and from me, if I'm going to have someone do

15   something, it's in the form of an order.  Amongst other

16   reasons for any decision of a court to be right for appeal,

17   it has to be an order or a judgment, actually, preferably a

18   judgment, but I was admonished early on in my judicial

19   career never to just do a memo, for example, because you

20   really can't take action on that as an attorney or

21   litigant.  You need an order or a judgment to be able to

22   act on it.

23       **Q    So once you ordered Norma Rogers, Arthur**

24   **Rogers and William Hale to be drug tested, it was no longer**

25   **voluntary; is that true?**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 32 of 100

```
 1              MR. FLEMING:  I'll object to the form.  Calls
 2      for a legal conclusion.
 3          Q    (By Mr. Rothert) You can answer if you know
 4      the answer to that.
 5          A    My answer is:  I believe they volunteered to
 6      do that.  The whole purpose for them speaking up in court
 7      was because they wanted to have this child with them and
 8      didn't agree with anything that was going on, and they had
 9      agreed to take the drug test because the attorney
10      representing the child said I want to make sure wherever
11      this child is that there are no drugs around, and everyone
12      said they agreed to do that.
13              As far as disobeying an order, I don't like it
14      when anyone disobeys an order, but I can't get inside the
15      Rogers' mind and tell you to what extent they believed it
16      was voluntary versus an order.  They did agree to do it,
17      though.
18          Q    Once they -- Once you ordered it, were they
19      free to disregard your order and just not be drug tested?
20          A    I'm waiting for my counsel to object if he
21      wanted to because that's a speculative answer.  I really
22      couldn't give you a definite answer on that.  These are
23      grandparents who were very upset.  I had been made aware
24      that they were upset the day before, and I understand that
25      emotions run high in cases like these and there are times
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 33 of 100

1    that I give a lot more leeway in cases involving kids like

2    that than in other types of cases.

3              So if they had said something, for example,

4    like, in that case, we would rather not be considered for

5    placement, I think I probably would have said that's okay,

6    you're free to go then.

7         Q    Okay.  So they were not free to go is what

8    you're telling me once they --

9         A    It doesn't seem like what I told you.  I think

10   I told you that I would have said that they were free to go

11   if that's what they would have said to me.

12        Q    You're saying if they don't want to be

13   considered, they are free to go.  I'm asking you if they

14   still wanted to be considered, were they free to leave

15   without being drug tested?

16             MR. FLEMING:  I'll object to the form.  Calls

17   for speculation.  Subject to my objection, you can answer.

18        A    I think I gave my answer.

19        Q    (By Mr. Rothert) You did not.  I'm asking

20   if -- were they free to leave without any conditions

21   without being drug tested?

22        A    Again, my answer is:  Depending on what their

23   intention was that day.  First of all, if they had not

24   asked to be considered for placement, none of it ever would

25   have come up.  If they had told me at any point along the

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 34 of 100

```
1    way that they didn't want to anymore, I think there's at

2    least a good chance that I would have said, that's fine,

3    you don't have to be.

4         Q    Once you ordered Norma Rogers, Arthur Rogers

5    and William Hale to be drug tested, were they free to

6    leave?  If they did nothing else, were they free to walk

7    out the door?

8              MR. FLEMING:  I'll object to the form of the

9    question.  Calls for speculation.  Subject to that, you can

10   answer.

11             MS. KAYSER:  Jack, I can't hear you when

12   you're objecting.  Is anybody else having a hard time

13   hearing?

14             MR. ROTHERT:  It's very difficult.

15             MR. FLEMING:  Can you hear me better?

16             MR. ROTHERT:  Yes.

17             MS. KAYSER:  A little bit.  Thanks.

18             THE WITNESS:  Is there still feedback when his

19   mic is on?  He's just really, really quiet.

20             MR. ROTHERT:  It was echoey before.

21        A    All right.  Well, after all of that, I'm not

22   certain where we were at.

23        Q    (By Mr. Rothert) Okay.  I'll ask --

24        A    I expect orders to be complied with, no

25   mistake about that.  But again, any juvenile case like this
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 35 of 100

1    is a special circumstance, and I can't say conclusively

2    when there's speculation involved like that what I would do

3    in a given situation.

4         **Q     How often do you order people in civil matters**

5    **to be drug tested, as a judge?**

6         A     It varies.

7         **Q     Okay.**

8         A     Not often.

9         **Q     How many times in the past year?**

10        A     I would have to go through each case and look,

11   but not many.

12        **Q     Is "not many" less than five, less than a**

13   **hundred?  Can you give an --**

14        A     Certainly less than a hundred.  It could be

15   more than five.  Probably not much more than five.  It

16   comes up a lot in divorce cases where parties want custody

17   and one party will ask -- make a motion for drug testing of

18   the other party.

19             Usually the end result of that is that counsel

20   for receiving party says, well, we'll take a drug test if

21   your client will.  And they'll say, that's fine, we'll all

22   take a drug test.  But that happens, I would say, probably

23   five times a year in divorce cases.  Probably about that

24   many times a year in other civil cases as well.

25        **Q     Other than the -- the drug test, would there**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 36 of 100

```
 1    be any other reason why Norma Rogers, Arthur Rogers or

 2    William Hale were not at complete liberty to leave on

 3    June 20th, 2017?

 4         A    Arthur Rogers lunged at me as he was leaving

 5    the courtroom and was immediately held in criminal

 6    contempt.

 7         Q    Let me ask you about that because I noticed in

 8    some pleadings there has been some reference to lunging,

 9    and I wanted to give you an opportunity to tell us about

10    that under oath.  What do you mean by lunge?

11         A    As he was being led out of the doorway, he was

12    looking at me.  I believe my bailiff was holding the door

13    for him and he turned around.  He was heading towards the

14    door, he turned around towards me, and one leg came towards

15    me, his arms came up at his sides, and he had a very

16    belligerent look on his face like he might just come all

17    the way at me.

18         Q    And how far away was he?

19         A    I'm going to estimate he is about 15 feet away

20    from me at that point and about three feet away from my

21    clerks.

22         Q    And was that frightening to you?

23         A    It was frightening in the sense that I was

24    worried about my clerks.

25         Q    What were you worried about?
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 37 of 100

1          A     Well, I was already worried about Mr. Rogers

2     that day because he had threatened my clerks and been very

3     belligerent the night before.  So I was already alerted to

4     the fact that he was upset, and he acted very upset that

5     day in court.  And so I was worried that he might be

6     violent.  Even before that happened I was worried he might

7     be violent.

8          Q     **Was he violent, in fact?**

9          A     Well, that depends on your definition, but

10    that seemed violent to me.  Certainly very unusual and

11    unreasonable for someone to act that way in court.

12         Q     **And you held him in contempt for lunging?**

13         A     For his behavior and the totality of what he

14    did, including the lunge, yes.

15         Q     **Was the lunge the worst of it or what?**

16         A     I would say that's the worst of it, yeah.

17         Q     **And then on the record you did explain that**

18    **you were going to hold him in contempt; is that correct?**

19         A     Yes.

20         Q     **All right.  And you did a written order later**

21    **explaining that you were holding him in contempt?**

22         A     Yes.

23         Q     **Is there a reason why you forgot to mention**

24    **the lunge in either your oral or your written remarks?**

25         A     In my oral remarks I think I used the words

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 38 of 100

1    "that look", and so I was including the look on his face, I

2    was including his hand gestures, the whole thing, and

3    didn't use that word.

4              I actually haven't looked at my written order.

5    I'm not sure what words I used there.  I know that when I

6    would write up an order of contempt on a day like that day

7    was, when I have a busy docket, my main goal was to get the

8    order written so that the jail was lawfully holding

9    someone.  I might have not paid as much attention to the

10   wording as I should have.

11        **Q    Would that be unusual if you left out a fact**

12   **in a --**

13        A    It's unusual, but it's not something that

14   would never happen, because sometimes people who are held

15   in contempt may be screaming for five minutes.  So you

16   don't include everything that's said and every part of it

17   necessarily in your order.  You try to state the legal

18   reasons why you held that person in contempt.

19        **Q    So other than Arthur Rogers, was there any**

20   **reason, other than the drug testing, that Norma Rogers or**

21   **William Hale would not have been at liberty, had their full**

22   **liberty that day?**

23        A    No reason I can think of.

24        **Q    Now, what gave you the authority to order that**

25   **Norma Rogers be drug tested?**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 39 of 100

1          MR. FLEMING:  I'll object to the form.  Calls

2    for a legal conclusion.  Subject to my objection, you can

3    certainly answer.

4          A    I believe that I have inherent power to order

5    a drug test in a case like that when a party is seeking

6    placement of a child, and especially when they consent to

7    the test being done for that purpose.

8          Q    (By Mr. Rothert) And is that the same answer

9    you would give for Arthur Rogers and William Hale?

10         A    William Hale was a little different.  He -- I

11   don't recall the exact words, but his request was more

12   along the lines, I took it, that the kids were at his house

13   often.  Not that he was seeking a placement, but that they

14   were there often and he wanted to be tested so that they

15   could be free to be there.

16         Although, I will say, in any case like that,

17   especially in juvenile court, it's my responsibility and

18   the children's division's responsibility in those cases to

19   make sure that a relative is considered for placement first

20   before any foster home or anyone else would receive a

21   placement.

22         Q    So your answer for Arthur Rogers would be the

23   same as it was for Norma Rogers?

24         A    In what way?

25         Q    I asked you if your answer for -- as to Norma

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 40 of 100

1    Rogers would be the same for Arthur Rogers and William Hale

2    and you gave me an answer about William Hale being a little

3    different.  So I'm asking if -- what your -- why you

4    believe you could order Arthur Rogers to have a drug test?

5         A    Well, again, I think anyone who expresses the

6    intention to be a party in a case and wanties to be

7    considered for placement of a child or the child to be in

8    their custody, I believe the court has power to order a

9    drug test at that point.

10        Q    And then what was your intention to do with

11   the results of the drug test?

12        A    Typically in those cases, and I think this was

13   the same, my intention is that counsel would be armed with

14   all information so that they could provide it to the court

15   regarding all placement options and considerations.

16             And so at the next hearing -- I had already

17   ended the hearing that day and explained to the Rogers that

18   I was going to give them a chance to get counsel and be

19   heard in a full hearing, and so we were postponing that

20   hearing for another day so that they would have the chance

21   to do that.  And so typically then -- in this case, on that

22   next hearing I would expect to hear from their attorney and

23   I would expect to hear from the guardian ad litem and

24   possibly opposing counsel about the results of the test and

25   that would give me information upon which I could make a

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 41 of 100

1  good decision where a child who has been alleged to be in

2  danger should be placed.

3        **Q    Was there any other reason or intent and**

4  **purpose that you had for the drug testing?**

5        A    No.  The only purpose I had that whole day was

6  keeping a little child safe.

7        **Q    And the -- You didn't have any punitive**

8  **purpose, you weren't planning on punishing anyone based on**

9  **a drug test result?**

10        A    Punishing anyone?

11        **Q    Yes.**

12        A    Who?

13        **Q    Anyone.**

14        A    No, I had no intention of punishing anyone on

15  that day.  The hearing was set for guardianship of a child

16  and the allegation was --

17        **Q    Right.  I'm asking --**

18        A    -- he was abusing drugs and the child needed a

19  safe place to stay.

20        **Q    I understand all of that.  My question to you**

21  **is:  When you were ordering the drug tests, were you**

22  **intending to use those results for any punitive purpose?**

23        A    No.

24        **Q    And did you use the results for any punitive**

25  **purpose?**

ALARIS LITIGATION SERVICES
www.alaris.us      Phone: 1.800.280.3376      Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 42 of 100

```
 1          A    No.  The purpose was to determine where the
 2    child would be safe and whether the people asking for
 3    placement could be considered a safe placement.
 4          Q    And let me just see if we can break right here
 5    for a second.  Do you know when you have sent down -- Or
 6    when you have ordered people be drug tested by the
 7    sheriff's department, do you know if they were kept or kept
 8    longer or free to leave or --
 9          A    I don't.
10          Q    And have you ever held someone in contempt in
11    a civil case because their drug test came back positive?
12          A    Yes.
13          Q    When did you do that?
14          A    I did it that day for one, for the parents.
15          Q    Okay.
16          A    Not very often, but occasionally that happens
17    when people come to court under the influence of drugs.
18    The parents told me that their tests would be positive
19    because they were under the influence as they were sitting
20    there in court.
21          Q    Okay.  When else have you done it?
22          A    That would be the main example, and again,
23    that's rare, but it's happened.
24          Q    Has there ever been a writ that undid a
25    contempt order of yours for someone you have put in jail
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 43 of 100

```
 1    for testing positive on a drug test?

 2           A     Yes.

 3           Q     And do you know who the individual was in that

 4    case?

 5           A     Starry Ballis.

 6           Q     And how did Starry Ballis come to be drug

 7    tested?

 8           A     Starry Ballis was in my courtroom on a

 9    criminal docket day.  There was a gentleman who had a case

10    before me, and my recollection is, is that in addition to

11    handling his case, I was attempting to give him good advice

12    about staying out of trouble, essentially, and Ms. Ballis,

13    who I did not know at that time, was in the crowd shaking

14    her head in a very exaggerated way back and forth.

15                 After I concluded with the gentleman, she got

16    up and stomped to the back of the courtroom.  And as she

17    was making her way out of the courtroom loudly exclaimed

18    that this is a bunch of bullshit.  And so I called her back

19    to the podium and told her that was not permissible in

20    court.  And she proceeded to say that word several times

21    and others that were worse, very loudly, and continued to

22    do that even though I told her a number of times that if

23    she continued to interrupt me and continued to act in that

24    way, I was going to have to hold her in contempt.  And she

25    continued to do so, and so I held her in contempt and then
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 44 of 100

```
1      I ordered her tested.

2           Q     Okay.  And what was the basis for ordering

3      her -- observing her in the courtroom who was not part of

4      the case to be drug tested?

5           A     She appeared to me to be under the influence,

6      and at that point, I felt that would be a mitigating factor

7      for her because she had acted so contemptuously at that

8      point.

9           Q     Okay.

10          A     So I believed I needed to do that.

11          Q     And then she did test positive; correct?

12          A     Yes.

13          Q     So then did you reduce the amount of time she

14     was in contempt as a result of that?

15          A     Since it's a mitigating factor, I don't

16     believe I showed any docket entry that reduced it, but I

17     think I factored it in.  I only recall doing one order on

18     that case, but I think it was a factor in my order.

19          Q     Okay.  Do you know if that made it into the

20     order?

21          A     The fact that she tested positive?

22          Q     Or that you were considering that as a

23     mitigating factor?

24          A     I doubt that it did.  I don't recall.  But I

25     doubt that I put it in there.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 45 of 100

1          Q    Okay.  Well, I think we can all agree that
2    it's important to be respectful to courts, so I'm going to
3    ask if we could all agree that we could recess this
4    deposition briefly so that I may appear before Judge Lowry
5    as I have been directed to do.
6          A    I think that's great.  If I could just make
7    sure that my answer is very clear, I held Ms. Ballis in
8    direct criminal contempt that day as well.  There's a
9    difference in the types of contempt.  You're probably aware
10   of that, but there is a difference, and when you're held in
11   criminal contempt, that is -- that is a case against you as
12   an individual.  So, yes, she started as an observer.  At
13   that point beyond that, however, she was not.
14         Q    Understood.
15              MR. ROTHERT:  All right.  I do not know
16   exactly how long this break will take.  I would think,
17   based on my experience with Judge Lowry, it will be 15
18   minutes-ish.  So I appreciate your patience.
19              (Whereupon, a short break was taken.)
20         Q    (By Mr. Rothert) All right.  Going back on the
21   record.  Let me ask the witness, do you understand you're
22   still under oath from before?
23         A    Yes.
24         Q    Did you have any discussions with anyone
25   during the break?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 46 of 100

1          A     Yes.

2          **Q     Who did you speak to?**

3          A     My counsel and the clerks in the office.

4          **Q     What did you discuss with the clerks in the**

5    **office?**

6          A     I discussed several pending cases about which

7    they had numerous questions that I had wished they would

8    wait until Monday to ask me, but they seemed like they --

9    they felt like they were urgent, so we talked about some

10   things they needed help with.  Not related to this case.

