IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NORMA ROGERS, ARTHUR ROGERS, WILLIAM HALE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:19-cv-03346-RK |
| DOUGLAS D GASTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; BOBBY DUNCAN, JAMES SIGMAN, JAMES REAVES, GLENDA CAMPBELL, JENNIFER TOMASZEWSKI, PAM TRIPP, TEXAS, COUNTY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Before the Court are five motions for summary judgment filed by Defendants James Reaves (Doc. 157); Pam Tripp (Doc. 159); Glenda Campbell, Jennifer Tomaszewski, and James Sigman (filed jointly, Doc. 161); Robert (Bobby) Duncan (Doc. 163); and Judge Douglas Gaston (Doc. 165). The summary judgment motions are fully briefed. (Docs. 158, 160, 162, 164, 166, 194, 205, 206, 207, 208, 209, 210.) After careful consideration, and for the reasons explained below:

(1) Defendant Reaves' motion for summary judgment (Doc. 157) is **MOOT** as to Count IV; **GRANTED** as to Counts I, II, III, and V;

(2) Defendant Tripp's motion for summary judgment (Doc. 159) is **GRANTED** as to Counts I, II, III, and V;

(3) Defendant Campbell's motion for summary judgment (Doc. 161) is **MOOT** as to Counts I, II, and III; and **GRANTED** as to Count V;

(4) Defendant Tomaszewski's motion for summary judgment (Doc. 161) is **MOOT** as to Count IV; **GRANTED** as to Counts I, II, III, and V;

(5) Defendant Sigman's motion for summary judgment (Doc. 161) is **GRANTED** as to Count I, III, and V;

(6) Defendant Duncan's motion for summary judgment (Doc. 163) is **MOOT** as to Counts III and IV; and **GRANTED** as to Counts I, II, and V; and

(7) Defendant Gaston's motion for summary judgment (Doc. 165) is **MOOT** as to Counts III and IV; and **GRANTED** as to Counts I and II.

## Background[1]

Plaintiffs Arthur and Norma Rogers and William Hale (collectively, "Plaintiffs") bring a cause of action against James Reaves, Pam Tripp, Glenda Campbell, Jennifer Tomaszewski, James Sigman, and Robert Duncan in their individual capacity; Judge Douglas Gaston in his individual and official capacity; and Texas County, Missouri, pursuant to 42 U.S.C. § 1983. Plaintiffs allege Defendants violated their First, Fourth, and Fourteenth Amendment rights when Plaintiffs were detained, drug tested, and held at the Texas County jail. In the Third Amended Complaint, Plaintiffs assert the following six counts against Defendants.

Ct 1 – Fourth Amendment Claims (All Plaintiffs v. Gaston, Duncan, Sigman, Reaves, Tomaszewski, Campbell, and Tripp) – (1) unlawful seizure [Gaston, Duncan, and Tomaszewski]; (2) unlawful warrantless search [Gaston, Reaves, Tomaszewski, Campbell, and Tripp];(3) excessive force [Reaves]; (4)  failure to intervene in use of excessive force [Sigman, Reaves, Tomaszewski, and Tripp]

Ct 2 – First Amendment Claim of retaliation (All Plaintiffs v. Gaston, Duncan, Reaves, Tomaszewski, Campbell, and Tripp)

Ct 3 – Fourteenth Amendment Claim of deliberate indifference to serious medical need (Hale v. Gaston, Duncan, Sigman, Reaves, Tomaszewski, Campbell, and Tripp)

Ct 4 – Conspiracy (All Plaintiffs v. Gaston, Duncan, Reaves, and Tomaszewski)

Ct 5 – Fourth Amendment Claim of failure to intervene (All Plaintiffs v. Duncan, Sigman, Reaves, Tomaszewski, Campbell, and Tripp)

Ct 6 – County Liability Claim (All Plaintiffs v. Texas County, Missouri)[2]

Defendant Judge Douglas Gaston is an associate circuit court judge in Texas County, Missouri. On June 20, 2017, Plaintiffs attended a child custody hearing before Judge Gaston. The custody hearing concerned Arthur and Norma Rogers' granddaughter. At the time of the hearing,

---

[1] The following facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted (1) properly controverted facts, (2) asserted facts that are immaterial to the resolution of the pending motion, and (3) asserted facts that are not properly supported by admissible evidence, as well as legal conclusions and argument presented as an assertion of fact.

[2] Texas County has not yet filed any dispositive motions.

2

the child had been placed in the custody of the child's father's parents. Norma and Arthur Rogers attended the hearing at the request of the child's mother, their daughter. William Hale had driven the child's parents to court.

During the custody hearing, the child's parents asked Judge Gaston whether Arthur and Norma Rogers (rather than the child's father's parents) could have custody of the child. At some point during the hearing, the guardian ad litem requested that anyone who wanted placement of the child be drug tested. At the conclusion of the hearing, Judge Gaston ordered the child's parents, Arthur and Norma Rogers, and the child's father's parents to be drug tested: "And I'm going to require all parties to be drug tested here today before you leave . . . Sheriff, will you help me carry that out?" This order included Mr. Hale after he asked for clarification of whether he was going to be drug tested too, telling Judge Gaston that the child had recently been living on his property. Judge Gaston also ordered that Mr. Rogers be held in contempt for "ignor[ing] commands of the Court and us[ing] inappropriate language after repeated warnings." Judge Gaston sentenced him to one day in the Texas County jail.

Defendant Robert Duncan, Judge Gaston's bailiff, escorted Plaintiffs to the Texas County jail. Mr. Hale did not have any conversations with Bailiff Duncan about any medications he was taking, nor did he express difficulty walking, despite his various medical issues including diabetes with neuropathy, and a back injury. Norma and Arthur Rogers did not have any conversation with Bailiff Duncan about Mr. Hale's medical conditions, either.

At the jail, Defendant James Reaves, a corrections officer, handcuffed Plaintiffs to a metal bench in the booking area (a secure, non-public area of the jail) by their wrist or ankle. (Mr. Hale contends that at least for some duration, he was handcuffed to the bench by both his wrist and ankle.) Plaintiffs were restrained pursuant to a jail policy at that time that required individuals within the secure, non-public area of the jail who were neither jail employees nor law enforcement officers to be either (1) escorted at all times, or (2) handcuffed by the ankle or wrist to the bench.

Officer Reaves administered the drug test to Mr. Rogers and Mr. Hale by observing them provide a urine sample. Pam Tripp, the jail supervisor, administered Mrs. Rogers' drug test in the same manner. After Mrs. Rogers and Mr. Hale's drug tests reportedly came back positive, jail staff[3] obtained and reviewed their pharmacy records to check whether the positive drug tests were

_____

[3] It is not immediately clear from the summary judgment record who specifically at the jail obtained and/or reviewed the pharmacy records.

3

the result of having taking medications they were prescribed. Mrs. Rogers and Mr. Hale expected they would be able to leave after their drug tests were completed.

It is undisputed Plaintiffs were not handcuffed in the courtroom or on the way to the jail from the courtroom, and they were only handcuffed to the bench while in the jail. Plaintiffs remained cuffed to the bench except during lunch and to use the restroom. After the drug test results were received for Mrs. Rogers and Mr. Hale, they were taken back up Judge Gaston's courtroom, after which Judge Gaston told Bailiff Duncan to take them back to the jail. Plaintiffs testified they were handcuffed and/or detained for approximately eight hours on June 20.

While handcuffed to the bench, Mr. Hale never asked to take his shoes off or for his ankle cuff to be removed. Mr. Rogers did not tell anyone about Mr. Hale's medical conditions. Mr. Hale did not have any conversations with anybody in the jail about having diabetes or neuropathy in his legs, although he did ask jail staff to retrieve medications from his truck. After some time, Mrs. Rogers told Supervisor Tripp that Mr. Hale had diabetes; a partial amputation of his foot; and needed to put his foot up. Supervisor Tripp then brought Mr. Hale a chair to prop up his foot.

It is also undisputed that Defendants James Sigman, the Texas County Sheriff at the time; Jennifer Tomaszewski, a corrections officer; Glenda Campbell, the jailer; Supervisor Tripp; and Officer Reaves were working in the jail on June 20. It is undisputed that Jailer Campbell did not handcuff Plaintiffs, did not observe Mrs. Rogers' drug test, and did not pat down or take any items from Plaintiffs. Jailer Campbell did, however, identify Plaintiffs as people she saw cuffed to the bench at the jail on that day.

Sheriff James Sigman was the final policymaker for the jail. The Texas County jail no longer administers drug testing.

Mr. Hale's physician, Dr. Mark Seiden, testified in a deposition that because of his multiple amputations and surgeries, as well as his diabetes and neuropathy, Mr. Hale is predisposed to developing ulcers. Mr. Hale testified in a deposition that he was in pain while he was restrained to the metal bench. Following his restraint at the jail on June 20, Mr. Hale suffered a severe diabetic ulcer, leading to further partial amputation of his foot.