11         **Q     Anything else?**

12         A     No.  Other than I told them that I would still

13   be in here a while.

14         **Q     Okay.  Well, and for everyone else's**

15   **information, we are ordered to reconvene with Judge Lowry**

16   **at 5:30, so I hope we will be done well before then.**

17             **Could you please tell us now how drug testing**

18   **is done differently in Texas County in the courts than what**

19   **you described was happening in 2017?**

20         A     I can't speak for Texas County because we have

21   numerous judges that preside in cases here.

22         **Q     Okay.  Could you tell me -- I'm sorry.  Could**

23   **you tell me about for you?**

24         A     The only cases in which I administer drug

25   tests now are ones in which there are agreements from the

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 47 of 100

1    parties.  I don't do it at all in criminal cases.  But in

2    civil matters where there is a motion before the court, I

3    suppose I would rule on that motion if there weren't an

4    agreement, but I have not had a case that I can ever recall

5    in which parties don't agree to that when it's requested in

6    civil cases.

7         **Q    Are they still done by the sheriff's office,**

8    **the drug tests?**

9         A    No.  No.  The sheriff's office quit doing

10   those quite some time ago.

11        **Q    How long ago, if you know?**

12        A    Don't know the exact date.

13        **Q    Do you know the year?**

14        A    I do not, but it's been at least a couple of

15   years ago.

16        **Q    Okay.  They were still doing them in 2017; is**

17   **that right?**

18        A    At least part of that year, yeah.

19        **Q    Do you know who actually administers the drug**

20   **tests that you order now?**

21        A    For probationers in criminal cases, they do

22   tests at the office of Private Probation Services, which is

23   the supervising entity for all of our misdemeanor cases.

24   For felony cases, the state office of probation and parole,

25   I believe, still conduct those at their office.  For civil

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 48 of 100

```
 1    cases, our private probation office will do that for a fee
 2    as will other drug testing services in Rolla, West Plains
 3    and Mountain Grove.  Those are the primary ones we use, and
 4    I don't know off the top of my head what the names of those
 5    entities are, but we have places in those towns that will
 6    conduct those tests.
 7         Q    Do you believe that on October -- or I'm
 8    sorry.  Turning your attention back again to June 20th,
 9    2017, do you believe that it would be unreasonable to
10    physically restrain Norma Rogers because of the drug test
11    that you ordered?
12              MR. FLEMING:  I'll object to the form.  It
13    calls for a legal conclusion.  Subject to my objection, you
14    can answer.
15         A    Well, I would ask you to clarify, too.  Who
16    are you asking?  Would it be unreasonable for me to
17    restrain her, for the sheriff to restrain her?  What are
18    you asking me?
19         Q    (By Mr. Rothert) I'm asking you if, based on
20    the information that you have available to you and your
21    personal knowledge, if it would have been unreasonable for
22    anyone to restrain Norma Rogers on June 20th, 2017, in
23    response to your order of drug testing?
24              MR. FLEMING:  Same objection.
25              MS. KAYSER:  Object to the extent that it
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 49 of 100

1    calls for speculation and it's an improper hypothetical.

2    But you can go ahead and answer.

3                    MR. FLEMING:  I join.

4        A    I think that's a pretty difficult answer for a

5    number of reasons, including, you know, her demeanor in

6    court was fine that day.  She never caused any problem in

7    court.  I have no idea what she acted like in jail, and of

8    course, police officers often have to take --

9        **Q    (By Mr. Rothert) Excuse me.  Let me interrupt**

10   **you there.  Let me -- No.  What I asked you is based on the**

11   **information -- your personal information is what I asked.**

12   **So you don't need to guess about what might have happened**

13   **or what might have been different.  You can just tell me**

14   **based on the information that you have, your knowledge, was**

15   **it reasonable to restrain her in response or because of the**

16   **order for drug testing that you entered?**

17       A    Well, that's the question I'm attempting to

18   answer because, again, my observations of her in person

19   were that she was not a problem.  I do not know what she

20   acted like when she was outside my presence.  So you're

21   kind of asking me two questions, and I'm telling you

22   that --

23       **Q    I'm asking you a question.  I'm asking --**

24       A    May I answer?

25       **Q    No.  My question is:  Based on your personal**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 50 of 100

1    **information, what you observed, what you know to be true,**

2    **was it reasonable as a result of your order -- would it**

3    **have been reasonable as a result of your order to restrain**

4    **Norma Rogers?**

5              A    I'm trying to answer that question.

6                   MS. KAYSER:  Object.

7              A    I'm sorry.

8                   MS. KAYSER:  Sorry.  It calls for speculation

9    as the judge was not present in the court -- or in the

10   jail.

11                  MR. ROTHERT:  No talking objections.  That's

12   not how we work.

13                  MS. KAYSER:  My objection --

14                  MR. ROTHERT:  That does not happen in

15   depositions.  Thank you.

16             **Q    (By Mr. Rothert) You may answer the question.**

17                  MR. FLEMING:  I join.

18             A    Well, I'm trying to answer the question.  The

19   answer to the question is:  I don't know what happened in

20   the jail or even in --

21             **Q    (By Mr. Rothert) I'm not asking you to**

22   **speculate, Your Honor.  I'm asking you to answer the**

23   **question based on what you saw and what you know.**

24             A    You are asking me for speculation.

25             **Q    Well, let me --**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 51 of 100

1          A     You did ask me to speculate.  You asked me if

2    I thought it would be reasonable for her to be restrained,

3    and I'm telling you, based on what I saw in the courtroom,

4    there was no reason to restrain her.  I don't know what she

5    did once she was taken out of my presence.

6          **Q     Okay.  So based on what you saw and the**

7    **information you have about Norma Rogers on June 20th, 2017,**

8    **it would not have been reasonable to restrain her?**

9          A     That's not my answer.

10          **Q     Okay.  Then what is your answer?**

11          A     If she threatened an officer as the test was

12    being conducted, then it would be reasonable for them to

13    restrain her.  I have no idea what she did when she was

14    being tested, Counselor.

15          **Q     Okay.  And the question is:  Based on the**

16    **information that you have -- Do you know what you know?  Do**

17    **you know what you saw about Ms. Rogers that day?**

18          A     I know what I saw in the courtroom.  She was

19    not drug tested in the courtroom.

20          **Q     That's all I'm asking.  Based on what you know**

21    **and what you saw that day, would it have been reasonable to**

22    **restrain her as -- because of your order of drug testing?**

23          A     Well, I have given you my answer.

24          **Q     You have not.**

25          A     She did not give me a problem in the

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 52 of 100

```
 1    courtroom.  I do not know what she acted like in the jail.
 2           Q    Okay.  So based on what you saw, would it have
 3    been reasonable to restrain her?
 4           A    In the courtroom, no.
 5           Q    Okay.
 6           A    That's not where she was drug tested.
 7           Q    My question is:  Did your order intend that
 8    she be restrained?
 9           A    My order did not intend that she be
10    restrained.
11           Q    Did you have any reason when you entered your
12    order to believe that it would be reasonable to restrain
13    her?
14           A    I don't anticipate what any police officer is
15    going to encounter and make a judgment as to whether they
16    are being reasonable.  I often have to consider that after
17    the fact as to whether they acted reasonably, but I don't
18    do that when I send someone down.  If they are threatened
19    or any number of things happen, that's a decision for them
20    and not me.  And I'm not trying to be difficult about that
21    answer, but you're trying to get me to say whether they
22    acted reasonably and I can't know that.
23           Q    Well, I'm not asking you that.  I'm asking you
24    if -- if your order was reason enough.  If it's nothing
25    else changed other than you had an order for drug testing,
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 53 of 100

1    would that be a reasonable basis for restraining?

2          A    Well, that's a different question.

3          Q    Next question.  You answered the first one

4    finally.

5          A    But again, just an order for drug testing,

6    there is no detention that is contemplated by that.

7          Q    Okay.  Thank you.  And the same question as to

8    Arthur Rogers, did you intend for him to be restrained?

9          A    I did not intend for him to be restrained.

10         Q    Thank you.

11         A    He exhibited belligerent behavior, however, in

12   the courtroom.

13         Q    I understand that.

14         A    So that's what's different about him.

15         Q    I was just asking what you intended.  Did

16   Mr. Hale, did you intend him to be restrained?

17         A    No.

18         Q    Do you know -- I'm not even asking you to

19   assume that they were, but do you know if it was a policy

20   or regular behavior for people who were sent for drug

21   testing to be restrained or detained in the sheriff's

22   department?

23         A    My belief is that it was not policy.  I would

24   not have agreed to that if that was some standard policy.

25   I would not have allowed that.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 54 of 100

```
 1            Q    Did there come a time on June 20th, 2017,
 2     after Norma Rogers, Arthur Rogers and William Hale left
 3     your courtroom initially, that they returned to your
 4     courtroom?
 5            A    I do not recall that they did.
 6            Q    Do you recall having any -- Do you recall
 7     learning about their drug test results?
 8            A    Yes.
 9            Q    And what did you learn?
10            A    Well, I recall for certain learning about
11     Norma's drug test.  I don't remember for certain Arthur's,
12     but --
13            Q    Well, let's start with Norma then.  What do
14     you remember about learning about her drug test?
15            A    I remember being -- Very similar to today
16     actually.  When I have a break in court, I'll go into the
17     clerk's office and check to see if they have issues that
18     need addressed, things that need to be signed, questions
19     they need answered.  And I was on a break from court, and
20     my recollection is that one of the bailiffs, and I think
21     that it was Eric Brown, brought in a drug test for me to
22     look at and it showed a prescription that was out of date
23     for Norma.
24            Q    Okay.
25            A    And I believe -- I don't remember if -- I
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 55 of 100

```
1    would imagine I was shown the drug test that showed she was

2    positive at the same time, but I don't recall that for

3    certain.

4         Q    Were you aware that she was being detained and

5    in the custody of the sheriff's department at the time when

6    you got that drug test result?

7         A    I was not.

8         Q    And did you take any action as a result of

9    being aware of that drug test result?

10        A    Yes.

11        Q    What action did you take?

12        A    I told the bailiff to let them go, that it

13   wasn't worth even worrying about whether we could find a

14   prescription that was in date, that Arthur Rogers was to

15   remain because he was held in contempt for his actions in

16   the courtroom, but that the other two should be released.

17        Q    Do you know what time of day that was?

18        A    I don't.

19        Q    And I gather from your answer -- I didn't

20   specifically ask you about William Hale, but do you have

21   any -- were you directing that he should be let go, too?

22        A    That's my recollection, yes.

23        Q    Okay.  And can you explain, if they weren't to

24   be detained or restrained, what you meant by that they

25   should be let go?
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 56 of 100

1          A    Well, it was reasonable to assume that they

2    were still down there or they wouldn't be asking me those

3    questions.  And I wasn't down there.  I don't know.  It's

4    possible that they were allowed to go home and get the

5    tests.  I don't know.  But the question being posed to me

6    was whether I wanted further action taken, and I said no,

7    for the same reason that I alluded to earlier, that these

8    are relatives that are concerned about a child, and it's

9    really not my purpose in any of this to be trying to punish

10   someone for drugs, but rather to determine whether they are

11   a safe placement, and I really had no interest in finding

12   them in contempt or anything else at that point in time.

13         **Q    Are you aware that Norma Rogers and Arthur**

14   **Rogers and William Hale claim that they appeared again**

15   **before you that day after the drug tests?**

16         A    I have heard that that's what's claimed, yes.

17         **Q    What do you think of that?**

18         A    I do not recall that happening.  I can't say

19   conclusively whether it did, but I don't remember that

20   happening.  And I wish that I did, but I deal with so many

21   people on docket days, day in and day out, that there are

22   many cases like that that I just can't remember

23   specifically if it's not -- if there's not a record or a

24   document associated with it, it's very often hard to recall

25   what's happened.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 57 of 100

```
 1          Q    You mentioned that often in court cases
 2    emotions can run high.  Is that -- Is that a common thing
 3    that happens in court?
 4          A    Well, I think I was saying that in cases in
 5    which a child is being taken from a parent, in those types
 6    of cases, those are the ones in which my experience is
 7    emotions run the highest.  In the ones which I have told my
 8    bailiffs, and we have received training, that those are the
 9    most dangerous.  And for that reason, as well as
10    Mr. Rogers' behavior, that's why I had talked to the
11    bailiffs before court about him that day.
12          Q    Do your emotions ever run high in court?
13          A    I try to never let my emotions run high.
14          Q    Do you raise --
15          A    I can't say that I'm flawless in that regard,
16    but I try to not let my emotions run high.
17          Q    Do you raise your voice in the courtroom?
18          A    I do.
19          Q    Frequently?
20          A    No.
21          Q    Have you listened to the recording of the
22    June 20th, 2017, hearing?
23          A    Yes.  Yes.
24          Q    What did you think of your demeanor?
25          A    I thought that it cast me in a poor light.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 58 of 100

1          Q    Okay.  Can you describe what you mean by that?

2          A    I can.  Mr. Rogers had come in to the clerk's

3    office the day before and was yelling and cursing at my

4    clerks and accusing me and the sheriff's deputies of

5    kidnapping this child that was taken by my order of

6    emergency guardianship.  And he waited down in the hallway

7    for the last clerk to leave the building and followed her

8    out to her car doing the same thing, cursing at her and

9    acting belligerent and scared her to death.

10          The clerks told me about this about 15 minutes

11    before court, and so I alerted my bailiffs to that and told

12    them that this was the type of situation that we have

13    spoken of before, that I was worried about him, and that

14    this was the type of case that, you know, they needed to be

15    on high alert and make sure that nothing happened.

16          And so when he stood up and immediately had an

17    attitude with me, which he did, then there were a few

18    things going through my mind.  One is my responsibility, as

19    well as conducting court, is to make sure that the people

20    in my courtroom are safe, and so the judge has a unique

21    perspective from the bench to see what's happening.  And

22    when someone acts disrespectful of the court, it's much

23    more than just disrespect.  It can be something that can be

24    dangerous if people are allowed to believe that they can

25    act unruly.  Order in the court is the old adage that, you

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 59 of 100

```
 1    know, I have always taken seriously.

 2              And so the safety of the court was very high

 3    on my list of concerns, but I also try to make sure that

 4    people are not allowed to just stand up and interrupt the

 5    court and feel like that they are at liberty to do that.

 6    And I had a courtroom full of people that day that were

 7    watching and so I got a little louder than I ordinarily

 8    would, but I was really trying to shut him down so that he

 9    didn't feel like he had clear authority to just do whatever

10    it was that was in his mind he was going to do.  And I

11    wasn't sure what that was, but I didn't want him to think

12    that he was going to get away with doing anything he

13    shouldn't do.

14         Q    Okay.  So you were a little -- You were angry

15    at him going in, though?

16         A    I wasn't angry at him.  I was concerned about

17    him.  I don't get angry at people in my courtroom.  I was

18    concerned about him.  I was concerned about everyone's

19    safety.  I was concerned about my clerk's safety.

20         Q    All right.  Do you recall raising your voice

21    in an extended hearing regarding your view of public

22    defenders not acting quickly enough on a bail hearing?

23    That incident ring a bell?

24         A    A particular public defender?  You said public

25    defenders.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 60 of 100

1          Q    Public defender's office, yes.  Do you

2     recall -- Let me ask it this way.  Do you recall ever

3     summoning all of the public defenders to your courtroom to

4     talk to them about respect and disrespect for the court?