Further facts are set forth as necessary.

### Procedural Posture

Defendants filed their motions for summary judgment on May 18 and 19, 2021. Before filing a response to the summary judgment motions, Plaintiffs moved to dismiss various counts

4

against Jailer Campbell, Bailiff Duncan, Officer Reaves, Officer Tomaszewski, and Judge Gaston. (Docs. 180, 181, 184, 185, 186.)  The Court granted Plaintiffs' motions to dismiss as follows:

> Jailer Campbell – dismissed as to Counts I, II, and III (Doc. 182);
>
> Bailiff Duncan – dismissed as to Counts III and IV (Doc. 183);
>
> Officer Reaves – dismissed as to Count IV (Doc. 187);
>
> Officer Tomaszewski – dismissed as to Count IV (Doc. 189); and
>
> Judge Gaston – dismissed as to Counts III and IV (Doc. 188).

As a result, Judge Gaston, Bailiff Duncan, Officer Reaves, and Officer Tomaszewski's motions for summary judgment as to Count IV are **MOOT**.  Furthermore, Jailer Campbell's motion for summary judgment as to Counts I, II, and III is **MOOT**.  Finally, Bailiff Duncan and Judge Gaston's motions for summary judgment as to Count III are **MOOT**.

In the Third Amended Complaint, Plaintiffs seek damages against all Defendants except Judge Gaston, against whom they seek declaratory relief.  In adjudicating a previous motion to dismiss filed by Judge Gaston regarding Plaintiff's initial complaint, the Court dismissed, with prejudice, Plaintiffs' claims for declaratory relief against Judge Gaston to the extent they sought retrospective declaratory relief.  (Doc. 16 at 10); *see Rogers v. Gaston*, No. 6:19-03346-CV-RK, 2020 WL 1694796 (W.D. Mo. April 7, 2020).  The Court held such claims for retrospective declaratory relief are barred by the doctrine of absolute judicial immunity, finding Judge Gaston's decision to order Plaintiffs be drug tested was a judicial act and was not in complete absence of his jurisdiction in the context of a child custody case before the court.  *See Rogers*, 2020 WL 1694796, at *3-6.  Ultimately, however, the Court denied Judge Gaston's motion to dismiss inasmuch as Plaintiffs' claims in the initial complaint sought *prospective* equitable relief against Judge Gaston.  *Id.* at *6.  To the extent Plaintiffs seek declaratory relief against Judge Gaston in the Third Amended Complaint, the Court accordingly construes Plaintiffs' pleading as seeking prospective declaratory relief against Judge Gaston and in the summary judgment proceedings. Plaintiffs do not appear to contend otherwise.[4]

---

[4] The Court notes Plaintiffs appear to suggest in their summary judgment response that they also assert a claim for prospective declaratory relief against the individual defendants in addition to Judge Gaston.  In the Third Amended Complaint, however, Plaintiffs expressly seek declaratory relief only against Judge Gaston and "nominal, compensatory, and punitive" damages against the remaining defendants.  Moreover, Plaintiffs have sued the remaining individual defendants only in their individual capacity and only Judge Gaston in his individual and official capacity.  Equitable relief is not a valid remedy against defendants in a § 1983 action sued in their individual capacity.  *Braun v. Hanson*, No. 18-cv-3355

5

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted." *Smith-Bunge v. Wis. Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

Additionally, unless specifically controverted by the nonmoving party, all facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment. WDMO LR 56.1(b)(1); *see also* Fed. R. Civ. P. 56(e)(2) (allowing courts to consider a fact as undisputed when a party "fails to properly address another party's assertion of a fact as required

---

(JNE/ECW), 2020 WL 1496580, at *7-8 (D. Minn. Jan. 27, 2020) (holding that the plaintiff "may only seek injunctive relief against Defendants in their official capacities") (collecting cases). Individual-capacity claims under § 1983 are for damages. The Court does not therefore construe Plaintiffs' complaint as asserting a declaratory judgment against the remaining individual defendants and notes that Plaintiffs seek only equitable relief (and not monetary damages) against Judge Gaston.

6

by Rule 56(c)"). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [the nonmoving party] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

## Discussion

Because they are similar in nature, the Court will address Officer Reaves, Supervisor Tripp, Jailer Campbell, Officer Tomaszewski, Sheriff Sigman, and Bailiff Duncan's motions for summary judgment together, and will address Judge Gaston's motion for summary judgment separately in Section VI, below. In ruling on Defendants' summary judgment motions, the Court need only address the claims that remain after Plaintiffs' voluntary dismissal of multiple defendants. These remaining claims include:[5]

- Officer Reaves – Counts I, II, III, and V;
- Supervisor Tripp – Counts I, II, III, and V;
- Jailer Campbell – Count V;
- Officer Tomaszewski – Counts I, II, III, and V;
- Sheriff Sigman – Counts I, III, and V;
- Bailiff Duncan – Counts I, II, and V; and
- Judge Gaston – Counts I and II.

## I.     Absolute Quasi-Judicial Immunity

First, Officer Reaves, Supervisor Tripp, Bailiff Duncan, Jailer Campbell, Officer Tomaszewski, and Sheriff Sigman argue that they are entitled to summary judgment under the doctrine of absolute quasi-judicial immunity.

"Absolute quasi-judicial immunity derives from absolute judicial immunity." *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (citation and quotation marks omitted). It is well-established that "[a] judge's absolute immunity extends to public officials for 'acts they are specifically required to do under court order or at a judge's direction.'" *Id.* (quoting *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994) (quotation marks omitted)). Stated differently: "Judicial immunity . . . extends to others who perform functions closely associated with the judicial process. Judges and officials who have duties that are functionally comparable to those of judges are entitled to absolute immunity." *Simes v. Ark. Jud. Discipline & Disability Comm'n*, 2012 WL

---

[5] Count VI is not addressed in this Order because it is asserted only against Texas County, which has not yet filed any dispositive motions.

4469264, at *6 (E.D. Ark. Sept. 27, 2012) (citations omitted). To determine whether absolute quasi-judicial immunity applies in any given case, courts employ a "functional approach" that focuses on the "nature of the responsibilities of the individual officer." *Id.* (citations omitted).

The defendants argue their absolute quasi-judicial immunity is derived from Judge Gaston's order requiring the Plaintiffs to be drug tested. As noted above, in a prior order the Court found Judge Gaston's decision to order Plaintiffs be drug tested was a judicial act and was not in complete absence of his jurisdiction in the context of a child custody case before the court. *Rogers*, 2020 WL 1694796, at *3-6. For the same reasons stated therein, the Court finds (1) Judge Gaston's decision to order the drug testing of Plaintiffs in the context of a child custody case is a judicial act, and (2) such act, even if considering Plaintiffs to be mere "observers in the courtroom," was not in complete absence of Judge Gaston's jurisdiction. *See id.* at *3-6. In other words, Judge Gaston is entitled to absolute judicial immunity against any claims Plaintiffs may bring against him regarding his order to drug test Plaintiffs (except for prospective equitable relief).

A.     **Bailiff Duncan**

It is undisputed that Bailiff Duncan was instructed by Judge Gaston to help carry out his order that Plaintiffs be drug tested. It is also undisputed that the extent of Bailiff Duncan's personal involvement in this matter was, at the most, escorting Plaintiffs to and from the courtroom and the jail. In this regard, there is no question Bailiff Duncan is entitled to absolute quasi-judicial immunity from § 1983 liability for carrying out Judge Gaston's order that Plaintiffs be drug tested. *Cf. Hendrick v. Knoebel*, No. 4-15-cv-00045-SEB-TAB, 2017 WL 1927729, at *7 (S.D. Ind. May 10, 2017) (holding that defendants were not entitled to absolute quasi-judicial immunity because they could not rely on judge's "off-the-record" conversation instructing them to "locate" and arrest plaintiff because "[s]uch an order does not bear the indicia of being a valid and enforceable order capable of conferring absolute immunity"). During the child custody hearing and in open court, Judge Gaston ordered that Plaintiffs be drug tested and directed that Defendant Duncan, as his courtroom bailiff, "help me carry that out." At the time, the Texas County jail administered drug testing. It was to this end that Bailiff Duncan escorted Plaintiffs to the Texas County jail. Bailiff Duncan's motion for summary judgment (Doc. 163) is **GRANTED** as to the remaining Counts against him, Counts I, II, and V.