5          A    Well, I never have called all.  I'm not sure

6     who you mean by all the public defenders to my courtroom.

7     Even in our circuit, that would mean several that wouldn't

8     even be in the county on a court day.  If you're talking

9     about the two that were in court on a particular day, yes.

10         Q    Okay.  Can you tell me about that -- that day

11    and what happened that day?

12         A    There was a --

13              MR. FLEMING:  Relevance.  Subject to my

14    objection, you can answer.

15              MR. ROTHERT:  I'm sorry.  I did not hear the

16    objection.  Is it something I can fix?

17              MR. FLEMING:  Just relevance.

18         Q    (By Mr. Rothert) Okay.  That's fine.  You can

19    go ahead and answer.

20         A    There was a public defender who had a

21    client -- It's been a while since I have thought about this

22    one, so bear with me, but I believe it was a first

23    appearance arraignment.  He was held with a significant

24    bond because he was accused of stealing gas from a bus in a

25    bus parking lot and breaking into school property, I

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 61 of 100

1    believe, but he was indigent.  And at the hearing a woman

2    who claimed to be his wife, who had, I think, three

3    children with her, stood up and begged me to let him go

4    because they were homeless and he was only stealing the gas

5    to be able to start a fire for them to not freeze to death

6    because it was below freezing.

7              And I would have to look again to tell you

8    exactly what had happened.  My recollection was that we

9    were waiting on the public defender to make a decision

10   either as to whether they were going to represent -- I

11   think it was that the one that was in court had a conflict.

12   I'm pretty sure that's what it was, and I asked her to --

13   if she would, to contact the main office of the public

14   defender and try to get someone from that office to give me

15   a position if they wanted to do that that day about this

16   gentleman's bond, because at that point, he's represented

17   by counsel and it's appropriate that counsel make a motion

18   if someone is to be released on bond, and I try to let

19   attorneys do that.

20             So I had asked her to do that, and at numerous

21   points through the day she, in essence, was refusing to do

22   that and acting very disrespectfully to me in the process,

23   at one point turning her back on me when I was addressing

24   her in court.

25             And so I waited and told them once court was

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 62 of 100

1    done and everyone else had left, all of the public had

2    left, that I wanted the public defenders and the

3    prosecutors to remain in the courtroom and I wanted to go

4    on record so that there was a record of what I was saying,

5    because I believed it was very inappropriate for this

6    attorney to act the way that she had.  And I was trying to

7    express to her that she had a promising career, but that

8    she would not realize her potential if she was not

9    respectful in court, that it was just not appropriate to

10   act the way she had, and she continued to act that way as I

11   was trying to have that conversation with her.  And, yes, I

12   raised my voice at her that day.

13        **Q    And was that because you feared for court**

14   **safety or was that --**

15        A    Because I wanted her, first of all, to act as

16   all attorneys should, which is respectful of the court, not

17   me, but of the court and of the system, and also I was

18   concerned about her as a young attorney acting in the

19   manner in which she was acting, because as I told her that

20   day, the judges that I had practiced in front of when I was

21   her age would have taken some severe action against me, and

22   that is true.

23        **Q    Were you angry?**

24        A    I don't believe I was angry.  I was very

25   bothered by her behavior and I was trying to express it,

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 63 of 100

```
 1   and again, you know, when I listened to myself on that
 2   recording, I don't sound like I always wish that I would,
 3   but there are also times that I try to impress a point on
 4   people, and I was trying to impress a point on her.
 5         Q    Do you recall ever addressing public defenders
 6   not participating in a pre-docket -- you know, the calling
 7   of the docket or any kind of prayer?
 8         A    Do I recall addressing them?
 9         Q    Well, let me ask this:  Have you ever started
10   your dockets with a prayer of any type?
11         A    The bailiffs in my courtroom use a similar
12   opening to that that the Supreme Court uses, which is God
13   save this honorable court, God save the United States of
14   America, and I had a public defender who refused to stand
15   while I was coming into court because of that, yes.
16         Q    Okay.  And do the bailiffs do that at your
17   direction or --
18         A    Yes.
19         Q    Did that make you angry?
20         A    No, it didn't make me angry.  In fact, I got
21   on the phone to the state public defender that day and told
22   him what was going on, and he expressed to me that he found
23   it very unacceptable and would I work with him to just get
24   this particular public defender transferred instead of
25   making him suffer any consequences because he had a
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 64 of 100

1    religious -- well, he had -- he had beliefs that were not

2    religious and so that was what was offending him he said.

3              The state public defender told me that day

4    that he had intended to ask him if he was offended by the

5    dollars that paid him that had similar language on them,

6    but that he -- So he understood my concern and that he

7    would prefer to take care of that by having him move to a

8    different county if I would agree to that and not cause

9    that attorney to suffer any other consequences, to which I

10   replied that would be more than fine because I don't want

11   him to suffer a consequence.  I just don't want an attorney

12   sitting when court opens when the rest of the courtroom

13   stands up making a big scene out of not doing that, and if

14   he has that particular problem and that's the way you want

15   to handle it, I'm fine with that, I won't do anything.  And

16   I didn't.

17        **Q    Okay.  And when you're talking -- Do you think**

18   **it's appropriate for a court to judge the validity or**

19   **sincerity of a lawyer or a party's religious views about**

20   **religion?**

21             MR. FLEMING:  I'll object to the form.

22   Relevance.  Subject to that, you can answer.

23        A    I don't do that.  I didn't do that with him.

24   I had a number of ways -- I had a number of ways that I was

25   going to try to address that, including letting him come in

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 65 of 100

1    late for court, but the state public defender wanted to

2    just move him to a different county, and I said that was

3    fine with me.  I wasn't going to make him do that.

4         **Q    (By Mr. Rothert) Isn't it true that you**

5    **refused to allow him to just come in late?**

6         A    No, that's not true.

7         **Q    Isn't it true that you said that was**

8    **unacceptable and showed disrespect to the court?**

9         A    Said that to whom?

10        **Q    To the state public defender and to the public**

11   **defender himself.**

12        A    I might have said something similar to that,

13   because I did believe that when court opens and an attorney

14   purposefully sits while everyone else stands to acknowledge

15   the opening of court, that that is inappropriate.  Whether

16   you have a religious belief that is in contradiction to

17   what the Supreme Court uses as an opening to court is a

18   different question.  I don't have a problem with that.  My

19   problem was with respect for the court and making sure that

20   we handled that in a way that was appropriate, and I had

21   different options that I was --

22        **Q    I think that you misunderstood my question**

23   **because I was asking:  Isn't it true that you rejected the**

24   **option of him staying outside the courtroom until you had**

25   **entered and then entering?**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 66 of 100

```
 1            A    I am trying to remember any conversation I had
 2      with that attorney, and I really don't remember.
 3            Q    Okay.
 4            A    My recollection was I, that same day, got on
 5      the phone to the state defender, Mr. Barrett, who I knew
 6      and considered a friend who I had worked with in the past,
 7      and asked him for help in handling it.
 8            Q    Have you listened to the recording of yourself
 9      that day?
10            A    No.
11            Q    Do you recall raising your voice?
12            A    I don't recall what was said that day, but I
13      don't think I did.
14            Q    How -- Why don't you think you did?
15            A    Well, my recollection is that I was shocked
16      that he didn't stand up, and I waited until we went on
17      break and called Mr. Barrett.  I don't think I addressed it
18      when he didn't stand up.  I sure don't remember it if I
19      did.
20            Q    So you called Mr. Barrett before even asking
21      the public defender why he didn't stand up?
22            A    I really -- I can't recall the order of events
23      that day.  I may have talked to that public defender in
24      chambers and asked him what the problem was.  That's
25      possible.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 67 of 100

1        Q    Can you tell me where the Texas County

2   Sheriff's Department is in relation to your courtroom?

3        A    Essentially underneath the courtroom.  The

4   office is on the first floor.  The courtrooms are on the

5   second floor.  The jail connects to the sheriff's office

6   and extends out to the west on ground level.

7        Q    How often do you visit the sheriff's office?

8        A    Not very often.

9        Q    Are you at all familiar with the layout of the

10  sheriff's office?

11       A    Yes.

12       Q    Do you know where -- If someone's being

13  detained involuntarily, do you know where they are held?

14            MR. FLEMING:  I will object to the form.

15  Subject to that, you can answer.

16            MS. KAYSER:  Join the objection.

17            THE WITNESS:  I'm sorry, Portia.

18            MS. KAYSER:  That's okay.  I'm just joining

19  the objection.  Thank you, Judge.

20       Q    (By Mr. Rothert) Okay.  And I'll just clarify.

21  Just based on what you know from being down there.

22       A    Well, there are a number of cells where people

23  are detained.  I don't think that's what you're asking

24  about, though.  You're talking about a drug test in this

25  type of a case?

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 68 of 100

```
 1           Q    Yes.

 2           A    Okay.  No, I don't.

 3           Q    You mentioned being interviewed by some

 4     representatives from the Judicial Commission.  Did they ask

 5     you to take any actions or --

 6           A    They were not -- They did not approve of the

 7     way that I handled the Rogers situation, and the main

 8     concern was drug testing of people in court.  And I was

 9     surprised by some of that conversation, and based on my

10     research, I'm still not sure I'm in complete agreement with

11     it, but I was directed -- well, I wasn't directed.

12                It was suggested to me that it's problematic

13     to even ask someone, such as the Starry Ballis example, to

14     ask someone if they would agree to be drug tested, which

15     I'm sure is what I did with Starry Ballis.  It's similar to

16     the question you asked me before.  I used to ask if -- and

17     oftentimes I would ask because, for example, when a

18     defendant is entering a plea of guilty, I'm trying to

19     determine if they even understand what they are doing

20     because sometimes people would be barely able to stand at

21     the podium.

22                So I would ask the question, are you under the

23     influence of any drugs today, on a misdemeanor plea.  On a

24     felony plea, that's one of the standard questions you're

25     supposed to ask and you're not supposed to take the plea if
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 69 of 100

1    they say that they are, but what do you do if they are
2    exhibiting all the signs of being under the influence but
3    say they are not?  I don't know.
4              Usually they would say no, I'm not, and I
5    would say, well, do you have a problem with being tested.
6    And I think that's what I did with Ms. Ballis.  And when
7    they would consent, then that would be the next step would
8    be to have them tested.  The commission, you know, Judge
9    Rahmeyer specifically said, well, you're the judge and
10   there is someone standing before you in court, do you
11   really think they feel like they are free to say no to that
12   request.
13             And I'm just being very candid with you,
14   Counselor.  I really had not considered that perspective at
15   that point, and I felt like she was right about that.
16   Whether it was something that was allowed or not, I felt
17   like she was right about that because there is -- there are
18   a lot of potential consequences based on what that test
19   might be.  And so, you know, she told me -- We had the
20   conversation that day is that allowed, and there really
21   wasn't a conclusive answer to that question, but they left
22   me with the suggestion that it's best not to do that and so
23   I have not.  Since that time, I have not done that.
24             As I have told you, I have not done it in
25   criminal court at all.  I even asked the question that day,

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 70 of 100

```
1    just so you understand, what do I do if I was pulling in to
2    court and saw that this defendant was the person driving
3    the vehicle and I know they are going to get in the vehicle
4    as soon as they leave and endanger people on the roadway.
5    Am I not supposed to be concerned about that?  And I was
6    told no, you're not supposed to be.
7              And so even when someone appears in court to
8    me to be extremely intoxicated or under the influence, I
9    have not asked that question since.  The only time that I
10   have requested or agreed to a drug test is when it's a
11   motion before me in a civil case since that time.
12        Q    Okay.  Thank you.  You had mentioned that drug
13   testing was the main concern raised with you regarding
14   June 20th, 2017, in your courtroom.  What other concerns
15   were raised?
16        A    My demeanor.  The same concern you expressed,
17   how I sounded on the recording.
18        Q    Have you made any changes in response to that
19   concern?
20        A    Yes.
21        Q    What changes have you made?
22        A    I try to be more mindful of that and not raise
23   my voice to the level that I did on those recordings.
24   Those were the first that I had ever sat and listened to
25   myself on a recording, which is odd probably to hear, but
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 71 of 100

1    that's several years into my judicial career and I had

2    never sat and done that until then, and I didn't like the

3    way I sounded either.

4                    And it's interesting to do that because

5    when -- You know, as with anything in life, when you are

6    there observing the whole thing and you have the visual and

7    you can hear and see what the other people are doing and

8    know what's going on and the totality of the context, then

9    it's much different than just hearing yourself on a

10   microphone responding to something.  It's very different.

11   So I have tried to be more careful about that.

12                    I think it's -- I think it's important that

13   people know they are getting treated respectfully and with

14   justice when they are in court, and I certainly intend to

15   make sure that that's what I portray.  And so I have tried

16   to be more aware of that.

17        Q    **Were there any other concerns that were**

18   **raised?**

19        A    Well, I was asked about the incident with the

20   public defender on that same occasion.  Those complaints

21   were filed at the same time essentially, and so, yes,

22   because I was also surprised that they did not agree with

23   my handling of that one.  I was expecting that they would

24   agree with that, and they did not.  They told me that I

25   acted too harshly to that young attorney.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 72 of 100

1      Q    Now, you mentioned -- So there was a complaint
2  also about that filed?
3      A    Yes.
4      Q    Who filed that complaint, if you know?
5      A    I don't think I'm allowed to know who files
6  the complaints.
7      Q    Okay.  Did they express -- Did the Judicial
8  Commission folks express any other concerns?
9      A    That's my recollection, that those were the
10  main things.  And they kind of let me know that the way
11  that judges handled court when I was a young attorney is
12  not the way they expect court to be handled these days,
13  that in a case like that with the public defender, that
14  essentially I should accommodate things and not address
15  things like that.
16          And just so you understand and anyone reading
17  this record would understand, there is a Canon of Judicial
18  Ethics that requires me to be concerned about those things,
19  and so I have tried to be concerned about those things and
20  tried for the sake of the attorney before me who has,
21  hopefully, a long and fruitful and rewarding career in the
22  practice of law, including as a public defender, which I
23  believe is an incredibly noble calling, that they learn to
24  conduct themselves appropriately at a young age, and I feel
25  like judges have a responsibility there.  And so I was told

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 73 of 100

```
 1    I took that further than they want me to.  But that's --
 2    That's the reason I believe not only on a personal belief
 3    level but on the level of I believe that's what is required
 4    of judges under the Canons of Ethics that I address those
 5    things.
 6            Q    And the Canons of Ethics, of course, also
 7    require judges to be respectful and treat with dignity all
 8    people who appear before the court; isn't that true?
 9            A    Yes, they do.  Yes.
10            Q    Did anything else come out of that Judicial
11    Commission meeting, any other changes or anything you did
12    as a result of that?
13            A    I don't recall anything in particular in the
14    way that you're asking that probably.  I think that it was
15    just a good moment for me to re-evaluate myself a bit and
16    approach each day with a little more joy in my heart about
17    the job perhaps, as corny as that might sound, because
18    there are days when this job gets pretty hard, and when
19    you're in court and you're dealing with some of these
20    decisions and the safety of people and all the things that
21    happen in court, sometimes it can be pretty taxing and --
22    but I love what I do and I love the chance to help people
23    and that's the only reason that I do it, and so I have
24    tried to bear that in mind a little bit more since then.  I
25    think if you can't learn from any situation, then you're
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 74 of 100