8

**B. Officer Tomaszewski, Supervisor Tripp, Officer Reaves, and Sheriff Sigman**

Defendants Tomaszewski, Tripp, Reaves, and Sigman also argue they are entitled to absolute quasi-judicial immunity. At a minimum, however, there is at least a disputed question of fact whether these defendants knew they were acting under Judge Gaston's direct order. Indeed, it remains a question of fact in this case whether it would have had to be a judge who ordered Plaintiffs to be drug tested (in fact, Supervisor Tripp and Officer Reaves both testified at a deposition that probation and parole officers would also order an individual to be drug tested). Moreover, none of these Defendants have established as an uncontroverted fact that they knew Judge Gaston ordered these specific individuals to be drug tested. These Defendants point to no evidence in the record that establishes this material fact. Thus, the Court cannot say Officer Tomaszewski, Supervisor Tripp, Officer Reaves, and Sheriff Sigman have satisfied their burden on summary judgment to show they are entitled to absolute quasi-judicial immunity as to Plaintiffs' claims against them. Accordingly, and considering the requirement that the evidence be viewed in a light most favorable to Plaintiffs as non-movants, the Court finds Officer Tomaszewski, Supervisor Tripp, Officer Reaves, and Sheriff Sigman are not entitled to absolute quasi-judicial immunity as to the drug testing of Plaintiffs.

**II. Count I – Fourth Amendment**

In Count I, Plaintiffs assert four specific Fourth Amendment claims.[6] Specifically, Plaintiffs assert (1) that Officer Tomaszewski[7] unlawfully seized Plaintiffs without a warrant or probable cause, taking them into custody to conduct a warrantless drug test; (2) that Officer Reaves, Officer Tomaszewski, and Supervisor Tripp conducted an unlawful warrantless drug test; (3) that Officer Reaves subjected Plaintiffs to excessive force in restraining them to the bench inside the jail; and, (4) that Sheriff Sigman, Officer Tomaszewski, and Supervisor Tripp failed to intervene in Officer Reaves' use of excessive force.[8]

---

[6] Although Jailer Campbell, Bailiff Duncan, and Judge Gaston were also charged in Count I, they are not discussed in this section as Jailer Campbell was dismissed by Plaintiff as to Count I, Bailiff Duncan is entitled to absolute-quasi-judicial immunity as discussed above, and Plaintiffs' claims against Judge Gaston are discussed in Section VI, below.

[7] Plaintiffs also bring this specific claim against Judge Gaston and Bailiff Duncan. As explained above, however, Bailiff Duncan is entitled to absolute quasi-judicial immunity. Additionally, Plaintiffs' claims against Judge Gaston are analyzed separately, below.

[8] The only allegation in the Third Amended Complaint of excessive force is that Officer Reaves "subjected Plaintiffs to excessive force . . . when he handcuffed them by ankle and wrist to a bench and forced them to stay seated on a hard metal bench for hours[.]" (Doc. 154 at 14, ¶ 98.) For purposes of

9

A.      **Legal Standard**

1.      **Fourth Amendment Claims, generally**

Generally, the Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated").  "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment."  *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (citation omitted).  Law enforcement officials detaining an individual, even briefly, can constitute a seizure for Fourth Amendment purposes.  *See Brown v. Texas*, 443 U.S. 47, 50 (1979) (holding that "When officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment," although the reasonableness of such seizure is "less intrusive than a traditional arrest").  "Whenever a [law enforcement officer] accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  It is clear that Plaintiffs were "seized" for purposes of the Fourth Amendment when they were escorted from the courtroom by Defendant Duncan and when they were delivered to the jail where they were held for around eight hours and secured to a metal bench by handcuffs.

Additionally, the Supreme Court has held that urine drug tests are searches within the context of the Fourth Amendment.  *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001); *see also Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) (noting that a urine drug test is a search under the Fourth Amendment); *Am. Fed'n of Teachers-W. Va., AFL-CIO v. Kanawha Cty. Bd. of Educ.*, 592 F. Supp. 2d 883, 892 (S.D.W.V. 2009) (recognizing as "well-established," that the Fourth Amendment's protections apply to "urinalysis drug testing, conducted by state actors") (citations omitted).

As part of the protection against unreasonable seizures, the Fourth Amendment secures a right to be free from excessive force.  Claims of excessive force are analyzed under the Fourth Amendment's reasonableness standard.  *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  "To establish a constitutional violation under the Fourth Amendment's right to be free

---

summary judgment, it is undisputed that Officer Reaves handcuffed Plaintiffs.  Plaintiffs make no allegation in Count I that any defendant other than Officer Reaves handcuffed Plaintiffs to the bench or otherwise restrained them.  The Court construes Plaintiffs' claim for excessive force and failure-to-intervene in Count I, accordingly.

from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* (citations and quotation marks omitted).

Finally, it is well-established in this circuit that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) (citation and quotation marks omitted). "To establish a failure to intervene claim, . . . the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Id.* (citation and quotation marks omitted).

### 2. Qualified Immunity

Defendants Sigman, Reaves, Tomaszewski, and Tripp argue they are entitled to summary judgment on claims against them in Count I because they are entitled to qualified immunity. "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects government officials from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotation omitted). Put another way, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citation and quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted).

The Court uses a two-part test to determine whether a government official is entitled to qualified immunity. *See Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014). The first part of this test is to determine "whether the facts alleged, construed in the light most favorable to

11

[Plaintiffs], established a violation of a constitutional or statutory right." *Id.* The second part of this test is to determine "whether that right was clearly established at the time of the alleged violation, such that a reasonable officer would have known his actions were unlawful." *Id.*

Generally, officers are entitled to qualified immunity if they "reasonably but mistakenly conclude that probable cause is present." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Qualified immunity "protect[s] all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and quotation marks omitted). There is no question Plaintiffs were detained and drug tested without a warrant having issued. Nonetheless, Officer Tomaszewski, Supervisor Tripp, Officer Reaves and Sheriff Sigman believed they were directed by either a judge or probation and parole to drug test Plaintiffs. These facts do not establish a violation of a constitutional or statutory right nor do these facts establish a reasonable officer would have known his actions were unlawful.

### B. Unlawful Search and Seizure

It is undisputed that Judge Gaston ordered that Plaintiffs be drug tested, that Judge Gaston asked Bailiff Duncan to help him carry out that order, and that Bailiff Duncan escorted Plaintiffs to the Texas County jail which, at that time, administered drug tests. It is similarly uncontroverted that Plaintiffs were drug tested while at the jail and were detained for some period of time during that process. Supervisor Tripp testified at a deposition that a "certified police officer, probation officer, [and] judges" could order that an individual be drug tested. (Doc. 162-8 at 33.) Officer Reaves similarly testified that a probation officer or judge could order a drug test. (Doc. 162-6 at 26-27.)

In a similar context, the Eighth Circuit has held that, as a matter of law, "an assisting officer is entitled to rely on the probable cause determination of the arresting officer and may receive qualified immunity as long as the reliance is reasonable." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017) (citations omitted). Similarly, regarding unlawful searches, assisting or subsidiary officers "ha[ve] a right to rely on the issuance of the warrant [even if no probable cause existed in fact] unless it is shown 'that no reasonably competent officer would have concluded that a warrant should issue.'" *Doran ex rel. Doran v. Condon*, 5 F. Supp. 2d 1067, 1073 (D. Neb. 1998) (holding officers entitled to qualified immunity where reasonably competent officers could objectively conclude the issuance of the warrant was supported by sufficient probable cause) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Of course, an officer is not

12

entitled to qualified immunity "just because [an officer's] superior told him to engage in unconstitutional conduct." *Ortega v. City of St. Louis*, 4:18 CV 1576 DDN, 2021 WL 3286703, at *12 (E.D. Mo. Aug. 2, 2021) (slip op.). Nevertheless, "it can be objectively reasonable for one officer to rely on an assurance of probable cause from another officer." *Id.* (citing *Bell v. Neukirch*, 979 F.3d 594, 609 (8th Cir. 2020); *Ehlers*, 846 F.3d at 1010).

As applied in this case, at a minimum, it was reasonable for Officer Reaves, Supervisor Tripp, and Officer Tomaszewski to rely on the determination by a judge, probation officer, or certified police officer, that a drug test at the jail was warranted. In the context of a drug test as a Fourth-Amendment search, the Fourth Amendment requires either a search warrant based on probable cause or a "special need" that makes the warrant and probable cause requirement impracticable. *Jakubowicz v. Dittemore*, No. 05-4135-CV-C-NKL, 2006 WL 2623210, at *4-5 (W.D. Mo. Sept. 12, 2006) (collecting cases). Defendants' reliance in this case is even more objectively reasonable where Plaintiffs were brought from the courtroom to the jail by Bailiff Duncan. Without something more, it was objectively reasonable for Officer Reaves, Supervisor Tripp, and Officer Tomaszewski – all of whom worked in the Texas County jail and not the court – to rely on another's determination that a drug test was properly warranted. Officer Reaves, Supervisor Tripp, and Officer Tomaszewski are therefore entitled to qualified immunity as to claims of unlawful search in Count I.

The same is true as to Count I's claim of unlawful seizure against Officer Tomaszewski. There is no evidence Officer Tomaszewski was involved in the decision to detain Plaintiffs for purposes of a drug test. Without something more, it was objectively reasonable for Officer Tomaszewski to rely on the Plaintiffs' having been brought to the jail by Bailiff Duncan and detained for a drug test. Officer Tomaszewski is therefore entitled to qualified immunity as to the claim of unlawful seizure in Count I.