```
 1    not very wise, and so I have tried to learn what I can from
 2    that.
 3            Q     Have you had any other complaints that you're
 4    aware of that have been filed with the Judicial Commission,
 5    in your career as a judge?
 6            A     Yes.
 7            Q     Do you know how many?
 8            A     I think two others.
 9            Q     And were those before or after this, if you
10    know?
11            A     I think one was before and one was about the
12    same time.
13            Q     Has the Judicial Commission ever taken any
14    official action against you?
15            A     No.
16            Q     Shortly after your meeting with the Judicial
17    Commission folks, you recused yourself from the case
18    involving the child, KC, initials we're using here?
19            A     Yes.
20            Q     Is that correct?
21            A     Yes.
22            Q     Do you know what -- Did someone ask you to
23    recuse or did you do it yourself?
24            A     No, I did it myself.
25            Q     Do you know -- Do you know why or do you
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 75 of 100

```
 1      remember why?
 2           A    Sure.  I believed it was appropriate for me to
 3      do that because I wanted all of those people to believe
 4      that they were being treated fairly, and I felt at that
 5      point, it was more likely than not that they would not feel
 6      that way if I remained as the judge.
 7           Q    I believe you answered this, but you had --
 8      Going back to 2017, in this time in June of 2017, you had
 9      two bailiffs that worked your courtroom; is that correct?
10           A    We had three bailiffs.  On days like the ones
11      in question with the Rogers matter, my recollection is
12      there was a circuit judge in Courtroom A and I was in
13      Courtroom B, which is an adjoining courtroom that's
14      connected by the doors we have talked about and holding
15      cells in between, and usually there would be the head
16      bailiff in with the circuit judge, Bobby Duncan would be in
17      with me, and Eric Brown, the other bailiff, would kind of
18      roam back and forth between the two courtrooms.
19           Q    Okay.  And you mentioned, I think, the head
20      bailiff's name, but could you just say it again right here?
21           A    Jamie Fox.
22           Q    Okay.  When you were ordering drug testing
23      similar to the situation on June 20th, 2017, did you do
24      that in a written order or orally or did it depend?
25                MR. FLEMING:  I'll object to the form.  Vague.
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 76 of 100

1        Subject to my objection, you can answer.

2            **Q     (By Mr. Rothert) Okay.  I'll just clarify.**

3        **When you would order drug testing, did you do it in a**

4        **written order?**

5            A     You know, that depends on any particular case.

6        I couldn't say that there is a hundred percent with

7        anything, but usually what would happen would be there

8        would be a motion and the attorneys would present a

9        proposed order that I would sign off on.  Not always.  And

10       probably in drug court context, I don't think that I signed

11       written orders on some, at least, of those.  That's a

12       stipulation by someone entering drug court as they

13       understand they are going to be tested.  So it's possible

14       on some of those that they are oral, at least initially.  I

15       might follow up with written orders.

16           **Q     Is -- Do you still preside over probate cases,**

17       **child custody cases like the one involving the Rogers'**

18       **granddaughter?**

19           A     Yes.

20           **Q     And how is court done any differently now in**

21       **2021 than it was in 2017?**

22                MR. FLEMING:  I'll object to the form.  Vague.

23       Subject to my objection, you can answer.

24           **Q     (By Mr. Rothert) All right.  I'll clarify.**

25       **Speaking physically, is court done differently because of**

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 77 of 100

1    the COVID-19 pandemic or any technological updates that

2    have come to Texas County since 2017?

3         A    We have many things that are different because

4    of COVID.  Some things are done by WebEx.  I don't do any

5    contested hearings by WebEx, however.  I want those done in

6    person.  I want to be able to evaluate a witness in person.

7    Lots of the preliminary hearings are done that way, though.

8    If it's a motion hearing between attorneys and things like

9    that, I will do those by WebEx.

10        Also, the legislature changed the statutes

11   regarding emergency guardianships.  At the time that this

12   one was entered, that could be done without a hearing.  Now

13   there's a hearing that is required before an emergency

14   guardianship can be entered.

15        MR. ROTHERT:  Okay.  I have a couple tying-up

16   things, but I think I'm about ready to wrap up.  If I could

17   have -- I would like a three-minute break to go off the

18   record, and then we can wrap this up.

19        (Whereupon, a short break was taken.)

20        MR. ROTHERT:  We can go back on the record.

21        Q    (By Mr. Rothert) Okay.  Back on the record.

22   Do you have any information about the demeanor or behavior

23   of Norma Rogers, Arthur Rogers or William Hale after they

24   left your courtroom to be drug tested?

25        A    No.

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 78 of 100

```
1                    MR. ROTHERT:  I appreciate your time and your
2        responsive -- responses and your reflectiveness and your
3        promise of a copy of Am I a Turtle or Tortoise --
4                    THE WITNESS:  I don't think I promised that.
5                    MR. ROTHERT:  Well, offered.  So not thrilling
6        to be deposed, especially questions that aren't our
7        proudest moments, which seems to be the only thing people
8        ask questions about during a deposition.  So I really
9        appreciate you helping make this go pretty smoothly, and I,
10       again, thank you and all counsel and Jamie for indulging my
11       needed recess.
12                   As you probably know, in a deposition you
13       can -- you have the right to review the deposition, make
14       any corrections, and sign it before a notary.  You also
15       have the opportunity to waive signature.  Do you know what
16       you would like to do?
17                   THE WITNESS:  I would like to review it.
18                   MR. ROTHERT:  So I have nothing else.  Thank
19       you, everyone.
20                   MS. KAYSER:  I have no questions.  Thank you.
21                   THE REPORTER:  Copies of the transcript?
22                   MR. FLEMING:  Yes, etrans.
23                   MR. ROTHERT:  Could I have an etrans and a
24       full page.
25                   (Mr. Fleming's order was given before we went
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 79 of 100

1      on record, etrans.)

2

3               (Deposition was adjourned at 4:24 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 80 of 100

1                      CERTIFICATE OF REPORTER

2

3              I, Jamie Jo Kinder, CCR No. 842, CSR No.

4        084.003306, do hereby certify that the witness whose

5        testimony appears in the foregoing deposition was duly

6        sworn by me; that the testimony of said witness was taken

7        by me to the best of my ability and thereafter reduced to

8        typewriting under my direction; that I am neither counsel

9        for, related to, nor employed by any of the parties to the

10       action in which this deposition was taken, and further that

11       I am not a relative or employee of any attorney or counsel

12       employed by the parties thereto, nor financially or

13       otherwise interested in the outcome of the action.

14

15

16                      Certified Court Reporter

17

18

19

20

21

22

23

24

25

ALARIS LITIGATION SERVICES
www.alaris.us              Phone: 1.800.280.3376              Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 81 of 100

```
 1                  Alaris Litigation Services
                      711 North Eleventh Street
 2                  St. Louis, Missouri  63101
                      Phone (800) 280-3376
 3

 4  March 3rd, 2021

 5  Mr. John Patrick Fleming
    MISSOURI ATTORNEY GENERAL'S OFFICE
 6  P.O. Box 899
    Jefferson City, MO 65102
 7

 8  In Re: NORMA ROGERS, et al. v. DOUGLAS GASTON, et al.

 9

10  Dear Mr. Fleming:

11  Please find enclosed your copy of the deposition of DOUGLAS
    GASTON, taken on February 26th, 2021, in the
12  above-referenced case.  Also enclosed is the original
    signature page and errata sheets.
13
    Please have the witness read your copy of the transcript,
14  indicate any changes and/or corrections desired on the
    errata sheets, and sign the signature page before a notary
15  public.

16  Please return the errata sheets and notarized signature
    page to Alaris Litigation Services for filing prior to
17  trial date.

18  Thank you for your attention to this matter.

19  Sincerely,

20

21  Jamie Jo Kinder, CCR, CSR
    Enclosures
22  Cc: Mr. Anthony Rothert
        Ms. Portia Kayser
23

24

25
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 82 of 100

```
 1   STATE OF            )
                         ) ss.
 2   COUNTY OF           )

 3
     I, DOUGLAS GASTON, do hereby certify:
 4
     That I have read the foregoing deposition; That I have made
 5   such changes in form and/or substance to the within
     deposition as might be necessary to render the same true
 6   and correct; That having made such changes thereon, I
     hereby subscribe my name to the deposition.
 7   I declare under penalty of perjury that the foregoing is
     true and correct.
 8

 9                       _____
                               DOUGLAS GASTON
10
     Executed this _____ day of _____, 20__,
11
     At _____ County,_____.
12

13                       _____
                               Notary Public
14
     My Commission Expires: _____
15
     Signature page to:  Mr. Jack Fleming
16
     CM/DOUGLAS GASTON, February 26th, 2021
17
     Re: NORMA ROGERS, et al. v. DOUGLAS GASTON, et al.
18

19

20

21

22

23

24

25
```

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 83 of 100

```
 1                    Witness Errata Sheet

 2    Witness:  DOUGLAS GASTON

 3
      Re: NORMA ROGERS, et al. v. DOUGLAS GASTON, et al.
 4
      Date Taken:  February 26th, 2021
 5
      Upon reading the deposition and before subscribing thereto,
 6    the deponent indicated the following changes should be
      made:
 7