Therefore, Officer Reaves, Supervisor Tripp, and Officer Tomaszewski's motions for summary judgment are **GRANTED** as to Count I's claim of unlawful search, and Officer Tomaszewski's motion for summary judgment is **GRANTED** as to Count I's claim of unlawful seizure.

### C. Excessive force

In Count I, Plaintiffs also assert a claim of unconstitutional excessive force used against them by Officer Reaves. Plaintiffs allege Officer Reaves used excessive force against them when

13

he handcuffed them to the bench in the jail. Specifically, it appears that Plaintiffs' claim of excessive force against Officer Reaves is that *no* amount of force against Plaintiffs was reasonable because there was no probable cause or other basis to seize or detain Plaintiffs. Officer Reaves argues he is entitled to qualified immunity because he did not apply excessive force against Plaintiffs in handcuffing them to the bench.

Claims of excessive force are analyzed in the context of the Fourth Amendment's reasonableness standard. *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). The reasonableness standard under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and quotation marks omitted). As the Supreme Court has instructed, "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

Although Plaintiffs do not otherwise bring a claim of unlawful seizure against Officer Reaves, it is clear that had they done so, Officer Reaves would be entitled to qualified immunity for the same reason as Officer Tomaszewski: it would have been objectively reasonable to detain Plaintiffs when they were brought to the jail for a drug test by Bailiff Duncan and Plaintiffs were held in a non-public, secure area of the jail. Plaintiffs' claim of excessive force against Officer Reaves must be considered in this context.

Officer Reaves argues he is entitled to qualified immunity because none of the Plaintiffs have established that he used excessive force in handcuffing them to the metal bench. Officer Reaves argues first that Arthur and Norma Rogers do not claim to have suffered any injuries as a result of being handcuffed and that, as a result, they do not have an excessive force claim.

Officer Reaves relies on *Stepnes v. Ritschel*, 663 F.3d 952 (8th Cir. 2011), in which the Eighth Circuit affirmed a district court decision granting summary judgment on a claim of excessive force based on a theory that the plaintiffs suffered only de minimis injury:

> We turn next to Stepnes's contention that Sergeant Ritschel used excessive force when conducting the May 28 arrest by placing handcuffs so tightly that he suffered bruising, numbness, and soreness. The district court determined that these injuries were de minimis and thus could not give rise to an excessive force claim. Stepnes correctly noted at oral argument that we have recently rejected the contention that the presence of only de minimis injury forecloses an excessive force

14

claim. *Chambers,* 641 F.3d at 906. In the handcuff context, however, *Chambers* simply reaffirmed our previous holdings that "[f]or the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Id.* at 907 (quoting *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)). Stepnes has produced no evidence that he suffered anything beyond minor injuries due to the handcuffing and thus cannot demonstrate a Fourth Amendment violation.

*Id.* at 961. Officer Reaves argues that a claim of excessive force must rest on "something that is beyond minor injuries." (Doc. 207 at 6.) The Eighth Circuit recently explained, however, that lack of a de minimis injury does not, by itself, preclude an excessive force claim:

Officer Marzolf argues that a claim for excessive force requires more than a de minimis injury. Not so. We "held in *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), that it is possible for the use of excessive force to result only in a de minimis injury. But we explained that the 'degree of injury' is still 'certainly relevant insofar as it tends to show the amount and type of force used.'" *Robinson v. Hawkins*, 937 F.3d 1128, 1136 n.3 (8th Cir. 2019) (cleaned up) (quoting *Chambers*, 641 F.3d at 906). So, in our circuit, the degree of injury is relevant to the excessive-force inquiry, but there is no minimum-injury requirement.

*Pollreis v. Marzolf*, __ F.4th __, 2021 WL 3610875, at \*7 n.4 (8th Cir. Aug. 16, 2021).

While Arthur and Norma Rogers assert in their complaint that they experienced pain and numbness while handcuffed on the bench, Plaintiffs do not attempt to support this assertion on summary judgment. And it appears such contention would be wholly without support in the record. Arthur and Norma Rogers' argument simply appears to be that *no* amount of force was reasonable because there was no probable cause to support their arrest or the use of handcuffs. But, as explained above, it was objectively reasonable for the jailers to rely on Plaintiffs' having been brought to the jail by a courtroom bailiff to undergo a drug test. And in this case, it does not appear that Arthur and Norma Rogers suffered *any* injury whatsoever.

Nevertheless, the inquiry here is whether the use of force was "objectively reasonable." There is no evidence Arthur and Norma Rogers suffered any injury, de minimis or otherwise, from being handcuffed. Moreover, to the extent Arthur and Norma Rogers argue it was not reasonable for Officer Reaves to use more than de minimis force against them, there is simply no allegation or facts in the summary judgment record that Officer Reaves did in fact use anything more than de minimis force against them.[9] *See Shannon v. Koehler*, 616 F.3d 855, 863-65 (8th Cir. 2010)

---

[9] Potential relief for any constitutional violation Plaintiffs may have suffered in this regard is more properly sought (as they have done) against Texas County itself. Plaintiffs' claim is that the act of being handcuffed itself (without regard to the amount of force used to do so) was unconstitutional. This is really

15

(holding an officer not entitled to qualified immunity where, assuming plaintiff's version of the facts were true such that it was not objectively reasonable for the officer to use more than de minimis force and the officer caused a partially collapsed lung, multiple fractured ribs, a head laceration, and various contusions).

In contrast to Arthur and Norma Rogers, Mr. Hale testified that he was in pain while restrained to the bench. Mr. Hale's claim of excessive force is based, in part, on the undisputed fact he later developed an ulcer on his partially amputated foot resulting in further amputation. Mr. Hale argues the ulcer was caused by his being restrained to the bench in the manner and for the duration as he was on June 20. Officer Reaves argues Mr. Hale's restraint was reasonable and thus was not excessive force. The evidence, in a light most favorable to Mr. Hale, shows that Officer Reaves handcuffed Mr. Hale so that he was seated on the bench for several hours. Mr. Hale was secured to the bench by his ankle for at least some portion of the time. Mr. Hale's treating physician later testified because of his prior medical and surgical history including amputation and diagnosis of diabetes and neuropathy, having his foot in an abnormal position with excessive pressure makes him predisposed to developing ulcers. (Doc. 194-18 at 34-35, 39.)

"What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." *Rodriguez v. Farell*, 280 F.3d 1341, 1353 (11th Cir. 2002) (citation omitted). Generally, courts in Missouri have found no excessive force where pre-existing condition was not objectively manifested or known to the officer. *See Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010) ("when an officer exerts objectively reasonable force which results in the aggravation of a pre-existing injury unknown to the officer, such an injury is not sufficient to indicate excessive force") (citing *Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1020 (8th Cir. 2009)); *Minor v. City of Chesterfield, Mo.*, No. 4:05CV00586 ERW, 2007 WL 1610507, at *5-6 (E.D. Mo. 2007) (holding officer was reasonable in handcuffing plaintiff despite plaintiff's warning he had had back surgery because "Plaintiff did not display any objective indicia of injury to alert Officer Barron that handcuffing Plaintiff beyond his back may aggravate his pre-existing injuries," and plaintiff did not complain about back pain while he was handcuffed); *cf. Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (finding genuine issue of whether force was excessive

---

a challenge to the constitutionality of the jail's policy of handcuffing persons when in the non-public secure area of the jail. At this time, this claim against Texas County remains pending.

where arresting officers held plaintiffs wrist and held him against the door when plaintiff was wearing a sling on his left arm because he was recovering from surgery); *Eason v. Anoka-Hellepin E. Metro Narcotics & Violent Crimes Task Force*, 2002 WL 1303023, at *6 (D. Minn. June 6, 2002) (finding genuine issue of fact whether officers used reasonable amount of force when handcuffing plaintiff's arms behind his back where plaintiff repeatedly told the officers about his recent heart surgery and that his sternum was wired together and the officers had difficulty placing plaintiff's arms behind his back).

The question in this circumstance is what if anything was known to Officer Reaves when he handcuffed Mr. Hale to the bench. *See Minor*, 2007 WL 1610507, at *6; *Foster v. Cerro Gordo Cty.*, 2016 WL 11641710, at *8 (N.D. Iowa May 10, 2016) (finding "[t]here was no objective information known to the arresting officers that plaintiff suffered from any injury or medical condition that would lead a reasonable officer to believe that handcuffing her behind her back would have caused her injury").

At most, and viewed in the light most favorable to Mr. Hale, the evidence shows at some point Mrs. Rogers told "somebody" (she could not identify who) at the jail that Mr. Hale had diabetes complications and needed to put his foot up; that Mr. Hale asked Officer Reaves to get medication from his truck and, specifically asked Supervisor Tripp to get his "pain pills" from his truck; and, finally, that the jail received a list of his prescription medications following the positive result of his drug test. At the same time, it is undisputed that Mr. Hale did not tell anyone at the jail – let alone Officer Reaves – about his diabetes or neuropathy, and he did not ask for his ankle cuff be removed or to take his shoe off. Mrs. Rogers did tell Supervisor Tripp that Mr. Hale had diabetes, a partial amputation of his foot, and needed to put his foot up, after which Supervisor Tripp brought a chair so Mr. Hale could prop up his foot.