 8    Page____Line____Should read:_____

 9    Reason assigned for change :_____

10    Page____Line____Should read:_____

11    Reason assigned for change :_____

12    Page____Line____Should read:_____

13    Reason assigned for change :_____

14    Page____Line____Should read:_____

15    Reason assigned for change :_____

16    Page____Line____Should read:_____

17    Reason assigned for change :_____

18    Page____Line____Should read:_____

19    Reason assigned for change :_____

20    Page____Line____Should read:_____

21    Reason assigned for change :_____

22    Page____Line____Should read:_____

23    Reason assigned for change :_____

24

25    Witness Signature:
```

ALARIS LITIGATION SERVICES
www.alaris.us        Phone: 1.800.280.3376        Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 84 of 100

**A**

abided 14:1
ability 81:7
able 17:4 31:16
  32:21 62:5
  69:20 78:6
above-refere...
  82:12
abuse 32:8
abusing 42:18
access 7:6
accommodate
  12:17 73:14
accused 20:10
  61:24
accusing 59:4
achieve 12:2,4
acknowledge
  66:14
acknowledges
  5:14,17
ACLU 4:6
act 32:22 38:11
  44:23 59:25
  63:6,10,10,15
acted 19:13
  38:4 45:7
  50:7,20 53:1
  53:17,22
  72:25
acting 59:9
  60:22 62:22
  63:18,19
action 32:20
  56:8,11 57:6
  63:21 75:14
  81:10,13
actions 13:15
  56:15 69:5
acts 59:22
ad 25:18 31:2
  41:23
adage 59:25
addition 44:10
additional 13:21
address 65:25

73:14 74:4
addressed
  55:18 67:17
addressing
  62:23 64:5,8
adjoining 76:13
adjourned 80:3
administer
  47:24
administered
  27:4
administering
  5:17
administers
  48:19
admit 27:25
admonished
  32:18
advice 44:11
afternoon 3:12
  3:13
age 6:12 10:10
  10:11,14 63:21
  73:24
ago 48:10,11,15
agree 25:12,13
  25:15 31:9
  33:8,16 46:1,3
  48:5 65:8
  69:14 72:22
  72:24
agreed 5:2
  19:22 25:9,15
  25:20 32:11
  33:9,12 54:24
  71:10
agreement 5:21
  48:4 69:10
agreements
  47:25
ahead 50:2
  61:19
al 1:5,8 3:4,7,19
  3:19 82:8,8
  83:17,17 84:3
  84:3
Alaris 4:22 82:1

82:16
alert 59:15
alerted 38:3
  59:11
allegation 42:16
allegations
  15:13 22:20
  31:5
alleged 42:1
allow 66:5
allowed 54:25
  57:4 59:24
  60:4 70:16,20
  73:5
allows 9:8
alluded 29:2
  57:7
America 64:14
amount 45:13
and/or 82:14
  83:5
angry 60:14,16
  60:17 63:23
  63:24 64:19
  64:20
answer 21:6,14
  21:18 22:8
  23:10 24:9
  29:8,24 33:3
  33:4,5,21,22
  34:17,18,22
  35:10 40:3,8
  40:22,25 41:2
  46:7 49:14
  50:2,4,18,24
  51:5,16,18,19
  51:22 52:9,10
  52:23 53:21
  56:19 61:14,19
  65:22 68:15
  70:21 77:1,23
answered 54:3
  55:19 76:7
answers 14:13
Anthony 4:3
  5:25 82:22
anticipate 53:14

anybody 35:12
anymore 35:1
anyway 10:4
Apparently
  24:3
appeal 32:16
appear 12:23
  46:4 74:8
appearance
  61:23
appearances
  9:4 12:8
appeared 45:5
  57:14
appearing 5:12
appears 71:7
  81:5
appointed 9:16
  9:19 19:12
appreciate
  12:18 21:15
  46:18 79:1,9
approach 74:16
appropriate
  62:17 63:9
  65:18 66:20
  76:2
appropriately
  73:24
approval 27:2
approve 69:6
approximately
  16:16
area 8:1
Arianna 4:6
Arkansas 7:18
armed 41:13
arms 37:15
arothert@aclu...
  4:8
arraignment
  61:23
arraignments
  9:8
arrangement
  5:19
Arthur 6:2

21:24 23:2,5
  23:12 25:6
  28:25 30:9
  31:7 32:10,23
  35:4 37:1,4
  39:19 40:9,22
  41:1,4 54:8
  55:2 56:14
  57:13 78:23
Arthur's 55:11
article 15:5
asked 9:21,23
  15:12,22 16:2
  16:24 17:1
  25:15,17,19,20
  30:18,24
  34:24 40:25
  50:10,11 52:1
  62:12,20 67:7
  67:24 69:16
  70:25 71:9
  72:19
asking 15:6,17
  22:11,14 26:10
  26:14,19
  29:20 31:7
  32:3 34:13,19
  41:3 42:17
  43:2 49:16,18
  49:19 50:21
  50:23,23
  51:21,22,24
  52:20 53:23
  53:23 54:15
  54:18 57:2
  66:23 67:20
  68:23 74:14
assigned 22:2
  84:9,11,13,15
  84:17,19,21,23
associate 8:14
  8:16,19,23,25
  9:11,13 10:8,16
associated
  57:24
assume 54:19
  57:1

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 85 of 100

assuming 7:8
athletes 12:1
attempting
    44:11 50:17
attending 3:14
    5:12
attention 23:3
    39:9 49:8
    82:18
attitude 59:17
attorney 4:16
    7:12 13:25
    14:20 15:2
    32:20 33:9
    41:22 63:6,18
    65:9,11 66:13
    67:2 72:25
    73:11,20 81:11
    82:5
attorneys 30:24
    62:19 63:16
    77:8 78:8
authored 11:13
    11:15
authority 39:24
    60:9
available 14:25
    49:20
aware 20:14,15
    21:24 22:20
    30:18,20,25
    33:23 46:9
    56:4,9 57:13
    72:16 75:4
awhile 21:9

_____
B
_____

B 76:13
B-E-G-E-R 14:7
back 43:11 44:14
    44:16,18
    46:20 49:8
    62:23 76:8,18
    78:20,21
background
    12:13
backup 27:16

27:20,22,22
    28:3,4,6 30:3
bail 60:22
bailiff 14:19
    17:25 21:8
    26:7 37:12
    56:12 76:16,17
bailiff's 76:20
bailiffs 55:20
    58:8,11 59:11
    64:11,16 76:9
    76:10
Ballis 44:5,6,8
    44:12 46:7
    69:13,15 70:6
Baptist 10:25
bar 25:19 30:19
    31:22
barely 69:20
Barrett 67:5,17
    67:20
based 42:8
    46:17 49:19
    50:10,14,25
    51:23 52:3,6
    52:15,20 53:2
    68:21 69:9
    70:18
basic 7:9 11:9
basis 24:25
    28:1 45:2 54:1
basketball
    10:20
bear 61:22
    74:24
Beger 14:7
begged 62:3
behalf 1:14 6:1,6
    6:13
behavior 38:13
    54:11,20 58:10
    63:25 78:22
belief 54:23
    66:16 74:2
beliefs 65:1
believe 8:3 11:3
    11:17,23 12:4

15:9 17:24
    20:2 24:18
    25:23 29:20
    33:5 37:12
    40:4 41:4,8
    45:16 48:25
    49:7,9 53:12
    55:25 59:24
    61:22 62:1
    63:24 66:13
    73:23 74:2,3
    76:3,7
believed 33:15
    45:10 63:5
    76:2
believing 11:24
bell 60:23
belligerent
    37:16 38:3
    54:11 59:9
bench 7:4,6
    59:21
best 70:22 81:7
better 20:17
    35:15
beyond 18:1
    27:5 46:13
big 65:13
bit 8:21 10:1
    35:17 74:15,24
Blunt 9:18
board 15:9,20
Bobby 6:6 14:14
    14:17 21:7
    22:22 26:7
    76:16
body 15:11,22
bond 9:3,8
    61:24 62:16,18
book 11:17
books 11:13,15
    11:19,22
bothered 63:25
Box 4:17 82:6
Brad 10:9
branches 11:1
break 13:3 43:4

46:16,19,25
    55:16,19 67:17
    78:17,19
breaking 61:25
breaks 13:2
brief 12:24
briefly 46:4
brought 55:21
Brown 26:8
    55:21 76:17
building 59:7
bullshit 44:18
bunch 44:18
bus 61:24,25
busy 39:7

_____
C
_____

C 4:1 7:2
called 11:16,17
    30:19 44:18
    61:5 67:17,20
calling 64:6
    73:23
calls 21:22 33:1
    34:16 35:9
    40:1 49:13
    50:1 51:8
Cambell 4:9
Campbell 6:8
    18:17
candid 70:13
Canon 73:17
Canons 74:4,6
car 59:8
care 65:7
career 10:5
    32:19 63:7
    72:1 73:21
    75:5
careful 72:11
Carney 4:4
carry 26:11,11,14
Carter 4:3
case 9:1,3 13:6
    14:5,24 15:3,4
    15:5 16:16 18:5
    18:11,16,19,22

19:15,21 20:20
    21:8,18 22:2
    22:14 23:20
    23:22 24:6,12
    24:17 25:2,11
    25:19 26:20
    27:17 30:14,23
    34:4 35:25
    36:10 40:5,16
    41:6,21 43:11
    44:4,9,11 45:4
    45:18 46:11
    47:10 48:4
    59:14 68:25
    71:11 73:13
    75:17 77:5
    82:12
case-by-case
    28:1
cases 8:20
    24:25 26:17
    33:25 34:1,2
    36:16,23,24
    40:18 41:12
    47:6,21,24
    48:1,6,21,23
    48:24 49:1
    57:22 58:1,4,6
    77:16,17
cast 58:25
cause 1:7 3:5,17
    19:11 65:8
caused 50:6
causes 11:22
Cc 82:22
CCR 1:18 3:15
    4:22 5:5 81:3
    82:21
cells 68:22
    76:15
center 6:21
    30:14
certain 3:16
    16:18,20 17:15
    17:19 28:14
    29:7 35:22
    55:10,11 56:3

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 86 of 100

certainly 14:16
24:13 32:7
36:14 38:10
40:3 72:14
CERTIFICATE
81:1
Certified 3:15
5:10 81:16
certify 81:4 83:3
chair 15:23
chambers
67:24
chance 20:18
27:11 30:22
35:2 41:18,20
74:22
change 84:9,11
84:13,15,17,19
84:21,23
changed 53:25
78:10
changes 71:18
71:21 74:11
82:14 83:5,6
84:6
character 12:9
charged 20:11
charitable 11:21
check 55:17
checked 19:20
27:6
child 31:3,13
33:7,10,11
40:6 41:7,7
42:1,6,15,18
43:2 57:8
58:5 59:5
75:18 77:17
children 62:3
children's 40:18
Chipps 17:9
Chloe 23:17
30:15
circuit 3:17 8:14
8:15,16,18,24
9:2,7,12 13:18
13:19 14:6

17:17 61:7
76:12,16
circumstance
36:1
City 3:17 4:17
82:6
civil 8:21 9:10,10
36:4,24 43:11
48:2,6,25
71:11
claim 22:15
57:14
claimed 57:16
62:2
claims 22:6,19
clarify 21:5,5
29:1 49:15
68:20 77:2,24
classes 11:2,5,7
11:8
clear 21:14 24:5
46:7 60:9
clerk 17:17,18
59:7
clerk's 55:17
59:2 60:19
clerks 14:23
17:13 37:21,24
38:2 47:3,4
59:4,10
clerks' 17:10
client 20:18
36:21 61:21
closed 24:22
25:3
closing 24:25
CM/DOUGLAS
83:16
coach 10:19
college 10:20
10:21,24
colleges 11:4
Collins 23:17
30:15
come 9:15,19
15:22 18:2
21:10 24:23

25:5 34:25
37:16 43:17
44:6 55:1
59:2 65:25
66:5 74:10
78:2
comes 9:2 12:7
36:16
coming 64:15
commenced 5:1
commission
15:24 69:4
70:8 73:8
74:11 75:4,13
75:17 83:14
Committee
15:10
common 58:2
complaint 15:8
15:14 73:1,4
complaints
72:20 73:6
75:3
complete 37:2
69:10
compliance
29:4
complied 35:24
computer 7:7
concern 65:6
69:8 71:13,16
71:19
concerned
16:24 32:6
57:8 60:16,18
60:18,19 63:18
71:5 73:18,19
concerns 60:3
71:14 72:17
73:8
concluded
44:15
conclusion 33:2
40:2 49:13
conclusive
70:21
conclusively

36:1 57:19
conditions
34:20
conduct 9:8
48:25 49:6
73:24
conducted
26:18 52:12
conducting
22:23 59:19
conflict 62:11
connected
76:14
connects 68:5
consent 5:19
40:6 70:7
consequence
65:11
consequences
64:25 65:9
70:18
consider 11:19
53:16
considerations
41:15
considered
31:10 34:4,13
34:14,24
40:19 41:7
43:3 67:6
70:14
considering
45:22
consult 17:11,18
consulted 14:10
contact 62:13
contacted 13:25
contemplated
54:6
contempt 37:6
38:12,18,21
39:6,15,18
43:10,25
44:24,25
45:14 46:8,9
46:11 56:15
57:12

contemptuou...
45:7
contested 78:5
context 72:8
77:10
continued 44:21
44:23,23,25
63:10
contradiction
66:16
controversy
30:15
conversation
14:23 16:5
21:7,12,13
63:11 67:1
69:9 70:20
conversations
17:23 18:8
convicted 20:12
Copies 79:21
copy 12:10 79:3
82:11,13
corny 74:17
correct 38:18
45:11 75:20
76:9 83:6,7
corrections
79:14 82:14
counsel 5:3,3
5:14,16,19,21
12:22 14:10
15:22 20:18
24:22 33:20
36:19 41:13,18
41:24 47:3
62:17,17 79:10
81:8,11
Counselor
52:14 70:14
county 6:21
8:10,15,17,18
9:22 10:17
19:10 24:8,14
47:18,20 61:8
65:8 66:2
68:1 78:2 83:2

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 87 of 100

83:11
couple 16:19
  17:11,20,20
  28:2 48:14
  78:15
course 27:23
  50:8 74:6
courses 11:10
court 1:1 3:1,15
  3:17 4:21 5:10
  9:4,7 21:11
  22:1,24 24:8
  24:14 25:10
  26:16 27:3,3
  27:12 29:2,5
  29:14,21 30:5
  30:7,9,11 31:8
  32:16 33:6
  38:5,11 40:17
  41:8,14 43:17
  43:20 44:20
  48:2 50:6,7
  51:9 55:16,19
  58:1,3,11,12
  59:11,19,22,25
  60:2,5 61:4,8
  61:9 62:11,24
  62:25 63:9,13
  63:16,17 64:12
  64:13,15 65:12
  65:18 66:1,8
  66:13,15,17,17
  66:19 69:8
  70:10,25 71:2
  71:7 72:14
  73:11,12 74:8
  74:19,21 77:10
  77:12,20,25
  81:16
courthouse
  6:20 7:1,2 17:1
  17:7
courtroom 7:2,3
  7:5 14:19 17:14
  22:23 23:14
  23:15 24:2,22
  24:25 25:3

26:6,9 30:19
  30:21,25 37:5
  44:8,16,17
  45:3 52:3,18
  52:19 53:1,4
  54:12 55:3,4
  56:16 58:17
  59:20 60:6,17
  61:3,6 63:3
  64:11 65:12
  66:24 68:2,3
  71:14 76:9,12
  76:13,13 78:24
courtrooms
  68:4 76:18
courts 30:1 46:2
  47:18
COVID 78:4
COVID-19 78:1
coy 16:12
created 11:25
crimes 20:11,12
criminal 8:21 9:1
  37:5 44:9
  46:8,11 48:1,21
  70:25
crisis 12:7
crowd 44:13
CSR 1:18 3:15
  4:22 5:5 81:3
  82:21
Cummins 17:12
currently 8:7
cursing 59:3,8
custody 36:16
  41:8 56:5
  77:17

_____ D _____
D 2:1
danger 42:2
dangerous
  58:9 59:24
Danny 17:25
date 23:6,23
  48:12 55:22
  56:14 82:17

84:4
day 3:11,13 17:14
  22:24 23:3,9
  25:8,11,14
  26:3,9 28:18
  30:17 33:24
  34:23 38:2,5
  39:6,6,22
  41:17,20 42:5
  42:15 43:14
  44:9 46:8
  50:6 52:17,21
  56:17 57:15,21
  57:21 58:11
  59:3 60:6
  61:8,9,10,11
  62:15,21 63:12
  63:20 64:21
  65:3 67:4,9,12
  67:23 70:20
  70:25 74:16
  83:10
days 14:16 57:21
  73:12 74:18
  76:10
deal 57:20
dealing 74:19
Dear 82:10
death 59:9
  62:5
Debbie 17:9
decision 32:16
  42:1 53:19
  62:9
decisions 74:20
declare 83:7
defendant 4:15
  69:18 71:2
Defendants 1:9