Asking for medication (even broadly for "pain" medication) and that his prescriptions were identified by somebody at the jail "d[oes] not necessarily serve as objective evidence of a special vulnerability to injury." *Brown v. FBI Fugitive Task Force Officers*, 2013 WL 5954684, at *8 (D. Minn. Nov. 7, 2013). Moreover, Mr. Hale did not tell anyone let alone Officer Reaves specifically about his diabetes or neuropathy and did not ask for accommodation specifically related to that diagnosis and his medical needs.

Under these facts, even when viewed in the light most favorable to Mr. Hale, qualified immunity protects Officer Reaves from Mr. Hale's excessive force claim. It was not clearly

established when Officer Reaves restrained Mr. Hale to the bench that doing so in the manner that he did would exacerbate or otherwise complicate any preexisting injury or medical need. No evidence in the summary judgment record establishes Officer Reaves had knowledge of Mr. Hale's preexisting injuries or medical needs or any objective manifestation of such injury or medical needs at the time Mr. Hale was handcuffed to the bench. Mr. Hale does not raise an excessive force claim in the manner the handcuffs were actually applied such as the tightness or that he was restrained to the bench in an abnormal or twisted way. Therefore, Officer Reaves' motion for summary judgment is **GRANTED** as to Count I's excessive force claim.

### D. Failure to Intervene

The final claim in Count I asserts a failure-to-intervene claim against Defendants Sigman, Tomaszewski, and Tripp. The Third Amended Complaint alleges that these Defendants failed to intervene in Officer Reaves' unconstitutional use of excessive force.

It is well-established that:

> an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment. To establish such a claim, however, a plaintiff must show . . . that the officer observed or had reason to know that excessive force would be or was being used."

*Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011) (citation and quotation marks omitted).[10] The finding that Officer Reaves is not liable for excessive force is necessarily fatal to any claim that any defendant unconstitutionally failed to intervene as to that alleged use of unconstitutional excessive force. *See id.* In other words, for the same reasons as above, Sheriff Sigman, Officer Tomaszewski, and Supervisor Tripp are entitled to qualified immunity from suit on the claim alleging that they failed to intervene in Officer Reaves' use of excessive force. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) ("[B]ecause it was not clearly established that McCallum's actions constituted excessive force, a reasonable officer was not on fair notice that his failure to intervene when McCallum deployed the Taser violated Hollingsworth's Fourth Amendment rights."). Sheriff Sigman, Officer Tomaszewski, and Supervisor Tripp's motions for summary judgment are **GRANTED** as to Count I's claim alleging failure-to-intervene.

---

[10] The Third Amended Complaint also asserts this claim in Count I against Officer Reaves. Plaintiffs' only claim of excessive force, however, is made against Officer Reaves. To the extent Plaintiffs assert a failure-to-intervene claim in Count I against Officer Reaves, then, Officer Reaves is entitled to summary judgment.

## III.     Count II – First Amendment Claim

In Count II, Plaintiffs assert a First Amendment claim against Defendants Reaves, Tomaszewski, and Tripp.[11]     Plaintiffs allege these three Defendants violated their First Amendment rights by unlawfully detaining, restraining, and drug testing them because they participated as members of the public in observing court or associating with litigants before the court.

To prevail under their First Amendment claim, Plaintiffs must show "(1) they engaged in protected activity; (2) [Defendants] caused an injury to [Plaintiffs] that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury." *Quraishi v. St. Charles Cty., Mo.*, 986 F.3d 831, 837 (8th Cir. 2021) (citation omitted).  "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." *Id.* at 838 (citation and quotation marks omitted).

Defendants argue they are protected by qualified immunity because it was not clearly established Plaintiffs were engaging in a First-Amendment-protected activity by attending the child custody proceeding; a civil rather than criminal proceeding.

As the Supreme Court has explained, in the context of qualified immunity:

> [t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust consensus of cases of persuasive authority."  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted).  A right may be clearly established "in the absence of binding precedent" upon a showing of "'a robust consensus of persuasive authority' constituting settled law."  *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (quoting *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017)).

---

[11] In the Third Amended Complaint, Plaintiffs also charge Judge Gaston, Bailiff Duncan, and Jailer Campbell in Count II.  They are not discussed in this section, however, because the Court will address Plaintiffs' claims against Judge Gaston separately in Section VI, below, Bailiff Duncan is entitled to absolute quasi-judicial immunity as discussed above, and Jailer Campbell was dismissed by Plaintiff as to Count II.

19

Defendants argue they are entitled to qualified immunity because it was not clearly established that Plaintiffs have a First Amendment right to attend or to be present in a child custody hearing/civil proceeding. The Court agrees.

Plaintiffs point to no controlling precedent from either the Eighth Circuit Court of Appeals or the United States Supreme Court that clearly establishes a First Amendment right of access to civil proceedings let alone a child custody hearing. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court held "that the right to attend criminal trials is implicit in the guarantees of the First Amendment." *Id.* at 580 (footnote omitted). The Court explicitly recognized that "[w]hether the public has a right to attend trials of civil cases is a question not raised by this case," although it noted that "historically" all trials "have been presumptively open." *Id.* at n.17. And the Eighth Circuit itself has recognized that neither the Supreme Court nor the Eighth Circuit has held that access to civil trials or proceedings is a First Amendment right. *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1374 (8th Cir. 1990); *see N. States Power Co. v. Westinghouse Elec. Co.*, 156 F.R.D. 168, 171-72 (D. Minn. 1994) (noting "[t]he Eighth Circuit has expressly left open the question of First Amendment or common law right of public access to [civil] judicial proceedings") (citation omitted).

At most, the Eighth Circuit has recognized a First Amendment right of access to contempt proceedings as a "hybrid" of criminal and civil proceedings. *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983). Moreover, the Court recognizes that the majority of circuit courts that have specifically addressed the issue have held the First Amendment applies equally to civil trials (generally) and criminal trials alike. *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) (noting, in addition to the Second Circuit, "all the other circuits that have considered the issue have come to the same conclusion" that the First Amendment protects a right of access to both criminal and civil trials); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *see Doe v. Sante Fe Indep. Sch. Dist.*, 933 F. Supp. 647, 649-50 (S.D. Tex. 1996) (collecting cases); *see also United States v. Thompson*, 713 F.3d 388, 399 (J. Gruender, concurring) (noting "Although the Supreme Court has yet to recognize a First Amendment right to attend civil proceedings, a majority of the Justices have implied as much.") (Citation omitted). Here, though, this case does not involve a run-of-the-mill civil trial or proceeding – rather, it involves a child custody proceeding. Courts have recognized in this context, "such proceedings have been historically closed to the public." *Briggman v. Burton*, No.

5:15CV00076, 2016 WL 5462840, at *5 (W.D. Va. Sept. 27, 2016) (quotation marks omitted) (collecting cases); *see In re T.R.*, 556 N.E.2d 439, 450 (Ohio 1990) (holding "no qualified right of public access to juvenile court proceedings . . . to determine custody of a minor child"); *but see N.J. Div. of Youth & Fam. Serv. v. JB*, 576 A.2d 261, (N.J. 1990) (finding qualified First-Amendment right of access by public to custody cases involving the Division of Youth and Family Services); *Anonymous v. Anonymous*, 158 A.D.2d 296 (N.Y. App. Div. 1990) (recognizing qualified right of access to custody cases) (holding court properly exercised discretion in declining to grant request to exclude all persons from custody dispute).

Therefore, the Court cannot say as a matter of "settled law" Plaintiffs had a First Amendment right (qualified or not unqualified) to attend the child custody proceeding in this case. Accordingly, Officer Reaves, Officer Tomaszewski, and Supervisor Tripp's motions for summary judgment are **GRANTED** as to Count II.