  3:8,20 4:9 5:3
  6:6
defender 60:24
  61:20 62:9,14
  64:14,21,24
  65:3 66:1,10,11
  67:5,21,23
  72:20 73:13

73:22
defender's 61:1
defenders
  60:22,25 61:3
  61:6 63:2
  64:5
definite 33:22
definitely 20:4
definition 38:9
delicate 24:23
DeLoach 4:4
demeanor 50:5
  58:24 71:16
  78:22
Dena 17:17
department
  13:22 17:24
  26:15,18 29:17
  43:7 54:22
  56:5 68:2
depend 76:24
depending
  28:9 34:22
depends 38:9
  77:5
depo 5:10
deponent 12:17
  84:6
deposed 79:6
deposes 6:13
deposition 1:14
  3:10 5:1,4 7:10
  12:15 14:9,14
  14:21,25
  22:22 46:4
  79:8,12,13
  80:3 81:5,10
  82:11 83:4,5,6
  84:5
depositions 7:9
  51:15
deputies 59:4
deputy 8:2
  14:18 26:5
  28:11
describe 59:1
described 16:5

25:3 47:19
desired 82:14
detail 16:13
  26:25
detained 22:15
  22:19 23:2,6
  25:24 26:2
  54:21 56:4,24
  68:13,23
detention 54:6
determine 43:1
  57:10 69:19
device 31:24
difference 8:23
  46:9,10
different 28:2,9
  28:17 40:10
  41:3 50:13
  54:2,14 65:8
  66:2,18,21
  72:9,10 78:3
differently 47:18
  77:20,25
difficult 35:14
  50:4 53:20
dignity 74:7
diluted 28:5
direct 46:8
directed 12:23
  25:6 46:5
  69:11,11
directing 56:21
direction 64:17
  81:8
directives 14:2
Discipline 15:11
discuss 47:4
discussed 18:11
  18:16,19,22
  20:19 47:6
discussion 31:1
discussions
  46:24
disobeying
  33:13
disobeys 33:14
disregard 33:19

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 88 of 100

disrespect
59:23 61:4
66:8
disrespectful
59:22
disrespectfully
62:22
District 1:1,1 3:1,1
21:25 22:1
Division 1:2 3:2
22:2
division's 40:18
divorce 36:16
36:23
docket 39:7
44:9 45:16
57:21 64:7
dockets 64:10
document
57:24
documents
14:11,12,15
doing 5:18
20:21 23:21
26:22 45:17
48:9,16 59:8
60:12 65:13
69:19 72:7
dollars 65:5
Don 6:18 17:8
donated 11:21
door 35:7 37:12
37:14
doors 76:14
doorway 37:11
doubt 45:24,25
Douglas 1:8,14
3:7,10,19 5:4
6:11,18 82:8,11
83:3,9,17 84:2
84:3
driving 71:2
drug 25:7,9,11
25:15,25 26:11
26:16,16,18,19
26:21,22,23
27:1,1,2,3,7,12

29:2,5,12,13
29:14,15,21,21
30:1,5,7,9,11
30:13,17 31:4,5
31:15,17 32:4,8
32:11,24 33:9
33:19 34:15,21
35:5 36:5,17
36:20,22,25
39:20,25
40:5 41:4,9,11
42:4,9,21 43:6
43:11 44:1,6
45:4 47:17,24
48:8,19 49:2
49:10,23
50:16 52:19
52:22 53:6
53:25 54:5
54:20 55:7,11
55:14,21 56:1
56:6,9 57:15
68:24 69:8,14
71:10,12 76:22
77:3,10,12
78:24
drugs 27:7 32:5
32:5 33:11
42:18 43:17
57:10 69:23
duly 81:5
Duncan 4:9 6:6
14:14,17 20:20
21:8 26:7,10
76:16
Duncan's 22:22
Dunn 28:14

**E**

E 2:1 4:1,1
e-mailed 12:22
earlier 12:22
25:3 57:7
early 32:18
echoey 35:20
effective 30:1
either 38:24

62:10 72:3
elected 8:18
17:17 18:24
20:5
election 19:25
20:1,2,3
Eleventh 4:23
82:1
Ellsworth 10:9
else's 47:14
emergency
30:16 59:6
78:11,13
emotions 33:25
58:2,7,12,13
58:16
employed 8:7
81:9,12
employee 81:11
employer 8:9,11
enclosed 82:11
82:12
Enclosures
82:21
encounter
23:12 53:15
endanger 71:4
ended 41:17
entered 50:16
53:11 66:25
78:12,14
entering 66:25
69:18 77:12
entities 49:5
entity 48:23
entry 45:16
erased 14:3
Eric 26:8 55:21
76:17
errata 82:12,14
82:16 84:1
escort 26:19
especially 32:2
40:6,17 79:6
essence 62:21
essentially 31:7
44:12 68:3

72:21 73:14
estimate 37:19
et 1:5,8 3:4,7,19
3:19 82:8,8
83:17,17 84:3
84:3
Ethics 73:18
74:4,6
etrans 79:22,23
80:1
evaluate 78:6
events 15:3
18:16,19,22
67:22
everyone's
60:18
evidence 24:24
exact 17:23
31:19 40:11
48:12
exactly 29:10
46:16 62:8
exaggerated
44:14
examination
2:3 5:11 6:14
examined 3:11
6:12
example 9:1,9
32:19 34:3
43:22 69:13
69:17
exclaimed
44:17
Excuse 50:9
Executed 83:10
exhibited 54:11
exhibiting 70:2
exhibits 2:10
expect 35:24
41:22,23
73:12
expecting
72:23
expensive
27:23
experience 7:9

46:17 58:6
expired 20:5
Expires 83:14
explain 38:17
56:23
explained 41:17
explaining
38:21
explanation
15:13
express 63:7
63:25 73:7,8
expressed 10:2
10:4 64:22
71:16
expresses 41:5
expressly 5:7
extended 31:5
60:21
extends 68:6
extent 33:15
49:25
extremely 71:8

**F**

face 37:16 39:1
facing 10:9
fact 7:12 38:4,8
39:11 45:21
53:17 64:20
factor 45:6,15
45:18,23
factored 45:17
facts 20:19
fair 7:10
fairly 76:4
false 27:17
familiar 68:9
family 15:16
16:24,25 17:4
17:7 26:17 31:5
33:13 37:18
feared 63:13
February 1:15
3:11 82:11
83:16 84:4

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 89 of 100

federal 12:23
    29:5
fee 49:1
feedback 35:18
feel 21:6,12
    60:5,9 70:11
    73:24 76:5
feet 37:19,20
felony 48:24
    69:24
felt 45:6 47:9
    70:15,16 76:4
figures 11:25
filed 13:11 15:8
    21:20,25
    72:21 73:2,4
    75:4
files 73:5
filing 82:16
finally 54:4
financially 81:12
find 56:13 82:11
finding 57:11
fine 27:23 35:2
    36:21 50:6
    61:18 65:10,15
    66:3
fire 62:5
first 7:19 16:15
    34:23 40:19
    54:3 61:22
    63:15 68:4
    71:24
FISHER 4:11
five 13:1 36:12
    36:15,15,23
    39:15
fix 21:4 61:16
flawless 58:15
Fleming 4:16
    6:3 14:10
    20:25 21:21
    22:7 29:23
    33:1 34:16
    35:8,15 40:1
    49:12,24 50:3
    51:17 61:13,17

65:21 68:14
    76:25 77:22
    79:22 82:5,10
    83:15
Fleming's
    79:25
floor 68:4,5
focus 23:3
folks 73:8 75:17
follow 77:15
followed 59:7
following 84:6
foregoing 81:5
    83:4,7
forgot 38:23
form 20:25 21:3
    21:21 22:7
    29:23 32:15
    33:1 34:16
    35:8 40:1
    49:12 65:21
    68:14 76:25
    77:22 83:5
formal 19:21
forth 44:14
    76:18
foster 40:20
found 64:22
Foundation 4:6
Fox 17:25 76:21
free 23:8 33:19
    34:6,7,10,13,14
    34:20 35:5,6
    40:15 43:8
    70:11
freeze 62:5
freezing 62:6
Frequently
    58:19
friend 67:6
friends 15:16
    17:2,4,7
frightening
    37:22,23
front 63:20
fruitful 73:21
full 39:21 41:19

60:6 79:24
further 5:17
    57:6 74:1
    81:10

——————
        G
——————
GAL 32:2
gas 61:24 62:4
Gaston 1:8,14
    3:7,10,19 4:15
    5:4 6:3,11,16
    6:18 17:9 82:8
    82:11 83:3,9
    83:16,17 84:2
    84:3
gather 56:19
general 22:13
    22:14 24:10
general's 4:16
    13:25 82:5
generally 24:15
gentleman 44:9
    44:15
gentleman's
    62:16
gestures 39:2
getting 72:13
Gill 4:3
Gillian 4:5
give 15:12 18:1
    20:18 33:22
    34:1 36:13
    37:9 40:9
    41:18,25 44:11
    52:25 62:14
given 27:11 36:3
    52:23 79:25
Glenda 6:7
go 7:17 9:6
    16:13 23:9
    34:6,7,10,13
    36:10 50:2
    55:16 56:12,21
    56:25 57:4
    61:19 62:3
    63:3 78:17,20
    79:9

goal 39:7
God 64:12,13
going 14:24
    15:17 16:18,19
    27:22 32:14
    33:8 37:19
    38:18 41:18
    44:24 46:2
    46:20 53:15
    59:18 60:10,12
    60:15 62:10
    64:22 65:25
    66:3 71:3 72:8
    76:8 77:13
good 7:7 29:21
    29:21 35:2
    42:1 44:11
    74:15
gotten 27:2
government
    11:8,9
governor 9:16
    9:17,20,24
grand 9:6
granddaughter
    23:18,18 77:18
grandparents
    30:19 33:23
great 46:6
ground 7:10
    68:6
Grove 49:3
guardian 25:18
    31:2 41:23
guardianship
    23:16 24:18
    30:16 42:15
    59:6 78:14
guardianships
    78:11
guess 16:19
    50:12
guilty 69:18

——————
        H
——————
Hale 6:2 21:24
    22:16 23:2,5

23:13,19 25:6
    28:25 30:11
    31:10,12,14
    32:11,24 35:5
    37:2 39:21
    40:9,10 41:1,2
    54:16 55:2
    56:20 57:14
    78:23
hallway 59:6
hand 39:2
handle 65:15
handled 66:20
    69:7 73:11,12
handling 44:11
    67:7 72:23
happen 39:14
    51:14 53:19
    74:21 77:7
happened 15:4
    15:7 16:3,4,6
    17:14,22 18:25
    20:9 21:9
    22:24,25
    38:6 43:23
    50:12 51:19
    57:25 59:15
    61:11 62:8
happening 31:9
    47:19 57:18
    57:20 59:21
happens 36:22
    43:16 58:3
happy 21:3
hard 35:12
    57:24 74:18
harshly 72:25
head 17:25
    28:10 44:14
    49:4 76:15,19
heading 37:13
hear 9:3 30:23
    35:11,15 41:22
    41:23 61:15
    71:25 72:7
heard 15:18
    19:22 30:22

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 90 of 100

41:19 57:16
hearing 9:5,6
12:23 23:23
23:23 24:17
26:6 30:17
31:21 35:13
41:16,17,19,20
41:22 42:15
58:22 60:21
60:22 62:1
72:9 78:8,12
78:13
hearings 9:9
78:5,7
heart 12:9 74:16
held 37:5 38:12
39:14,18 43:10
44:25 46:7,10
56:15 61:23
68:13
help 26:10,11,14
47:10 67:7
74:22
helping 79:9
high 33:25 58:2
58:12,13,16
59:15 60:2
highest 58:7
hired 17:21
historical 11:25
hold 38:18
44:24
holding 37:12
38:21 39:8
76:14
home 9:22
23:9 30:17
31:4 32:4
40:20 57:4
homeless 62:4
Honor 51:22
honorable
64:13
hope 47:16
hopefully 73:21
hours 3:12
house 40:12

Houston 6:20
11:2
hundred 36:13
36:14 77:6
hypothetical
50:1

_____ I _____
idea 50:7 52:13
identity 12:7
illegal 32:5,9
Illinois 3:15
imagine 56:1
immediately
37:5 59:16
important 12:8
12:25 46:2
72:12
impress 64:3,4
improper 50:1
in-depth 21:12
in-person 16:4
inappropriate
63:5 66:15
incident 17:14
60:23 72:19
incidents 18:11
20:19
include 17:16
39:16
included 27:12
including 8:20
9:3 10:19
22:21 29:5
32:2 38:14
39:1,2 50:5
65:25 73:22
incredibly
73:23
indicate 5:21
82:14
indicated 13:23
84:6
indication 32:8
indictment 9:6
indigent 62:1
individual 44:3

46:12
individuals 16:6
16:8 18:8
26:20 28:9
indulging 79:10
influence 43:17
43:19 45:5
69:23 70:2
71:8
information
41:14,25 47:15
49:20 50:11,11
50:14 51:1
52:7,16 78:22
inherent 40:4
initial 8:19 9:3,4
initially 16:2
55:3 77:14
initials 75:18
injuries 22:16
inquiring 23:23
inside 33:14
intellectual 11:18
intend 26:2
53:7,9 54:8,9
54:16 72:14
intended 54:15
65:4
intending 42:22
intent 42:3
intention 34:23
41:6,10,13
42:14
interest 10:2,5
24:11 57:11
interested
23:16 25:10
81:13
interesting 12:11
19:8 72:4
interrogatories
14:13
interrupt 44:23
50:9 60:4
intervening
19:25
interviewed

69:3
intoxicated 71:8
involuntarily
68:13
involve 7:23
involved 24:5
30:21 36:2
involving 23:17
34:1 75:18
77:17
Isacks 4:5
issue 15:3 31:18
issues 13:6
55:17

_____ J _____
Jack 14:10 35:11
83:15
jack.fleming@...
4:18
jail 22:25 23:11
26:16,20 27:4
27:15 39:8
43:25 50:7
51:10,20 53:1
68:5
James 4:5 6:6,7
18:20,23 19:2
19:13,18 28:16
Jamie 1:18 3:14
4:22 5:5,9
76:21 79:10
81:3 82:21
January 9:14
12:15
Jean 17:8
Jefferson 4:17
82:6
Jennifer 6:7
18:14
Jim 15:21,23,25
16:10
Jo 1:18 3:14
4:22 5:5 81:3
82:21
job 8:12 9:15
11:20 74:17,18

jobs 7:22,25
8:4 10:17
John 4:16 14:7
82:5
join 21:1 22:9
50:3 51:17
68:16
joining 68:18
joy 74:16
judge 6:3 8:10
8:14,16,17,19
8:24,24,25
9:2,7,13,21
10:3,8,17,18
10:22 11:11
13:18,19 14:6
15:23 16:1,10
29:2 32:14
36:5 46:4,17
47:15 51:9
59:20 65:18
68:19 70:8,9
75:5 76:6,12
76:16
judge's 7:3 9:12
judges 8:18
10:12 15:11
47:21 63:20
73:11,25 74:4
74:7
judgment 32:17
32:18,21 53:15
judicial 8:15
15:20 32:18
69:4 72:1 73:7
73:17 74:10
75:4,13,16
Julee 17:9
jumping 31:6
June 23:4,13,24
25:2,5 26:6
37:3 49:8,22
52:7 55:1
58:22 71:14
76:8,23
jurisdiction 8:19
9:11,12

ALARIS LITIGATION SERVICES
www.alaris.us    Phone: 1.800.280.3376    Fax: 314.644.1334
Case 6:19-cv-03346-RK  Document 141-4  Filed 04/30/21  Page 91 of 100

jury 9:6
justice 6:21
  72:14
juvenile 8:21
  35:25 40:17

_____

**K**

Kayla 4:4
Kayser 4:11 6:5
  6:5 20:13 21:1
  22:9 35:11,17
  49:25 51:6,8
  51:13 68:16,18
  79:20 82:22
KC 75:18
keep 21:16
keeping 42:6
kept 43:7,7
kidnapping
  59:5
kids 11:19 31:15
  34:1 40:12
kind 50:21 64:7
  73:10 76:17
Kinder 1:18 3:14
  4:22 5:5,9
  81:3 82:21
knew 29:9 67:5
know 7:9 13:2
  15:19 16:20
  17:3 19:5,7,23
  20:8 22:8,24
  23:1,10,15
  25:21 26:23
  26:25 27:4,6
  27:8,9,16,19
  28:6,8,10,17
  28:20,22
  29:9,12,24
  31:8,20,22
  33:3 39:5
  43:5,7 44:3,13
  45:19 46:15
  48:11,12,13,19
  49:4 50:5,19
  51:1,19,23
  52:4,16,16,17

52:18,20 53:1
53:22 54:18
54:19 56:17
57:3,5 59:14
60:1 64:1,6
68:12,13,21
70:3,8,19 71:3
72:5,8,13 73:4
73:5,10 75:7
75:10,22,25
75:25 77:5
79:12,15
knowledge
  22:18,23 23:4
  49:21 50:14

_____

**L**

lady 30:15
language 32:13
  65:5
late 66:1,5
law 7:15,17,20
  7:23,23 8:4
  26:17 73:22
lawful 6:12
lawfully 39:8
lawsuit 13:11
  20:24 21:19
  21:25 22:6,12
lawyer 18:5
layout 68:9
lead 9:4
learn 55:9
  73:23 74:25
  75:1
learning 55:7,10
  55:14
leave 34:14,20
  35:6 37:2
  43:8 59:7 71:4
leaving 37:4