## IV. Count III – Fourteenth Amendment Claim

In Count III of the Third Amended Complaint, Mr. Hale brings a claim of deliberate indifference of his medical needs under the Fourteenth Amendment[12] against Defendants Sigman, Reaves, Tomaszewski, and Tripp.[13] It is clearly established that a pretrial detainee or arrestee "has a right to be free from deliberately indifferent denials of emergency medical care." *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016) (citations omitted). To establish a due process

---

[12] Plaintiff Hale cites *Hope v. Pelzer*, 536 U.S. 730 (2002), a case brought under § 1983 by a prison inmate and decided under the Eighth Amendment. *Id.* at 733. There is no question that the claim Plaintiff Hale asserts here for deliberate indifference falls under the Fourteenth Amendment as applies to pre-trial detainees. While the same "deliberate indifference" standard applies to such claims brought by pre-trial detainees and prisoners, alike, claims of deliberate indifference by pre-trial detainees are "governed by the Fourteenth Amendment which extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021) (citation omitted). To the extent there is overlap between the Eighth- and Fourteenth-Amendment deliberate indifference analytical rubric, the overlap is in the right to be protected from "deliberate indifference to a serious medical need" and not the right of protection from cruel and wanton punishment which the Eighth Amendment affords to prisoners, and which was the focus of the Supreme Court in *Hope*. *See also Chaney v. Smith*, 2020 WL 7034558, at *11 (E.D. Ark., Nov. 30, 2020) ("The Eighth Amendment has no application until there has been a formal adjudication of guilt," although recognizing at the same time "[t]he protection that an inmate be provided with adequate medical care extends to pretrial detainees," under the Fourteenth Amendment.) (Citation omitted).

[13] Plaintiff Hale also asserted Count III against Judge Gaston, Bailiff Duncan, and Jailer Campbell. They are not discussed in this section, however, because Plaintiff voluntarily dismissed his claims against these defendants as to Count III.

violation for deliberate indifference, a plaintiff must show (1) he suffered from an objectively serious medical need, and (2) defendants had actual knowledge of that need but deliberately disregarded it. *Id.* Defendants do not attack the first prong that Mr. Hale suffered from an objectively serious medical need. Instead, Defendants argue Count III fails under the second prong.

The second prong, however, involves the subjective component of showing a deliberate disregard. This prong requires a plaintiff to "establish a mental state akin to criminal recklessness: disregarding a known risk to the [detainee]'s health." *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013) (citation and quotation marks omitted). This is an "onerous standard" that requires "more than negligence, more even than gross negligence," although "less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the [detainee]." *Id.* (citation and quotation marks omitted).

Defendants argue they are entitled to judgment as a matter of law because Mr. Hale cannot show Sheriff Sigman, Officer Reaves, Officer Tomaszewski, or Supervisor Tripp had any actual knowledge of Mr. Hale's serious medical need. Thus, Mr. Hale cannot show Defendants deliberately disregarded Mr. Hale's serious medical need.

Knowledge can be established through circumstantial evidence, including the obviousness of the risk or injury. *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003). And a plaintiff must show "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Kulkay v. Roy*, 847 F.3d 637, 644 (8th Cir. 2017) (citation and quotation marks omitted).

The undisputed facts viewed in the light most favorable to Mr. Hale show that he was cuffed to the bench by his ankle at least for some portion of the time. At some point, he asked Officer Reaves and Supervisor Tripp to get his medication, including "pain pills" from his truck. Additionally, Mr. Hale's pharmacy records were obtained that showed his prescription medications. Finally, Mrs. Rogers testified she told Supervisor Tripp that Mr. Hale had diabetes, a partial amputation of his foot, and needed to put his foot up, at which point Supervisor Tripp got a chair so Mr. Hale could prop up his foot. Mrs. Rogers testified this was "probably the second time" she had told somebody Mr. Hale was in pain. It is undisputed that Mr. Hale never told anyone at the jail about his diabetes or neuropathy.

22

Mr. Hale argues that Defendants had actual knowledge of his serious medical needs because he asked for his medication or pain pills and the jail received his pharmacy records showing his prescription medications. The evidence shows that Mr. Hale asked Officer Reaves and Supervisor Tripp to get his medications from his truck – not anyone else. Moreover, neither the pharmacy records nor Mr. Hale asking for his pain medication, alone, lead to the inference that his being cuffed to the bench by his ankle (for part of the time) would cause an ulcer on his foot to develop.

As to Sheriff Sigman and Officer Tomaszewski, there is no evidence (other than the jail having received a list of Mr. Hale's prescription medications) to support a finding that they knew of the ulcer risk to Mr. Hale by being seated on and cuffed to the bench by his ankle for some unknown period of time. Without something more, there is similarly no basis to find that Officer Reaves or Supervisor Tripp actually knew that by being seated on and cuffed to the bench, Mr. Hale was at a serious risk of developing an ulcer on his foot. At the most, Mr. Hale asked for pain medication from his truck but never told anyone about his diabetes making him prone to neuropathy, his partial amputation, or that he was at risk of developing ulcers. And when Mrs. Rogers told Supervisor Tripp that Mr. Hale had diabetes and needed to put his foot up, Supervisor Tripp retrieved a chair to allow Mr. Hale to prop up his foot. Mr. Hale cannot show on this summary judgment record Defendants had actual knowledge that his being seated on the bench with an ankle cuff for some of the time placed him, with a diagnosis of diabetes, at a serious risk of developing an ulcer. Neither can Mr. Hale show Supervisor Tripp, or any other Defendant, deliberately disregarded any known risk of serious harm to Mr. Hale.

Therefore, Sheriff Sigman, Officer Reaves, Officer Tomaszewski, and Supervisor Tripp's motions for summary judgment are **GRANTED** as to Count III.

## V. Count V: Fourth Amendment Failure-to-Intervene Claim

In the Fifth Count, Plaintiffs allege Defendants Sigman, Reaves, Tomaszewski, Campbell, and Tripp failed to intervene in the use of excessive force.[14] As the Court noted above in Count I's failure-to-intervene claim, it appears Plaintiffs' argument is the use of handcuffs was excessive force per se, and accordingly, these Defendants failed to intervene in this use of unconstitutional force by removing the handcuffs.

---

[14] Plaintiffs also asserted Count V against Bailiff Duncan. The Court does not address Bailiff Duncan in this section, however, because he is entitled to absolute qualified-judicial immunity.

As stated above, a failure to intervene claim requires (1) the unconstitutional use of excessive force by another officer, and (2) that the defendant observed or had reason to know that excessive force would be or was being used. *Hollingsworth*, 800 F.3d at 991. Again, Plaintiffs' only claim of excessive force is explicitly brought against Officer Reaves alone. The force used against Plaintiffs, if any, was not more than de minimis. Moreover, to the extent Mr. Hale claimed injury in the exacerbation or development of an ulcer, this claim does not support a claim for excessive force because his injury – and the risk inherent in the use of handcuffs in the particular circumstances here – was not objectively evident. Without excessive force, Sheriff Sigman, Officer Reaves, Officer Tomaszewski, Jailer Campbell, and Supervisor Tripp are entitled to qualified immunity under any such Fourth Amendment failure-to-intervene claim. As noted above, to the extent Plaintiffs' claims are more appropriately brought as a claim against the County itself for the allegedly unconstitutional policy of the Texas County jail to handcuff and secure all non-employee and non-law enforcement persons to the bench when not escorted, Plaintiffs have asserted this claim in Count VI of the Third Amended Complaint. Without a finding of excessive force – which is a separate and independent claim from an unconstitutional policy or custom to challenge the constitutionality of the policy itself – Defendants cannot be held liable under the Fourth Amendment for failing to intervene.

Accordingly, Sheriff Sigman, Officer Reaves, Officer Tomaszewski, Jailer Campbell, and Supervisor Tripp's motions for summary judgment are **GRANTED** as to Count V.

## VI.    Claims Against Judge Gaston

In the Third Amended Complaint, Plaintiffs seek prospective declaratory relief against Judge Gaston in two claims brought under § 1983: (1) a Fourth Amendment claim for unlawful search and seizure in Count I, and (2) a First Amendment retaliation claim in Count II. Plaintiffs bring these claims against Judge Gaston in both his individual and official capacity. While it is not immediately clear from the Third Amended Complaint itself, Plaintiffs do not contest they only bring a claim for prospective declaratory judgment against Judge Gaston.[15] The declaratory relief Plaintiffs seek against Judge Gaston is not clear, either. In reading the relief sought as prospective declaratory relief, the Court thus construes Plaintiffs' declaratory judgment action as declaring that Judge Gaston's policy of detaining and ordering warrantless drug tests without

---

[15] As noted above this is consistent with the Court's prior order dismissing with prejudice any claim for retrospective declaratory relief against Judge Gaston. *See Gaston*, 2020 WL 1694796.

probable cause and only based on one exercising a First Amendment right to observe a civil proceeding is unconstitutional. Judge Gaston argues he is entitled to summary judgment because Plaintiffs lack standing, their claims against Judge Gaston are moot, and Plaintiffs failed to establish that Judge Gaston has a policy or custom of drug testing court observers.

The Declaratory Judgment Act, consistent with the requirement of Article III standing for federal courts, requires "a case of actual controversy." 28 U.S.C. § 2201(a). "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019). Each claim for declaratory relief must independently satisfy the requirements for standing. *Town of Chester v. Laroe Est., Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (citation and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing standing – and, at the summary judgment stage, such party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Internat'l USA*, 568 U.S. 398, 411-12 (2013) (citation and quotation marks omitted); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is fairly . . . traceable to the challenged action of the defendant and (3) is likely . . . to be redressed by a favorable decision in court." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (cleaned up) (quoting *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011)). "A plaintiff has suffered an injury-in-fact if he has experienced 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). The threat of future harm will satisfy the injury-in-fact requirement "as long as there is a 'substantial risk' that the harm will occur. . . . '[A]llegations of *possible* future injury are not sufficient.'" *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (quoting *Clapper*, 568 U.S. at 414 n.5 & 409). Rather, "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 410 (quoting *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)) (emphasis in original).