led 37:11
leeway 34:1
left 17:12,20
  39:11 55:2
  63:1,2 70:21

78:24
leg 37:14
legal 15:21 19:14
  24:25 32:5
  33:2 39:17
  40:2 49:13
legalities 19:11
legislature
  78:10
let's 23:3 55:13
letter 13:6,17,19
letting 65:25
level 29:5 68:6
  71:23 74:3,3
Lewis 17:10
liberty 37:2
  39:21,22 60:5
licensed 7:12,14
  7:20
life 72:5
light 58:25
Linda 18:17
Lindsey 19:17
Line 84:8,10,12
  84:14,16,18,20
  84:22
lines 31:19 40:12
list 17:3 60:3
listed 23:25
listened 31:24
  31:25 58:21
  64:1 67:8
  71:24
litem 25:18 31:2
  41:23
litigant 32:21
litigation 4:22
  8:20 82:1,16
little 7:18 8:21
  12:6,24 35:17
  40:10 41:2
  42:6 60:7,14
  74:16,24
local 9:7
locally 11:1,1
long 7:14 9:13
  16:21 18:3

28:10 31:25
46:16 48:11
73:21
longer 19:13
  32:24 43:8
look 36:10 37:16
  39:1,1 55:22
  62:7
looked 16:20
  39:4
looking 28:6
  37:12
lost 28:16
lot 18:1 20:10
  27:9 34:1
  36:16 61:25
  70:18
Lots 78:7
louder 60:7
loudly 44:17,21
Louis 3:18 4:7
  4:12,23 82:2
love 74:22,22
Lowry 46:4,17
  47:15
lunge 37:10
  38:14,15,24
lunged 37:4
lunging 37:8
  38:12

_____

**M**

main 39:7
  43:22 62:13
  69:7 71:13
  73:10
making 12:19
  28:24 44:17
  64:25 65:13
  66:19
mandatory 10:9
  10:11
manner 5:20
  63:19
March 82:4
Marci 17:17
marked 2:10

Market 4:12
Matt 9:18
matter 24:10
  76:11 82:18
matters 8:20
  9:4,10 36:4
  48:2
mean 26:13
  28:8 37:10
  59:1 61:6,7
means 19:14
meant 56:24
meet 15:23
meeting 16:4
  74:11 75:16
Melissa 28:14
members 17:16
  17:24
memo 32:19
mention 12:14
  38:23
mentioned
  15:16 58:1
  69:3 71:12 73:1
  76:19
mic 35:19
microphone
  72:10
Mildred 17:13
mind 33:15
  59:18 60:10
  74:24
mindful 71:22
minds 12:3
mine 29:17
minutes 13:1
  39:15 59:10
minutes-ish
  46:18
misdemeanor
  48:23 69:23
Missouri 1:1 3:1
  3:14,16,18 4:6
  4:16 6:20 7:15
  7:19 8:3,11,13
  8:15 10:12
  15:12 22:1

_____

ALARIS LITIGATION SERVICES
www.alaris.us    Phone: 1.800.280.3376    Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 92 of 100

82:2,5
mistake 35:25
misunderstood 66:22
mitigating 45:6
45:15,23
MO 4:7,12,17,23 82:6
Molly 4:4
moment 74:15
moments 79:7
Monday 47:8
monitor 7:7
months 18:5,7,9 19:23
Morris 4:6
Mosley 17:17
motion 36:17
48:2,3 62:17
71:11 77:8 78:8
Mountain 11:2 49:3
move 65:7 66:2
moved 12:16
multi-panel 27:1 29:25

———————
**N**
N 2:1 4:1
name 5:22,25
6:16 15:11
28:13,14
76:20 83:6
named 30:15
names 17:6,8,9
17:10 49:4
Nancy 15:23
narrative 21:22
nature 22:14 24:23
necessarily 39:17
necessary 25:1 83:5
need 13:1 17:10
20:17 32:21
50:12 55:18,18

55:19
needed 13:22
26:18 42:18
45:10 47:10
59:14 79:11
Neil 17:17
neither 81:8
never 32:19
39:14 50:6
58:13 61:5 72:2
new 19:10,12
news 16:16,22
night 38:3
noble 73:23
Norma 1:5 3:4
3:18 6:1 21:24
23:1,5,12 25:6
28:24 30:7
32:10,23 35:4
37:1 39:20,25
40:23,25
49:10,22 51:4
52:7 55:2,13
55:23 57:13
78:23 82:8
83:17 84:3
Norma's 55:11
North 4:23 82:1
notarized 82:16
notary 5:5 79:14
82:14 83:13
notice 12:20
noticed 12:15 37:7
number 29:3
44:22 50:5
53:19 65:24
65:24 68:22
numerous 47:7
47:21 62:20

———————
**O**
o'clock 3:12,13
oath 5:18 37:10 46:22
object 20:13,18

20:25 21:21
22:7 29:23
33:1,20 34:16
35:8 40:1
49:12,25 51:6
65:21 68:14
76:25 77:22
objecting 35:12
objection 22:8
22:9 34:17
40:2 49:13,24
51:13 61:14,16
68:16,19 77:1
77:23
objections 5:20
21:18 51:11
observation 23:7
observations 50:18
observe 24:7,12
observed 51:1
observer 46:12
observing 24:2
45:3 72:6
occasion 72:20
occasionally 43:16
October 49:7
odd 71:25
offended 65:4
offending 65:2
offered 79:5
office 4:16 6:24
13:25 17:16,22
47:3,5 48:7,9
48:22,24,25
49:1 55:17
59:3 61:1
62:13,14 68:4
68:5,7,10
82:5
officer 52:11 53:14
officers 50:8
official 25:10 75:14

officially 19:9
oftentimes 69:17
okay 7:4,25
9:23 11:15
13:15 15:25
16:8,11 18:4
19:5,16,18
20:23 21:2
24:7 26:13
28:7 30:4
34:5,7 35:23
36:7 43:15,21
45:2,9,19 46:1
47:14,22
48:16 52:6,10
52:15 53:2,5
54:7 55:24
56:23 59:1
60:14 61:10,18
64:16 65:17
67:3 68:18,20
69:2 71:12
73:7 76:19,22
77:2 78:15,21
old 59:25
Olive 4:7
once 32:23
33:18,18 34:8
35:4 52:5
62:25
ones 17:19,22
47:25 49:3
58:6,7 76:10
open 24:15,20
opening 64:12
66:15,17
opens 65:12
66:13
opportunity
37:9 79:15
opposing 41:24
option 66:24
options 41:15
66:21
oral 38:24,25
77:14

orally 76:24
order 25:10,24
28:24 32:12
32:15,17,21
33:13,14,16,19
36:4 38:20
39:4,6,8,17,24
40:4 41:4,8
43:25 45:17
45:18,20
48:20 49:23
50:16 51:2,3
52:22 53:7,9
53:12,24,25
54:5 59:5,25
67:22 76:24
77:3,4,9
79:25
ordered 32:23
33:18 35:4
43:6 45:1
47:15 49:11
ordering 42:21
45:2 76:22
orderly 21:17
orders 35:24
77:11,15
ordinarily 60:7
original 82:12
Originally 12:16
outcome 81:13
outside 8:4 11:11
50:20 66:24
outward 12:8
oversaw 29:5
oversees 15:11
oversight 15:9

———————
**P**
P 4:1,1
p.m 5:1 80:3
P.O 4:17 82:6
page 2:2 79:24
82:12,14,16
83:15 84:8,10
84:12,14,16,18
84:20,22

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 93 of 100

paid 39:9 65:5
Pamela 6:8
  18:12
pandemic 78:1
parent 58:5
parents 30:18
  43:14,18
parents' 17:8
parking 61:25
parole 48:24
part 39:16 45:3
  48:18
participating
  5:11 64:6
particular 18:3
  60:24 61:9
  64:24 65:14
  74:13 77:5
parties 3:14
  23:20,25
  24:21 36:16
  48:1,5 81:9,12
party 5:18 36:17
  36:18,20 40:5
  41:6
party's 65:19
passing 21:7
patience 46:18
Patrick 4:16
  82:5
PATTERSON
  4:11
penalty 83:7
pending 3:17
  47:6
people 10:5 12:1
  12:2 15:6,15
  16:25 17:3,6,7
  17:12 24:7,10
  24:13 27:6,24
  28:17 29:14,18
  30:25 36:4
  39:14 43:2,6
  43:17 54:20
  57:21 59:19
  59:24 60:4,6
  60:17 64:4

68:22 69:8
  69:20 71:4
  72:7,13 74:8
  74:20,22 76:3
  79:7
percent 77:6
perjury 83:7
permissible
  44:19
person 5:18
  27:5 39:18
  50:18 71:2
  78:6,6
personal 22:23
  23:4,7 49:21
  50:11,25 74:2
personnel 27:4
  29:13
persons 25:10
  29:13
perspective
  59:21 70:14
phone 64:21
  67:5 82:2
physically 5:15
  49:10 77:25
piece 11:18
pkayser@fpss...
  4:13
place 10:7 29:7
  42:19
placed 42:2
placement 31:3
  31:10,13 34:5
  34:24 40:6,13
  40:19,21 41:7
  41:15 43:3,3
  57:11
places 28:2
  49:5
Plains 49:2
Plaintiffs 1:6,14
  3:5,19 4:2 5:3
  6:1,13
planning 42:8
plea 69:18,23
  69:24,25

pleadings 37:8
please 5:21 13:2
  21:17 47:17
  82:11,13,16
podium 44:19
  69:21
point 12:2 19:1
  19:12,23
  34:25 37:20
  41:9 45:6,8
  46:13 57:12
  62:16,23 64:3
  64:4 70:15
  76:5
points 62:21
police 50:8
  53:14
policy 30:23
  54:19,23,24
political 11:10
poor 58:25
population
  24:11
Portia 4:11 6:5
  68:17 82:22
portion 32:2
portions 32:1
portray 72:15
posed 57:5
position 18:25
  62:15
positive 27:11,17
  29:16 43:11,18
  44:1 45:11,21
  56:2
possible 19:2
  20:21,22 21:17
  57:4 67:25
  77:13
possibly 18:24
  41:24
Post-Dispatch
  15:5
postponing
  41:19
potential 63:8
  70:18

power 40:4
  41:8
practice 7:14,20
  7:23 73:22
practiced 63:20
prayer 64:7,10
pre-docket
  64:6
prefer 65:7
preferably
  32:17
preliminary 9:5
  9:5 78:7
preparation
  14:8
prescription
  27:7,12,13
  32:8 55:22
  56:14
presence
  50:20 52:5
present 5:15
  51:9 77:8
presented
  23:22
preservation
  13:5,17
preside 47:21
  77:16
presiding 13:19
  14:6
press 15:4
pretty 21:12
  24:24 50:4
  62:12 74:18,21
  79:9
previous 21:6
previously 10:2
primarily 10:20
  15:17 18:7
primary 28:11
  49:3
prior 82:16
private 48:22
  49:1
probably 17:25
  34:5 36:15,22

36:23 46:9
  71:25 74:14
  77:10 79:12
probate 8:21
  77:16
probation
  48:22,24 49:1
probationers
  48:21
problem 50:6
  50:19 52:25
  65:14 66:18,19
  67:24 70:5
problematic
  69:12
procedure 27:8
procedures
  26:23
proceeded
  44:20
proceeding
  5:16,20 23:17
proceedings
  24:8,14
proceeds 11:20
  11:21
process 62:22
produced 3:11
  6:12
promise 79:3
promised 79:4
promising 63:7
prompt 12:25
property 61:25
proposed 77:9
prosecutors
  63:3
protocol 27:19
  29:13
protocols 26:23
proudest 79:7
proven 30:1
provide 17:5
  27:12 41:14
provided 16:3
public 5:5 24:15
  24:20 60:21

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 94 of 100

60:24,24 61:1
61:3,6,20
62:9,13 63:1,2
64:5,14,21,24
65:3 66:1,10
66:10 67:21
67:23 72:20
73:13,22
82:15 83:13
published 11:16
pulling 71:1
punish 57:9
punishing 42:8
42:10,14
punitive 42:7
42:22,24
purpose 25:25
33:6 40:7
42:4,5,8,22
42:25 43:1
57:9
purposefully
66:14
purposes 11:24
30:5
put 12:3 43:25
45:25

_____
Q
_____
qualifications
28:19 29:7,11
29:12
qualified 29:9
29:10
question 14:1
19:8 21:4,16
21:23 22:10
25:19,20 27:9
30:2 35:9
42:20 50:17
50:23,25 51:5
51:16,18,19,23
52:15 53:7
54:2,3,7 57:5
66:18,22
69:16,22
70:21,25 71:9

76:11
questions 2:4
6:15 12:14 47:7
50:21 55:18
57:3 69:24
79:6,8,20
quickly 60:22
quiet 35:19
quit 48:9
quite 14:24 21:9
27:9 48:10
quo 19:14

_____
R
_____
R 4:1
Rahmeyer
15:23 16:1,10
70:9
raise 58:14,17
71:22
raised 27:10
63:12 71:13,15
72:18
raising 60:20
67:11
ran 20:2 28:16
rare 43:23
re-evaluate
74:15
reach 17:2
read 15:18 22:21
28:7 82:13
83:4 84:8,10
84:12,14,16,18
84:20,22
reading 73:16
84:5
ready 78:16
realize 63:8
really 12:8 14:4
18:7 19:15
32:20 33:21
35:19,19 57:9
57:11 60:8
67:2,22 70:11
70:14,20 79:8
reason 27:10

37:1 38:23
39:20,23 42:3
52:4 53:11,24
57:7 58:9
74:2,23 84:9
84:11,13,15,17
84:19,21,23
reasonable
50:15 51:2,3
52:2,8,12,21
53:3,12,16
54:1 57:1
reasonably
53:17,22
reasons 32:16
39:18 50:5
Reaves 4:9 6:7
18:20
recall 17:2,23
18:9 19:1 20:21
21:10,12 26:5
26:10 31:18
32:1 40:11
45:17,24 48:4
55:5,6,6,10
56:2 57:18,24
60:20 61:2,2
64:5,8 67:11
67:12,22 74:13
receive 13:5
40:20
received 13:8,13
13:19 30:16
58:8
receiving 13:16
13:16 36:20
recess 12:24
13:1 46:3 79:11
recollection
25:14,18 31:2
44:10 55:20
56:22 62:8
67:4,15 73:9
76:11
reconvene
47:15
record 5:22

6:17 12:15
25:22,23
31:21,23 38:17
46:21 57:23
63:4,4 73:17
78:18,20,21
80:1
recording 31:21
58:21 64:2
67:8 71:17,25
recordings
71:23
recuse 75:23
recused 75:17
reduce 45:13
reduced 45:16
81:7
reference 37:8
referring 16:9
32:5
reflectiveness
79:2
refused 64:14
66:5
refusing 62:21
regard 58:15
regarding 41:15
60:21 71:13
78:11
regular 54:20
rejected 66:23
related 13:6
47:10 81:9
relation 68:2
relative 40:19
81:11
relatives 57:8
released 56:16
62:18
relevance 20:13
61:13,17 65:22
relied 30:2
religion 65:20
religious 65:1,2
65:19 66:16
remain 56:15
63:3

remained 76:6
remarks 38:24
38:25
remember 10:21
11:8 13:8,10,13
16:14,15,17,17
16:22 17:6,21
18:2,8 19:3
55:11,14,15,25
57:19,22 67:1
67:2,18 76:1
REMOTE 1:14
3:10
remotely 3:14
5:11,12,16,18
removal 15:10
19:21
removed 18:25
19:5,7,9,14
render 83:5
replied 65:10
reporter 3:16
4:21 5:6,9,10
79:21 81:1,16
reporting 5:16
represent 62:10
representative
8:1
representatives
69:4
represented
62:16
representing
33:10
request 9:1
30:16 31:11
40:11 70:12
requested
27:21 31:12
48:5 71:10
require 74:7
required 13:24
29:4 74:3
78:13
requires 73:18
requiring 13:21
research 69:10

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 95 of 100

reserved 5:7
respect 61:4
    66:19
respectful 46:2
    63:9,16 74:7
respectfully
    72:13
responding
    72:10
response 13:16
    21:22 49:23
    50:15 71:18
responses
    22:21 79:2
responsibility
    40:17,18 59:18
    73:25
responsive
    79:2
rest 17:22 65:12
restrain 49:10
    49:17,17,22
    50:15 51:3
    52:4,8,13,22
    53:3,12
restrained 52:2
    53:8,10 54:8
    54:9,16,21
    56:24
restraining 54:1
result 36:19
    42:9 45:14
    51:2,3 56:6,8
    56:9 74:12
results 28:4,8
    41:11,24 42:22
    42:24 55:7
retirement 10:10
    10:11 15:10
return 82:16
returned 55:3
review 14:12,15
    15:20 79:13,17
reviewed 14:11
    14:13
rewarding 73:21
right 7:8 8:4

12:13,19,20
13:3,4 15:10
19:15 20:3,6,8
21:18 23:20
32:16 35:21
38:20 42:17
43:4 46:15,20
48:17 60:20
70:15,17
76:20 77:24
79:13
ring 60:23
roadway 71:4
roam 76:18
Robert 20:20
Rock 7:18
Rogers 1:5 3:4
    3:18 6:2,2
    21:24,24 23:1
    23:2,5,5,12,12
    25:6,6 28:25
    28:25 30:7,9
    31:7 32:10,10
    32:23,24 35:4
    35:4 37:1,1,4
    38:1 39:19,20
    39:25 40:9