### A.    Count I – Fourth Amendment Claim

The Court finds that Plaintiffs have not satisfied their burden to show standing to assert a Fourth Amendment claim seeking declaratory judgment and, therefore, Judge Gaston is entitled to summary judgment on Count I.

Plaintiffs argue the evidence establishes a sufficient impending threat that Judge Gaston will order them to be detained and drug tested without probable cause or a warrant again.  Plaintiffs rely on (1) Judge Gaston ordering another court observer to be drug tested around the same time he ordered Plaintiffs to be drug tested, and (2) they live in or near Texas County, Missouri (Judge Gaston being the sole associate circuit judge having initial jurisdiction over all civil matters in Texas County).  Plaintiffs argue Mr. Hale lives in Texas County and Norma and Arthur Rogers live in a neighboring county.  Norma and Arthur Rogers also argue they have six children, and thus there is a substantial risk that the harm will occur again.

None of these facts or circumstances, however, establish a "certainly impending" threat (1) that Plaintiffs will appear in Judge Gaston's courtroom in Texas County and (2) that Judge Gaston will order they be detained and drug tested based on their mere presence in the courtroom.  As to the Rogers' six children, Norma and Arthur Rogers do not allege, for instance, (1) that any of their five other children have children of their own that are or will be involved in a child custody proceeding before Judge Gaston, or (2) that any of their children will somehow necessarily be involved as parties in a civil action proceeding before Judge Gaston.[16]

Moreover, Plaintiffs do not contest that Judge Gaston has formally recused himself from the case involving Arthur and Norma's grandchild and Judge Gaston has attested he will recuse himself from any case in which they are a party in the future.  Additionally, because Norma and Arthur Rogers live in a neighboring county – not Texas County – there is no evidence or supportable assertion they will certainly attend, or be involved with, a proceeding before Judge Gaston.

As to Judge Gaston ordering other courtroom observers to be detained and drug tested, Plaintiffs have identified only one other instance occurring around the same time in 2017.  This is far from showing Judge Gaston requires every courtroom observer to be drug tested any time they are in his courtroom.    Judge Gaston attested, after informal counseling by the Missouri

_____

[16] To the extent one of the Rogers' children had a criminal proceeding before Judge Gaston in 2018, Plaintiffs acknowledge her case is no longer before Judge Gaston.

Commission on Retirement, Removal and Discipline, that he has agreed not to order drug tests of non-party court observers and "ha[s] no intention of ever doing so."

Finally, as to Texas County jail's administering drug tests in the future, it is undisputed that the Texas County jail no longer administers drug tests.

Plaintiffs' theory to establish standing as to their Fourth Amendment declaratory judgment action against Judge Gaston is no less attenuated and speculative than in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the Supreme Court held that the plaintiff lacked standing to seek an injunction after he was injured from the use of a chokehold by police officers during a traffic stop:

> [T]hat Lyons "may have been illegally choked by the police . . . [that fact] does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened . . . falls far short of the allegations that would be necessary to establish a case or controversy between these parties.
>
> . . .
>
> But even assuming that Lyons would again be stopped for a traffic or other violation in the reasonably near future, it is untenable to assert, and the complaint made no such allegation, that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped. We cannot agree that the "odds" that Lyon would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation . . . are sufficient to make out a federal case for equitable relief.

*Id.* at 105 & 108. The same is true here. Plaintiffs do not establish a real and immediate threat they would again find themselves in Judge Gaston's courtroom and that Judge Gaston would again order them detained and drug tested without probable cause or a warrant. Plaintiffs do not contest that Judge Gaston has affirmatively recused himself from the case involving Arthur and Norma's granddaughter and that he has attested, under penalty of perjury, that he would recuse from any case involving Plaintiffs. "[B]ecause there is no allegation that [Judge Gaston] will once again [order they be detained and drug tested if they appear in his courtroom as observers] in the future, [plaintiffs] lack standing to pursue a claim for . . . declaratory relief." *Kanuszewski*, 927 F.3d at 408 (citation omitted). Because Plaintiffs have not established standing to assert a Fourth

Amendment claim for prospective declaratory relief, Judge Gaston's motion for summary judgment is **GRANTED** as to Count I.

## B.  Count II – First Amendment Retaliation Claim[17]

"In the First Amendment context, 'two types of injuries may confer Article III standing to seek prospective relief.'"  *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (quoting *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)).  "The first is the injury caused by the threat that the speaker will be . . . punished for his or her speech.  A second injury-in-fact occurs when a plaintiff foregoes expression in order to avoid a sanction or penalty."  *Stamm v. Cty. of Cheyenne, Neb.*, 326 F. Supp. 3d 832, 859 (D. Neb. 2018) (citation and quotation marks omitted).  Stated differently, a plaintiff demonstrates an injury-in-fact by establishing "an intention to engage in a course of conduct arguably affected with a constitutional interest . . . and there exists a credible threat of prosecution [or retaliation] thereunder."  *Klahr*, 830 F.3d at 794 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).  A plaintiff also demonstrates an injury-in-fact for standing purposes in self-censorship.  *Id.*; *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("The second type of injury is when a plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences.") (citing *Va. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)) (other citations and quotation marks omitted omitted).

It is well-established, however, Article III standing to pursue prospective relief, whether in the First Amendment context or not, cannot be established simply based on prior harm.  "'Past exposure to illegal conduct' is insufficient to demonstrate an injury in fact that warrants declaratory or injunctive relief unless the past injury is accompanied by 'continuing, present adverse effects.'"  *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); other citation omitted); *accord Defs. of Wildlife v. Everson*, 984 F.3d 918, 946 (10th Cir. 2020) ("past exposure to illegal conduct does not in itself show a present case or

---

[17] A First Amendment retaliation claim under § 1983 requires proof, generally, that a plaintiff "(1) engaged in a protected activity, (2) the government officials took adverse action against him that would chill a person of ordinary firmness from continuing the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  *O'Toole v. City of Walnut Grove, Mo.*, 275 F. Supp. 3d 1114, 1118-19 (W.D. Mo. 2017) (citation and quotation marks omitted).  At this stage, Judge Gaston does not seek summary judgments on the merits of Plaintiffs' First Amendment claim and thus the Court need not decide affirmatively whether Plaintiffs were engaged in a protected activity under the First Amendment in this case.

controversy regarding injunctive or declaratory relief as here if unaccompanied by any continuing, present adverse effects") (citation and quotation marks omitted). At the same time, evidence of past wrongs certainly does "bear[] on whether there is a real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 495-96. In other words, a plaintiff must establish a "real and immediate threat that he [or she] would again be the victim of the allegedly unconstitutional conduct." *Jackson v. Fed. Bureau of Prisons*, No. 4:19-cv-00287, 2019 WL 8752339, at *3 (M.D. Pa. Dec. 9, 2019), *adopted by* 2020 WL 1243198 (M.D. Pa. March 16, 2020). Article III standing when a plaintiff is seeking declaratory relief requires proof of "facts from which it appears there is a substantial likelihood that [plaintiff] will suffer injury in the future" and that such future injury is not "conjectural, hypothetical, or contingent," but is "real and immediate" with a "definite, rather than speculative threat of future injury." *Rogers v. Gaston*, 2020 WL 1694796, at *6 (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).

As multiple courts have recognized, standing requirements are "somewhat relaxed in the First Amendment context." *Cooksey v. Futrell*, 721 F.3d 226, 235 (5th Cir. 2013) (cited with approval by *Klahr*, 830 F.3d at 794); *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.") (quoted by *Klahr*, 830 F.3d at 794). Nonetheless, as the Eighth Circuit has explained in the context of evaluating a plaintiff's standing to assert a First Amendment claim, evidence of subjective "chilling" is not by itself sufficient to establish an injury sufficient to create standing. "[S]elf-censorship based on mere allegations of a 'subjective' chill resulting from [an unconstitutional act] is not enough to support standing. . . . The relevant inquiry is whether a party's decision to chill his speech in light of the [First Amendment violation] was 'objectively reasonable,'" which can include plaintiff showing an "intention to engage in a course of conduct arguably affected with a constitutional interest" but choosing not to, so long as such a reaction is objectively reasonable. *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (citations and quotation marks omitted); *see also Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (in applying the objective "ordinary firmness" test in the First Amendment context, "[t]he question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done. . . . [But w]hat would a person of 'ordinary firmness' have done in reaction to the unconstitutional act?") Simply put, as the Eighth Circuit has most recently explained, "the question

29

is whether the plaintiffs have an objectively reasonable fear of [an unconstitutional] action that chills their speech." *Animal Legal Def. Fund v. Vaught*, __ F.4th __, 2021 WL 3482998, at *3 (8th Cir. Aug. 9, 2021) (citation omitted). In the First Amendment context, the injury-in-fact requirement is "tempered" in that standing can be established by showing that "the plaintiff intends to engage in a 'course of conduct arguably affected with a constitutional interest' and that there is a credible threat" that unlawful retaliation or enforcement action will be taken against the plaintiff. *Bayless*, 320 F.3d at 1006.