    40:22,23 41:1
    41:1,4,17 49:10
    49:22 51:4
    52:7,17 54:8
    55:2,2 56:14
    57:13,14 59:2
    69:7 76:11
    78:23,23 82:8
    83:17 84:3
Rogers' 23:18
    33:15 58:10
    77:17
Rolla 49:2
room 26:5
roster 17:11,18
Rothert 2:4 4:3
    5:25,25 6:15
    20:15 21:2,15
    21:23 22:10
    30:4 33:3

34:19 35:14,16
35:20,23
40:8 46:15,20
49:19 50:9
51:11,14,16,21
61:15,18 66:4
68:20 77:2,24
78:15,20,21
79:1,5,18,23
82:22
rule 9:8 48:3
rules 7:10
run 29:18 33:25
    58:2,7,12,13
    58:16

_____

**S**

S 4:1
safe 42:6,19
    43:2,3 57:11
    59:20
safety 60:2,19
    60:19 63:14
    74:20
sake 73:20
same-day 12:1
sat 71:24 72:2
save 64:13,13
saved 13:24
saw 51:23 52:3
    52:6,17,18,21
    53:2 71:2
saying 31:12
    34:12 58:4
    63:4
SAYLER 4:11
says 6:13 36:20
scared 59:9
scene 65:13
school 7:17
    61:25
science 11:10
Scott 19:17 20:2
screaming
    39:15
screens 27:3
seat 7:3

seated 7:2
second 43:5
    68:5
see 27:6 43:4
    55:17 59:21
    72:7
seeking 40:5,13
send 53:18
sense 22:13
    37:23
sent 43:5 54:20
seriously 60:1
served 14:18
    21:8 23:21
services 4:22
    48:22 49:2
    82:1,16
set 11:20 42:15
severe 63:21
shaking 44:13
Sharon 6:8
Sheet 84:1
sheets 82:12,14
    82:16
Shelly 17:12
sheriff 14:18
    18:24 19:3,10
    19:12,13,16,19
    20:5,9 26:22
    28:16 49:17
sheriff's 17:24
    26:15,18 29:17
    43:7 48:7,9
    54:21 56:5
    59:4 68:2,5,7
    68:10
shocked 67:15
short 46:19
    78:19
shorthand 5:4,5
Shortly 75:16
show 24:12
showed 25:9
    28:5 31:20
    45:16 55:22
    56:1 66:8
shown 56:1

shut 60:8
side 16:2,13
    25:19 30:19
    31:22
sides 37:15
Sigman 4:9 6:7
    18:23 19:18
    20:4
sign 77:9 79:14
    82:14
signature 5:7
    79:15 82:12,14
    82:16 83:15
    84:25
signed 55:18
    77:10
significant 32:1
    61:23
signs 70:2
Sillaman 17:18
similar 9:9
    55:15 64:11
    65:5 66:12
    69:15 76:23
Sincerely 82:19
sincerity 65:19
singing 12:1
sisters' 17:9
sits 66:14
sitting 43:19
    65:12
situation 36:3
    59:12 69:7
    74:25 76:23
six 18:5,7,9
Smith 4:11 15:21
    15:23,25 16:10
smoothly 79:9
softball 10:19
somebody 20:5
someone's
    68:12
somewhat
    24:13
soon 71:4
sorry 29:1 47:22
    49:8 51:7,8

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 96 of 100

61:15 68:17
sorts 8:20
sound 64:2
  74:17
sounded 29:8
  71:17 72:3
sounds 12:11
Southern 1:2
  3:2 22:1
Southwest
  10:25
speak 47:2,20
speaking 16:15
  16:22 17:6
  33:6 77:25
special 36:1
specifically
  56:20 57:23
  70:9
specified 32:7
speculate 51:22
  52:1
speculation
  34:17 35:9
  36:2 50:1 51:8
  51:24
speculative
  33:21
spoke 13:18
  15:19,21 17:24
  19:2
spoken 15:2
  18:4,6 59:13
sports 10:19
ss 83:1
St 3:18 4:7,12,23
  82:2
stand 60:4
  64:14 67:16,18
  67:21 69:20
standard 27:1
  32:13 54:24
  69:24
standing 70:10
stands 65:13
  66:14
Starry 44:5,6,8

69:13,15
stars 12:1
start 55:13 62:5
started 46:12
  64:9
state 3:16,18
  6:16 7:15,19
  8:1,2,2,10,12
  15:12 27:2
  30:2 39:17
  48:24 64:21
  65:3 66:1,10
  67:5 83:1
States 1:1 3:1
  21:25 64:13
stating 5:22
status 19:15,20
statutes 78:10
stay 31:15,16
  42:19
staying 31:18
  44:12 66:24
stealing 61:24
  62:4
step 19:22 70:7
stepped 20:8
steps 13:22 31:6
stipulate 5:23
  6:1,4,6
STIPULATED
  5:2
stipulation
  77:12
stomped 44:16
stood 31:8,14
  59:16 62:3
story 16:16,23
straight 9:7
Street 4:12,23
  82:1
Subject 22:8
  29:24 34:17
  35:9 40:2
  49:13 61:13
  65:22 68:15
  77:1,23
subscribe 83:6

subscribing
  84:5
substance 83:5
suffer 64:25
  65:9,11
suffered 22:16
suggested
  69:12
suggestion
  70:22
suit 9:10
Suite 4:7,12
summoning
  61:3
supervising
  48:23
supervisors
  27:2
suppose 48:3
supposed 27:13
  69:25,25 71:5
  71:6
Supreme 64:12
  66:17
sure 9:22 12:19
  13:20,24 14:1
  14:3 17:1,21
  19:15,24 21:6
  21:9,12,14
  24:9 27:5,8,11
  27:14 28:18,21
  28:23 29:3,6
  29:11 31:23
  33:10 39:5
  40:19 46:7
  59:15,19 60:3
  60:11 61:5
  62:12 66:19
  67:18 69:10,15
  72:15 76:2
surprise 9:25
  10:1
surprised 69:9
  72:22
swear 5:23
sworn 3:11 6:9
  6:12 81:6

system 63:17
──── T ────
take 12:24 13:1
  13:2,15 25:7,9
  27:23 32:20
  33:9 36:20
  36:22 46:16
  50:8 56:8,11
  65:7 69:5,25
taken 1:14 5:4
  5:10 13:22
  46:19 52:5
  57:6 58:5
  59:5 60:1
  63:21 75:13
  78:19 81:6,10
  82:11 84:4
talk 14:20 61:4
talked 17:15
  47:9 58:10
  67:23 76:14
talking 51:11
  61:8 65:17
  68:24
taught 10:20,21
  10:24 11:2,5,7
  11:9
taxing 74:21
technological
  78:1
tell 7:25 16:13
  17:5,19 20:23
  21:3,6 33:15
  37:9 47:17,22
  47:23 50:13
  61:10 62:7
  68:1
telling 34:8
  50:21 52:3
term 20:5
terms 5:23 6:1
test 25:7,9,25
  26:18,19 27:1,1
  27:20,22,22
  28:3,4 29:19
  29:25 30:3

32:12 33:9
  36:20,22,25
  40:5,7 41:4,9
  41:11,24 42:9
  43:11 44:1
  45:11 49:10
  52:11 55:7,11
  55:14,21 56:1
  56:6,9 68:24
  70:18 71:10
tested 25:11,15
  26:21 27:11
  29:15 30:13
  31:4,15,17
  32:24 33:19
  34:15,21 35:5
  36:5 39:25
  40:14 43:6
  44:7 45:1,4,21
  52:14,19 53:6
  69:14 70:5,8
  77:13 78:24
testimony
  22:22 24:24
  81:5,6
testing 26:11,16
  26:22,24 27:7
  27:16 29:13,13
  29:21 36:17
  39:20 42:4
  44:1 47:17
  49:2,23 50:16
  52:22 53:25
  54:5,21 69:8
  71:13 76:22
  77:3
tests 28:7 42:21
  43:18 47:25
  48:8,20,22
  49:6 57:5,15
Texas 6:20 8:10
  8:14 10:17
  19:10 24:8,14
  47:18,20 68:1
  78:2
thank 12:12
  21:15 51:15

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 97 of 100

54:7,10 68:19
71:12 79:10,18
79:20 82:18
**Thanks** 35:17
**thereon** 83:6
**thereto** 81:12
84:5
**thing** 39:2 58:2
59:8 72:6
79:7
**things** 9:9,12
16:5 21:11
24:23 28:5
32:3 47:10
53:19 55:18
59:18 73:10,14
73:15,18,19
74:5,20 78:3
78:4,8,16
**think** 8:6 13:14
14:22 15:16
17:11 18:13
19:18 20:2,3
21:10 26:8
27:14,15 28:12
28:15 32:13
34:5,9,18 35:1
38:25 39:23
41:5,12 45:17
45:18 46:1,6
46:16 50:4
55:20 57:17
58:4,24 60:11
62:2,11 65:17
66:22 67:13
67:14,17 68:23
70:6,11 72:12
72:12 73:5
74:14,25 75:8
75:11 76:19
77:10 78:16
79:4
**thinking** 29:8,8
**thought** 18:1
52:2 58:25
61:21
**threatened**

38:2 52:11
53:18
**three** 37:20
62:2 76:10
**three-minute**
78:17
**thrilling** 79:5
**time** 10:16 14:24
15:1,6,24 16:7
16:21 17:2,10
17:12,20 18:3
18:10 19:9
23:6,9 25:5,8
26:6,15 27:23
28:10,12,15
31:1,25 35:12
44:13 45:13
48:10 55:1
56:2,5,17
57:12 70:23
71:9,11 72:21
75:12 76:8
78:11 79:1
**times** 11:9 24:21
33:25 36:9,23
36:24 44:20
44:22 64:3
**timing** 19:1
**today** 5:11 6:19
12:22 14:25
55:15 69:23
**today's** 14:8
**told** 28:7 34:9
34:10,25
43:18 44:19
44:22 47:12
56:12 58:7
59:10,11 62:25
63:19 64:21
65:3 70:19,24
71:6 72:24
73:25
**Tomaszewski**
4:9 6:7 18:14
**Tony** 12:10
**top** 49:4
**tortoise** 11:18

12:5,6 79:3
**totality** 38:13
72:8
**towns** 49:5
**training** 29:6
58:8
**transcribed** 5:6
**transcript** 21:17
79:21 82:13
**transcripts@al...**
4:25
**transferred**
64:24
**treasurer** 8:2
**treat** 74:7
**treated** 72:13
76:4
**trial** 82:17
**tried** 72:11,15
73:19,20
74:24 75:1
**Tripp** 4:9 6:8
18:12
**TRO** 12:23
**trouble** 44:12
**true** 20:7 32:25
51:1 63:22
66:4,6,7,23
74:8 83:5,7
**try** 18:2 21:16
39:17 58:13,16
60:3 62:14,18
64:3 65:25
71:22
**trying** 10:20 11:8
16:12 51:5,18
53:20,21 57:9
60:8 63:6,11
63:25 64:4
67:1 69:18
**turned** 25:19
37:13,14
**turning** 49:8
62:23
**turtle** 11:17 12:5
12:6 79:3
**two** 8:18 11:16

16:6,8,11 50:21
56:16 61:9
75:8 76:9,18
**tying-up** 78:15
**type** 24:17
59:12,14 64:10
68:25
**types** 34:2 46:9
58:5
**typewriting** 5:6
81:8
**typically** 27:21
41:12,21

_____

**U**

**ugly** 24:24
**unacceptable**
64:23 66:8
**uncle** 23:19
**uncontested**
23:22
**undergo** 32:11
**underneath**
68:3
**understand** 12:7
21:2 22:11,13
33:24 42:20
46:21 54:13
69:19 71:1
73:16,17 77:13
**understanding**
5:14 20:23
21:19 22:5,12
23:8,17,19
29:18
**understood**
13:20 46:14
65:6
**undid** 43:24
**unique** 59:20
**United** 1:1 3:1
21:25 64:13
**University** 7:18
10:25
**unlawfully**
22:15
**unopposed**

20:2
**unreasonable**
38:11 49:9,16
49:21
**unreasonably**
22:16
**unruly** 59:25
**unusual** 24:7,11
24:13 38:10
39:11,13
**updates** 78:1
**upset** 33:23,24
38:4,4
**Upton** 31:2
**urgent** 47:9
**use** 27:3 28:3
30:17 31:5
32:4 39:3
42:22,24 49:3
64:11
**uses** 11:25
64:12 66:17
**usually** 36:19
70:4 76:15
77:7

_____

**V**

**v** 82:8 83:17
84:3
**vague** 20:25
21:22 22:7
29:23 76:25
77:22
**validity** 65:18
**varied** 27:25
**varies** 36:6
**various** 10:19
16:5
**Vaughn** 4:9 6:8
**vehicle** 71:3,3
**veracity** 22:18
**verbally** 5:22
**versus** 33:16
**video** 7:7
**view** 11:2 60:21
**views** 65:19
**violent** 38:6,7,8

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 98 of 100

38:10
**Virtually** 26:17
visit 68:7
visited 14:22
  16:25
visual 72:6
voice 58:17
  60:20 63:12
  67:11 71:23
voluntarily 32:11
voluntary 32:11
  32:25 33:16
volunteered
  33:5
vs 1:7 3:6

---

**W**

wait 47:8
waited 59:6
  62:25 67:16
waiting 33:20
  62:9
waive 5:19
  79:15
walk 35:6
want 16:12
  27:24 28:4,5
  33:10 34:12
  35:1 36:16
  60:11 65:10,11
  65:14 74:1
  78:5,6
wanted 12:14
  21:13 24:5
  28:3 30:21,22
  31:3,4,9 33:7
  33:21 34:14
  37:9 40:14
  57:6 62:15
  63:2,3,15 66:1
  76:3
wanties 41:6
warrant 9:1
warranto 19:14
wasn't 56:13
  57:3 60:11,16
  66:3 69:11

70:21
watching 60:7
way 12:14 19:1
  25:12 35:1
  37:17 38:11
  40:24 44:14,17
  44:24 61:2
  63:6,10,10
  65:14 66:20
  69:7 72:3
  73:10,12 74:14
  76:6 78:7
ways 65:24,24
we'll 36:20,21
we're 75:18
WebEx 78:4,5,9
went 31:22
  67:16 79:25
weren't 27:13
  42:8 48:3
  56:23
west 49:2 68:6
Western 1:1 3:1
  22:1
wife 14:22 18:6
  62:2
Wilcox 4:5
William 6:2
  21:24 23:2,5
  23:13,19 25:6
  28:25 30:11
  31:10,12,14
  32:10,24 35:5
  37:2 39:21
  40:9,10 41:1,2
  55:2 56:20
  57:14 78:23
Williams 17:13
wise 75:1
wish 57:20
  64:2
wished 23:9
  47:7
witness 3:10 5:7
  5:12,15,24 6:9
  35:18 46:21
  68:17 78:6

79:4,17 81:4,6
  82:13 84:1,2
  84:25
woman 62:1
wonder 19:11
word 39:3
  44:20
wording 39:10
words 31:19
  38:25 39:5
  40:11
work 6:22 10:17
  11:11,18 12:3
  51:12 64:23
worked 67:6
  76:9
working 28:10
  28:12,15
worried 37:24
  37:25 38:1,5,6
  59:13
worrying 56:13
worse 44:21
worst 38:15,16
worth 56:13
wouldn't 14:25
  17:4 57:2 61:7
wrap 78:16,18
writ 43:24
write 39:6
writing 16:3
written 38:20
  38:24 39:4,8
  76:24 77:4,11
  77:15
wrongdoing
  20:10
www.alaris.us
  4:24

---

**X**

X 2:1

---

**Y**

yeah 38:16
  48:18
year 13:13 16:17

36:9,23,24
  48:13,18
years 16:19 29:3
  48:15 72:1
yelling 59:3
young 12:2
  30:15 63:18
  72:25 73:11,24

---

**Z**

Zoom 5:12

---

**0**

084-003306
  3:15
084.003306
  1:18 81:4

---

**1**

1:00 12:16
1:30 12:16
1:48 3:12
1:50 5:1
101-type 11:10
1010 4:12
1130 4:7
15 37:19 46:17
  59:10
1650 4:12
1995 7:16,22
  8:5
1997 8:2
1st 9:14

---

**2**

20 83:10
2004 8:3
2008 8:3
2009 9:14
2017 13:14 23:4
  23:13,24 25:2
  25:5 26:6
  37:3 47:19
  48:16 49:9,22
  52:7 55:1
  58:22 71:14
  76:8,8,23

77:21 78:2
2021 1:15 3:12
  77:21 82:4,11
  83:16 84:4
20th 23:4,13,24
  25:2,5 26:6
  37:3 49:8,22
  52:7 55:1
  58:22 71:14
  76:23
25,000 9:11
25th 8:15
26th 1:15 3:11
  82:11 83:16
  84:4
280-3376 4:24
  82:2
28th 12:15

---

**3**

3:00 12:24,25
  13:1
314)561-3675
  4:13
3rd 82:4

---

**4**

4:24 3:13 80:3

---

**5**

5:30 47:16
53 10:15
573 4:18

---

**6**

6 2:4
6:19-cv-0334...
  1:7 3:6 22:3
63101 4:12,23
  82:2
63108 4:7
65102 4:17 82:6

---

**7**

70 10:13
711 4:23 82:1
751-8847 4:18

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 99 of 100

| 8 | | | | |
|---|---|---|---|---|
| **800** 4:24 82:2 | | | | |
| **842** 1:18 3:15 | | | | |
| 81:3 | | | | |
| **899** 4:17 82:6 | | | | |

| 9 | | | | |
|---|---|---|---|---|
| **906** 4:7 | | | | |
| **98** 8:2 | | | | |

ALARIS LITIGATION SERVICES
www.alaris.us     Phone: 1.800.280.3376     Fax: 314.644.1334
Case 6:19-cv-03346-RK   Document 141-4   Filed 04/30/21   Page 100 of 100