The key to any standing inquiry – and particularly in the context of a First Amendment claim seeking prospective declaratory relief – is whether a plaintiff has demonstrated "the existence of a credible threat" that engaging in the expressive conduct will result in unconstitutional retaliation. If a plaintiff's injury-in-fact is the quieting of their protected speech, the additional inquiry must be whether this outcome is objectively reasonable.

In the Third Amended Complaint, Plaintiffs allege that because of Judge Gaston's violation of their constitutional rights they are "afraid to return to court for any reason." No Plaintiff presents evidence to establish standing to bring a prospective declaratory judgment claim against Judge Gaston, however. First, Mr. Hale fails to satisfy his burden to establish, on summary judgment, that he has standing to pursue a First Amendment claim for prospective declaratory relief against Judge Gaston. In fact, Mr. Hale testified he has no reason to return to the Texas County Courthouse and it "wouldn't bother me" to go back to the Texas County Courthouse and denied there has been "any other proceedings in Texas County Courthouse that [he] wanted to attend but didn't." Further, there is no evidence (and Plaintiffs do not argue) that Mr. Hale engaged in self-censorship. Therefore, Mr. Hale does not have standing to bring a First Amendment declaratory judgment action against Judge Gaston.

Next, while Mrs. Rogers testified she "won't go there" and "do[es]n't go there," she did not testify – and no other evidence supports – she engaged in self-censorship. In other words, there is no evidence that Judge Gaston's actions "chilled her speech" such that she modified her desired behavior (i.e., to attend a court proceeding before Judge Gaston or to attend any court proceeding in Texas County or otherwise) but did not because of Judge Gaston's actions on June 20, 2017. Even if she did, subjective chill is not sufficient to establish an injury in fact for purposes of standing. Each plaintiff has the burden to establish facts on summary judgment as to each individual claim, in this context, of a credible threat of future injury. Mrs. Rogers has failed to

30

establish she has standing to assert a First Amendment retaliation claim against Judge Gaston for prospective declaratory relief. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding [equitable] relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96.

Finally, Mr. Rogers testified the June 20 custody hearing was the "[f]irst time" he had been to the Texas County Courthouse and the "last time, if I have anything to do about it." (Doc. 162-3 at 10.) Mr. Rogers also testified that although he was not aware of any court proceedings he wanted to attend but could not, "if there had been, I wouldn't go to them anyway" and that "you won't catch me over there in that county." *Id.* at 21. Mr. and Mrs. Rogers' vague testimony does not sufficiently demonstrate that Judge Gaston's allegedly unconstitutional actions in ordering they be drug tested in retaliation for Plaintiffs exercising their First Amendment rights to attend a child custody hearing even subjectively chilled their exercise of a First Amendment right to attend a civil child custody proceeding.

Even if it did, Plaintiffs present no evidence that the threat of unconstitutional conduct – here, an unconstitutional search and seizure of Plaintiffs by detaining them and ordering that they be drug tested in retaliation for exercising a First Amendment right to attend and/or participate in the child custody hearing – is adequately real or imminent. As the Supreme Court has explained:

> Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners."

*O'Shea*, 414 U.S. at 496. To show standing to sue a state-court judge for prospective declaratory relief, a "plaintiff must demonstrate a substantial likelihood [they] will encounter the same judge, in sufficiently similar circumstances, and with sufficiently similar results to establish an immediate, rather than speculative, threat of repeated injury." *Serafine v. Crump*, 800 F. App'x 234, 237 (5th Cir. 2020) (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285-86 (5th Cir. 1992); *Adams v. Mcilhany*, 764 F.2d 294, 299 (5th Cir. 1985)).

Plaintiffs present no facts that they are even likely to be required to appear before Judge Gaston or that they will want to appear before Judge Gaston at any point in the future. At the most, Plaintiffs present nothing more than mere speculation of such appearance, based on their

neighboring county of residence, the presence of their children in Texas County, and that Judge Gaston is the sole associate circuit judge. Plaintiffs do not show or even allege that appearing at a subsequent hearing where they are merely observing the proceedings will result in Judge Gaston ordering that they be detained and drug tested. Indeed, Judge Gaston attested by affidavit that after receiving informal counseling from the Missouri Commission on Retirement, Removal and Discipline, he has "agreed to not order drug tests of non-parties (including court observers) and ha[s] no intention of ever doing so." (Doc. 166-1.) Moreover, it is undisputed that Texas County jail no longer administers drug tests. In sum, "[t]o conclude that these events are likely or immediate would take us into the area of speculation and conjecture." *Webb ex rel. K.S. v. Smith*, 936 F.3d 808, 815 (8th Cir. 2019) (citation and quotation marks omitted). In light of these undisputed facts, the past wrong Plaintiffs may well have suffered at the order of Judge Gaston does not establish standing to assert a claim for prospective declaratory relief against Judge Gaston.

Plaintiffs have failed to satisfy their burden to demonstrate standing to bring a claim for declaratory relief under Count II. Judge Gaston's motion for summary judgment is **GRANTED** as to Count II.

### C. Failure to Prove Policy or Custom

Finally, even if Plaintiffs did have standing to bring a claim seeking prospective declaratory relief action against Judge Gaston, Judge Gaston would be entitled to summary judgment for a separate reason.[18] Judge Gaston argues he would otherwise be entitled to summary judgment because Plaintiffs cannot show he acted pursuant to a policy or custom. Plaintiffs provide no response to this argument.

Official capacity claims brought under § 1983 generally "require proof that a policy or custom of the entity violated the plaintiff's [constitutional] rights." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 24-27 (1991)). Plaintiffs have presented no evidence of any "policy" or "custom" of detaining and drug testing courtroom

---

[18] Although Plaintiffs sued Judge Gaston in his individual and official capacity, the Third Amended Complaint only seeks prospective declaratory relief against Judge Gaston. Generally, equitable relief in a § 1983 civil action is not proper in an individual-capacity lawsuit. *Braun v. Hanson*, 2020 WL 1496580, at *7-8 (holding that the plaintiff "may only seek injunctive relief against Defendants in their official capacities") (citing *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for [equitable] relief") (other citations omitted) (collecting cases). Nonetheless, because the Court finds that Plaintiffs failed to establish standing – and Judge Gaston does not seek summary judgment on the merits as to his individual capacity claim specifically – the Court need not decide this issue here.

observers by Judge Gaston, the state, the circuit court, or any other entity. Plaintiffs have identified only one other instance when Judge Gaston ordered an individual who was a courtroom observer to be drug tested. Two instances of unconstitutional conduct do not support an inference of a "policy" or "custom" for purposes of establishing official-capacity § 1983 liability. *See, e.g., Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *Henderson v. City & Cty. of Denver*, No. 12-cv-0625-WJM-BNB, 2014 WL 222761, at *9 (D. Colo. Jan. 21, 2014); *Nicosia v. Town of Hempstead*, No. 16-cv-1176 (SJF)(SIL), 2017 WL 3769246, at *3 (E.D.N.Y. Aug. 28, 2017). Thus, even if one or more Plaintiffs had established standing to bring a claim against Judge Gaston, the Court finds that Judge Gaston would nonetheless be entitled to summary judgment.

VII. **Conclusion**

Accordingly, it is **ORDERED** as follows:

(1) Defendant Reaves' motion for summary judgment (Doc. 157) is **MOOT** as to Count IV; **GRANTED** as to Counts I, II, III, and V;

(2) Defendant Tripp's motion for summary judgment (Doc. 159) is **GRANTED** as to Counts I, II, III, and V;

(3) Defendant Campbell's motion for summary judgment (Doc. 161) is **MOOT** as to Counts I, II, and III; and **GRANTED** as to Count V;

(4) Defendant Tomaszewski's motion for summary judgment (Doc. 161) is **MOOT** as to Count IV; **GRANTED** as to Counts I, II, III, and V;

(5) Defendant Sigman's motion for summary judgment (Doc. 161) is **GRANTED** as to Count I, III, and V;

(6) Defendant Duncan's motion for summary judgment (Doc. 163) is **MOOT** as to Counts III and IV; and **GRANTED** as to Counts I, II, and V; and

(7) Defendant Gaston's motion for summary judgment (Doc. 165) is **MOOT** as to Counts III and IV; and **GRANTED** as to Counts I and II.

Accordingly, the only remaining count in the Third Amended Complaint is Count VI against Texas County, Missouri (for which no dispositive motion has been filed as of this date).

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark

ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 22, 2021

33